# EXHIBIT 1

| 2120 - Served | 2220 - Not Served | 2620 - Sec. of State |
|---|---|---|
| 2121 - Alias Served | 2221 - Alias Not Served | 2621 - Alias Sec. of State |
| Summons | | (06/28/18) CCM N649 A |

**FILED**
7/30/2018 4:45 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
20183005922

FILED DATE: 7/30/2018 4:45 PM  20183005922

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### Third MUNICIPAL DISTRICT, CIVIL DIVISION

Name All Parties

Anthony Martino

_____ **Plaintiff(s)**

v.

United Parcel Service, Inc.,
Crawford And company

_____ **Defendant(s)**

801 Adlai Stevenson Dr.
Springfield, IL 62703
Address of Defendants

**20183005922**

Case No. _____

Amount Claimed $ 95,000

Appearance Filing/Return Date 8/31/18

Status Date: _____

Trial Date: _____

Time _____ AM PM Room: _____

Please serve as follows: Certified Mail (Sheriff Service) Alias (Plaintiff select one)

## SUMMONS

To each Defendant:

YOU ARE SUMMONED and required:

1. To file your written appearance by yourself or your attorney and pay the required fee. To file your appearance you need access to the internet and a credit card for payment. Please visit                                                    to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

2. File your answer to the complaint before 9:00 am as required by the applicable subsections of Paragraph 3 or 4 in the NOTICE TO THE DEFENDANT on page 3 of this form.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.**

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, and not less than three (3) days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org**

**Summons** (06/28/18) CCM N649 B

This summons may not be served later than three (3) days before the day for appearance.

## THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

Witness: _____

7/30/2018 4:45 PM DOROTHY BROWN

_____

DOROTHY BROWN, Clerk of the Court

Date of Service: __8__/__3__/__2018__ *M.L.*

(To be inserted by officer on copy left
with Defendant or other person)

Atty. No.: _____ ✓ Pro Se 99500

Atty Name: _____

Atty. for: _____

Address: _____

City: _____ State: _____

Zip: _____

Telephone: _____

Primary Email: _____

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org

FILED DATE: 7/30/2018 4:45 PM   20183005922

**Summons**          **(06/28/18) CCM N649 C**

Any person wishing to sue or defend a case as an indigent must petition the court to have the fees, costs, and charges associated with the proceedings waived.

Customers may visit                   to access the Clerk's filing fees or telephone the Civil Division at (312) 603-5116 with additional questions.

## NOTICE TO PLAINTIFF

You MUST select a return day of:

Not less than 14 or more than 40 days after issuance of summons if amount claimed is $10,000 or less;
Not less than 21 or more than 40 days after issuance of summons if amount claimed is in excess of $10,000.

## NOTICE TO DEFENDANT

1. If the complaint is notarized, your answer must be notarized.

For District 1 Cases Only:

2. On the specified Return Day, one of the following may occur:
   a. If you are sued for $10,000 or less, you need not file an answer unless ordered to do so by the Court.
      i. If Plaintiff is not present, the case may be dismissed for want of prosecution.
      ii. If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an exparte default judgment against you for the amount claimed.
      iii. If you have filed an appearance and are present on Return Day, trial may be held that day, or may be set for another day certain.
   b. If you are sued for more than $10,000.00, and if you have filed your appearance on time, you must file your answer no later than 10 days after the appearance date (return date) specified on page 1 of this form. If you have not filed your appearance or answer on time, the Plaintiff may obtain an exparte default judgment against you for the amount claimed. If Plaintiff is not present for the Default call, the case may be dismissed for want of prosecution. If you file your appearance and have not filed your answer on time the Plaintiff may motion the court to enter a judgment.
3. Late filing of an appearance or answer will not relieve you from a judgment or default order except by court order.

For District 2, 3, 4, 5, 6 Cases:

4. If you are sued for more than $10,000, you have 10 days from the Return Day to answer or otherwise plea.
5. On the specified Return Day, if you are sued for $10,000 or less, you need not file an answer unless ordered to do so by the Court.
6. On the specified Status/Trial Day, one of the following may occur:
   a. If Plaintiff is not present, the case may be dismissed for want of prosecution.
   b. If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an ex parte default judgment against you for the amount claimed.
   c. If you have filed an appearance and are present on Status/Trial Day, trial may be held that day, or may be set for another day certain.

The following is applicable to District 3 cases only:

7. This case may (may not) be heard on the day for appearance specified in summons.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**     cookcountyclerkofcourt.org

FILED DATE: 7/30/2018 4:45 PM    2018300592

**Summons** (06/28/18) CCM N649 D

FILED DATE: 7/30/2018 4:45 PM   2018300S922

8.  If the claim is for personal injury, or is a civil case in which Plaintiff has filed a jury demand, you will be required to file your appearance in person or by attorney Return Day, and your answer as required by

    Par. 2(b) above. These cases will be assigned and heard in the Civil Jury Room _____ unless otherwise ordered by the Presiding Judge. Neither Plaintiff nor Plaintiff's attorney will be required to be present on Return Day. The case will be set for Status at 9:00 a.m., approximately 60 days from the date of filing. Plaintiff and Defendant will be required to appear in court on that status day.

9.  Trial Rights of Property, Detinues, and Revivals of Judgment, Pro Se, and Forcible Detainer suits are

    returnable in Room _____ and are disposed of on a Return Day unless otherwise ordered by the Court.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org**

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 7/30/2018 4:45 PM   2018300S922

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

2120 - Served    2220 - Not Served    2620 - Sec. of State
2121 - Alias Served  2221 - Alias Not Served  2621 - Alias Sec. of State
Summons                    (06/28/18) CCM N649 A

**FILED**
7/30/2018 4:45 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
20183005922

FILED DATE: 7/30/2018 4:45 PM  20183005922

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### Third MUNICIPAL DISTRICT, CIVIL DIVISION

Name All Parties

Anthony Martino

                   Plaintiff(s)

v.

United Parcel Service, Inc.,
Crawford And Company

                   Defendant(s)

801 Adlai Stevenson Dr.
Springfield, IL 62703

            Address of Defendants

Case No. **20183005922**

Amount Claimed $ **95,000**

Appearance Filing/Return Date **8/31/18**

Status Date: _____

Trial Date: _____

Time _____ AM  PM  Room: _____

Please serve as follows:    Certified Mail    (Sheriff Service)    Alias (Plaintiff select one)

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required:

1. To file your written appearance by yourself or your attorney and pay the required fee. To file your appearance you need access to the internet and a credit card for payment. Please visit         to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

2. File your answer to the complaint before 9:00 am as required by the applicable subsections of Paragraph 3 or 4 in the NOTICE TO THE DEFENDANT on page 3 of this form.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.**

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, and not less than three (3) days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois   cookcountyclerkofcourt.org**

**Summons** (06/28/18) CCM N649 B

This summons may not be served later than three (3) days before the day for appearance.

THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

Witness: _____

7/30/2018 4:45 PM DOROTHY BROWN

DOROTHY BROWN, Clerk of the Court

Date of Service: _____

(To be inserted by officer on copy left with Defendant or other person)

Atty. No.: _____ ✓ Pro Se 99500

Atty Name: _____

Atty. for: _____

Address: _____

City: _____ State: _____

Zip: _____

Telephone: _____

Primary Email: _____

FILED DATE: 7/30/2018 4:45 PM    20183005922

**Summons**                                                                      **(06/28/18) CCM N649 C**

Any person wishing to sue or defend a case as an indigent must petition the court to have the fees, costs, and charges associated with the proceedings waived.

Customers may visit                                    to access the Clerk's filing fees or telephone the Civil Division at (312) 603-5116 with additional questions.

FILED DATE: 7/30/2018 4:45 PM    20183005922

## NOTICE TO PLAINTIFF

You MUST select a return day of:

Not less than 14 or more than 40 days after issuance of summons if amount claimed is $10,000 or less;
Not less than 21 or more than 40 days after issuance of summons if amount claimed is in excess of $10,000.

## NOTICE TO DEFENDANT

1.  If the complaint is notarized, your answer must be notarized.

For District 1 Cases Only:

2.  On the specified Return Day, one of the following may occur:
    a.  If you are sued for $10,000 or less, you need not file an answer unless ordered to do so by the Court.
        i.   If Plaintiff is not present, the case may be dismissed for want of prosecution.
        ii.  If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an exparte default judgment against you for the amount claimed.
        iii. If you have filed an appearance and are present on Return Day, trial may be held that day, or may be set for another day certain.
    b.  If you are sued for more than $10,000.00, and if you have filed your appearance on time, you must file your answer no later than 10 days after the appearance date (return date) specified on page 1 of this form. If you have not filed your appearance or answer on time, the Plaintiff may obtain an exparte default judgment against you for the amount claimed. If Plaintiff is not present for the Default call, the case may be dismissed for want of prosecution. If you filed your appearance and have not filed your answer on time the Plaintiff may motion the court to enter a judgment.
3.  Late filing of an appearance or answer will not relieve you from a judgment or default order except by court order.

For District 2, 3, 4, 5, 6 Cases:

4.  If you are sued for more than $10,000, you have 10 days from the Return Day to answer or otherwise plea.
5.  On the specified Return Day, if you are sued for $10,000 or less, you need not file an answer unless ordered to do so by the Court.
6.  On the specified Status/Trial Day, one of the following may occur:
    a.  If Plaintiff is not present, the case may be dismissed for want of prosecution.
    b.  If you have not filed an appearance, or you have filed an appearance and are not present, the Plaintiff may obtain an ex parte default judgment against you for the amount claimed.
    c.  If you have filed an appearance and are present on Status/Trial Day, trial may be held that day, or may be set for another day certain.

The following is applicable to District 3 cases only:

7.  This case may/may not be heard on the day for appearance specified in summons.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org**

**Summons** (06/28/18) CCM N649 D

8. If the claim is for personal injury, or is a civil case in which Plaintiff has filed a jury demand, you will be required to file your appearance in person or by attorney Return Day, and your answer as required by

   Par. 2(b) above. These cases will be assigned and heard in the Civil Jury Room _____ unless otherwise ordered by the Presiding Judge. Neither Plaintiff nor Plaintiff's attorney will be required to be present on Return Day. The case will be set for Status at 9:00 a.m., approximately 60 days from the date of filing. Plaintiff and Defendant will be required to appear in court on that status day.

9. Trial Rights of Property, Detinues, and Revivals of Judgment, Pro Se, and Forcible Detainer suits are

   returnable in Room _____ and are disposed of on a Return Day unless otherwise ordered by the Court.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org**

Page 5 of 5

FILED DATE: 7/30/2018 4:45 PM  20183005922

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

**Daley Center Divisions/Departments**

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois    cookcountyclerkofcourt.org**

FILED
7/30/2018 4:45 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
20183005922

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**THIRD MUNICIPAL DISTRICT**

ANTHONY MARTINO ) Case No:
) 20183005922
)
)
Plaintiff ) **PLAINTIFF'S COMPLAINT**
)
vs. )
)
)
)
UNITED PARCEL SERVICE, INC., an Ohio    Return Date: 8/31/2018

corporation; and CRAWFORD & COMPANY,

a Georgia corporation;

_____
Defendant
_____

**COMPLAINT AT LAW**

NOW COMES, the Plaintiff, ANTHONY MARTINO, and complaining of

Defendant, UNITED PARCEL SERVICE, INC., an Ohio corporation, and Defendant,

CRAWFORD AND COMPANY, a Georgia corporation, states and alleges as follows:

**FACTS**

1.    At all relevant times, the Plaintiff and Defendant UNITED PARCEL SERVICE

INC. (hereafter "UPS"), were in a contractual relationship in which UPS was

Plaintiff's contracted shipping courier to provide courier service of a parcel

package on behalf of Plaintiff in exchange for monetary compensation pursuant

to the *2018 UPS Tariff/Terms And Conditions Of Service-United States*

(Attached hereto as **Exhibit A**).

2.    Plaintiff's parcel package contained a brand-new condition American Standard

Country Kitchen Sink, Model: 962.008.020 (hereafter "Parcel"), with a total

1

shipping weight of approximately 110 pounds, approximate dimensions of 33 x 25 x 19, and of which was shipped by Plaintiff using "UPS Ground" service with tracking # 1Z699A250334033292 to a recipient in Decatur, Alabama. (*See* Shipping Receipt Attached hereto as **Exhibit B**).

3. Plaintiff's recipient in Decatur, Alabama had purchased the contents of Plaintiff's Parcel directly from Plaintiff at a total cost of $679.99 on the website EBAY.com on or about 2/26/18.

4. On 2/26/18, Plaintiff personally packed the Parcel in accordance with the options listed within the UPS's packaging advisor guidelines published on the UPS.COM website as explicitly required by the *2018 UPS Tariff/Terms And Conditions Of Service-United States*. Based on the specific weight and dimensions of Plaintiff's Parcel, the UPS's packaging advisor guidelines explicitly recommended using a single-wall box with an edge-crush rating of at least 44, as well as double-boxing the single wall box with a larger box. (See UPS Packaging Advisor Guidelines for Parcel Attached hereto as **Exhibit C**).

5. Nowhere on UPS's primary website (www.ups.com) were or are there any sections or links to published packaging guidelines of which *definitively* state UPS's box size, bursting strength and/or edge crush rating requirements as corresponding to any specific numerical parcel weight/dimensions that if otherwise strictly adhered to by Plaintiff as a shipper (or any UPS customer as a shipper) would have guaranteed Plaintiff's (or any UPS customer's) compliance with Section 8 ("Packaging") of the *2018 UPS Tariff/Terms And Conditions Of Service-United States* concerning packaging guidelines for shipments.

6.  The Packaging Advisor section of UPS's primary website explicitly states thereon: "UPS's packaging guidelines are recommendations to assist you in packaging your shipment. Following these guidelines is not a guarantee that an item is sufficiently packaged for transportation." As such, since following UPS's packaging advisor guidelines provides no guarantee of compliance to any UPS customer as it would pertain to a UPS customer later obtaining declared value claim reimbursement from UPS in the event a given parcel is damaged during transit (despite such packaging advisor guidelines actually being explicitly required under the *2018 UPS Tariff/Terms And Conditions Of Service- United States)*, Plaintiff was (and any UPS customer in general is) actually compelled to use a "best-judgment" method of selecting appropriate packaging materials, while UPS and any of its designated agents that adjudicate damage claims on its behalf operate with the absolute and sole discretion to subjectively deny any declared value damage claim submitted by a UPS customer for the alleged reason of "improper packaging," regardless of whether said denial on that basis is actually fair, reasonable or otherwise made in good-faith.

7.  UPS charged Plaintiff $83.43 (including retroactive shipping charge adjustments) for using its UPS Ground service to ship the Parcel to Plaintiff's intended recipient in Decatur, Alabama.

8.  For a separate additional monetary fee of $6.30 billed to Plaintiff by UPS through UPS.COM on or about 2/26/18, Plaintiff purchased excess declared value coverage for the Parcel so that the total declared value of the parcel was increased to $680 from UPS's default liability release rate amount of $100.

3

Total charges billed to Plaintiff by UPS for the actual shipment of the Parcel through UPS Ground service, including the additional excess declared value coverage fee totaled $89.73.

9. Plaintiff's brought the Parcel to UPS in good (i.e. brand new) condition and in brand new boxing prior to its transit on or about 2/27/18.

10. After immediately taking receipt of the Parcel from Plaintiff on or about 2/27/18, UPS subsequently negligently mishandled Plaintiff's Parcel during its transit and fully destroyed its contents.

11. Plaintiff's intended recipient in Decatur, Alabama received the damaged Parcel from UPS on or about 3/1/18, and promptly requested an immediate refund from Plaintiff through EBAY.com of which Plaintiff immediately obliged.

12. In seeking reimbursement from UPS for the damaged Parcel pursuant to the excess declared coverage that Plaintiff had purchased from UPS for an additional monetary fee as referenced herein paragraph 8, Plaintiff complied with all applicable terms and conditions required by the *2018 UPS Tariff/Terms And Conditions Of Service-United States*, specifically pertaining to notice and claim periods relating to the reporting of damaged shipments, including the entirety of sections 53 and 54 therein.

13. UPS's wholly owned subsidiary, UPS CAPITAL INSURANCE AGENCY INC. (hereafter "UPS CAPITAL"), of which administers UPS's excess declared value program, subsequently delegated the investigation, adjustment, and determination of Plaintiff's Parcel-damage claim to Defendant CRAWFORD AND COMPANY (hereafter "CRAWFORD") of whom received direct

4

monetary benefit or other economic benefit in accepting said delegation.

14. In accepting UPS CAPITAL'S delegated task of investigating, adjusting, and determining a claim resolution for Plaintiff's damaged Parcel claim, CRAWFORD voluntarily assumed the duty explicitly promised under Section 54.4 of the *2018 UPS Tariff/Terms And Conditions Of Service-United States* to "thoroughly investigate" UPS customer claims for losses or damages to shipments.

15. CRAWFORD intentionally failed to "thoroughly investigate" Plaintiff's damaged Parcel claim as explicitly promised under the *2018 UPS Tariff/Terms And Conditions Of Service-United States (Section 54.4),* and further, intentionally denied Plaintiff's damage claim and subsequent appeal solely under false pretenses and on the alleged basis of "improper packaging," of which actually compelled Plaintiff to file the immediate lawsuit against Defendant UPS as Plaintiff's only recourse for declared-value reimbursement for the Parcel.

16. Since at least 2008, numerous lawsuits as well as written consumer complaints and grievances have been filed and/or made by different UPS customers in Illinois and across the United States (including in the majority of all 50 states) against UPS and CRAWFORD, to consumer publications, organizations, Internet consumer forums, and elsewhere, specifically regarding UPS & CRAWFORD'S improper and otherwise unreasonable denials of submitted damaged parcel claims of which were in excess of UPS's default maximum liability release rate of $100, including but not limited to the Better Business Bureau, Ripoff Report, The Consumerist, WalletPop/Consmer Ally, Amazon

Seller Central, WWAY3 North Carolina, PeopleClaim.com, and Topix.com.

17. This action for loss of property in the amount of $680, and transit reimbursement fees pertaining to the shipment of the parcel in the amount of $83.43, arises from Defendant UPS's negligent handling and complete destruction of the Parcel contents during transit to its intended recipient in Alabama in violation of The Carmack Amendment, 49 U.S.C. §14706(a)(1), of which UPS as a motor carrier is strictly liable.

18. This action for other monetary loss, aggravation and inconvenience damages, treble damages, and other statutory damages against both Defendants, arises from harm and conduct separate and apart from the actual delivery and damage caused to the Parcel by UPS as stated in paragraph 17 herein.

19. The separate conduct as referenced in paragraph 18 includes Defendant UPS's violation of the Illinois Consumer Fraud And Deceptive Practices Act (815 ILCS/505) through its intentional and deceptive omission from its *2018 UPS Tariff/Terms And Conditions Of Service-United States* of its intent to retroactively bill Plaintiff (after delivery of the Parcel) for allegedly investigating Plaintiff's damaged Parcel claim, and thereafter fraudulently mislabeling such investigation-related fees as "undeliverable ground return fees" and joining such illegitimate fees into other shipping invoices consisting of unrelated (legitimate) UPS shipping fees owed by Plaintiff but while simultaneously refusing to accept partial payments for the legitimate portions of said invoices so as to instead charge late fees and interest on the full amount; Defendant CRAWFORD'S violation of the Illinois Consumer Fraud And Deceptive Practices Act (815

ILCS/505) through its ongoing deceptive use of false pretenses to intentionally deny—without any thorough investigation, legitimate reason, or otherwise good-faith basis for such denial—a significant percentage of valid declared-value reimbursement claims made by UPS customers across the United States (including in the majority of all 50 U.S states) of which are in excess of UPS's default maximum liability release rate of $100, so as to compel said UPS customers to either abandon their claims or alternatively incur the time and expense to actually file a lawsuit against UPS as the customer's only recourse to obtain its declared value reimbursement coverage, including its use of false pretenses to actually compel Plaintiff to incur the time and expense in filing the instant lawsuit against UPS through its intentional denial of Plaintiff's valid declared-value reimbursement claim pertaining to the damaged Parcel without a thorough investigation, legitimate reason, or otherwise good-faith basis; and Defendant CRAWFORD'S violation of the Racketeer Influenced And Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c), in participating in the conduct of the affairs of an enterprise consisting of UPS and its wholly-owned subsidiary UPS CAPITAL, through a repeated and open-ended pattern of predicate acts including using interstate telephone wire and electronic wire (i.e. email) communications to send illegitimate claim denials to Plaintiff and other UPS customers nationally based on knowingly-false pretenses in violation of 18 U.S.C. §1343, as well as intentionally mailing multiple illegitimate claim denial letters based on knowingly-false pretenses to Plaintiff and other UPS customers nationally through the interstate couriers in violation of 18 U.S.C. §1341, all in

furtherance of the enterprise's ongoing scheme to defraud and deprive UPS customers—including Plaintiff as set forth herein—out of prepaid declared value fees and declared release rate liability coverage costs for actual property loss/damages caused solely by UPS during the shipping process.

## PARTIES TO SUIT

20. Plaintiff, Anthony Martino, was at all times relevant herein an e-commerce retailer of liquidated and wholesale consumer goods, overstock, and other merchandise, also dually employed as a fraud investigator, and was at all times relevant herein a resident and citizen of the state of Illinois, presently residing at 580 Vernon Lane, Buffalo Grove, IL, 60089.

21. Defendant, UNITED PARCEL SERVICE, INC. ("UPS"), is a multinational shipping carrier and provider of supply chain management solutions, incorporated in the state of Ohio, and with its principal place of business in Atlanta, Georgia.

22. Defendant, CRAWFORD & COMPANY ("CRAWFORD"), is a third party independent provider of claims management solutions to insurance companies and self-insured entities, incorporated in the state of Georgia, and with its principal place of business in Atlanta, Georgia. It is contracted by UPS and/or UPS CAPITAL to administer, inspect, investigate, evaluate, negotiate, and/or pay excess declared value claims made by customers of UPS.

## JURISDICTION AND VENUE

23. All acts and omissions alleged herein occurred within Cook County in the State of Illinois.

24. The claims herein meet the minimum jurisdictional requirements of this Court, and jurisdiction and venue are proper under Illinois state laws, The Carmack Amendment (49 U.S.C. §14706(d)(3)) and per the United States Supreme Court decision in *Tafflin v. Levitt*, 493 U.S. 455 (1990) permitting state courts to hear civil claims made under RICO.

## COUNT ONE - VIOLATION OF 49 U.S.C. §14706(a)(1) AGAINST DEFENDANT UNITED PARCEL SERVICE, INC.

25. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

26. On or about 2/26/18, Plaintiff personally packaged his Parcel as set forth in paragraph 4 herein, paid for a prepaid UPS Ground shipping label through UPS.COM in the amount of $83.43, and was charged a separate additional monetary fee of $6.30 by UPS through UPS.COM for its expressly advertised declared value liability amount option so that UPS's maximum liability for the Parcel was increased from its default amount of $100 to $680 in the event of damage to or loss of the Parcel during its to transit to its intended recipient in Alabama.

27. On 2/27/18, Plaintiff brought the Parcel to a UPS Customer Care Center located in Palatine, Illinois for drop-off, where the UPS employee on site asked Plaintiff what the contents of the Parcel were, and then further labeled the Parcel with sealing tape and a sticker indicating that the Parcel was both fragile and "heavy (over 70 lbs.").

28. Per its acceptance of Plaintiff's monetary consideration and the Parcel, as a multinational motor courier, UPS (including but not limited to its package handlers, drivers or other third party employees tasked with handling UPS

9

Ground parcels) owed Plaintiff a reasonable duty of care in its handling of Plaintiff's Parcel during transit so as to not cause damage to its contents prior to its delivery to its recipient in Decatur, Alabama.

29. UPS breached its duty of care owed to Plaintiff when it grossly mishandled Plaintiff's Parcel during its transit and fully destroyed its contents, prompting its recipient in Alabama to request an immediate refund from Plaintiff through the website www.EBAY.com.

30. As a proximate result of UPS's breach of duty of care, Plaintiff incurred damages to property valued at the actual loss of the entire contents of the Parcel of $680 and associated UPS transit expenses of $83.43 for the parcel, for a total collective loss of $763.43, of which Defendant UPS is liable to reimburse to Plaintiff.

**COUNT TWO- VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT (815 ILCS 505/) AGAINST DEFENDANT CRAWFORD AND COMPANY**

31. Plaintiff re-incorporates all prior paragraphs as if fully set forth herein.

32. On or about 2/26/18, Plaintiff personally packaged his Parcel as set forth in paragraph 4 herein, paid for a prepaid UPS Ground shipping label through UPS.COM in the amount of $82.18, and was billed a separate additional monetary fee of $6.30 to UPS for its expressly advertised excess declared value liability coverage option so that UPS's maximum liability for the Parcel was increased from its default release rate of $100, to $680.

33. On or about 3/1/18, Plaintiff first notified UPS through the website UPS.com that his Parcel had been damaged in transit by UPS and requested that a declared

value liability coverage claim be immediately issued in the amount of $680 plus transport charges. In response, UPS indicated to Plaintiff by telephone that UPS first needed to retrieve the damaged Parcel from the recipient's address in Decatur, Alabama so as to conduct its own investigation.

34. On or about 3/5/18, having not yet heard any disposition from UPS regarding his declared value liability claim request from 3/1/18, Plaintiff again contacted UPS customer service by telephone and was informed by a representative that UPS had not yet physically retrieved the damaged Parcel back from the recipient's address in Alabama, and instead that Plaintiff would need to email photographs to UPS (at pictures@ups.com) showing both the Parcel's packaging and the damaged item so that a claim determination could be made.

35. Plaintiff complied with UPS's request and emailed a number of photographs to UPS depicting that the Parcel had been packed with a double-wall box with an edge crush rating (51) in compliance with UPS's published recommended packaging advisor guidelines (44 edge crush rating, single-wall box); approximately 2 inches of foam padding wrapped around the item itself inside the double-wall box; and approximately 2-3 inches of Styrofoam packing peanuts along both sides of the item itself within the inner walls of the double-wall box. The photos further depicted that the entirety of the double-wall box containing the packed item was then placed into an additional (larger) 200-burst strength single-wall box (i.e. "double-boxed" and "triple-walled") for additional protection, with each inner wall of the single-wall box also padded with approximately 2-3 inches of Styrofoam peanuts and cardboard dividers along its

sides to prevent movement of contents.

36. On 3/8/18, Plaintiff received a voicemail from an individual named Rheanna Thrower. In her voicemail, Ms. Thrower notified Plaintiff that CRAWFORD could not approve Plaintiff's damaged Parcel claim because the item was allegedly improperly packed in a single-wall box and that the item should have been "double-boxed" with at least 2" of foam cushioning and a high edge crush rating.

37. Contrary to the photos that Plaintiff provided to UPS (as specified in paragraph 35 herein) of which evidenced the Parcel's packing to be in compliance with UPS's packaging advisor guidelines as published directly on UPS.com— including using a box with an edge crush-rating exceeding UPS's recommendation and even being double-boxed—UPS' stated reason as listed in CRAWFORD'S written denial of the claim on UPS.COM was that "the merchandise was not adequately cushioned. The single-wall box was not adequate to support the weight of the merchandise."

38. On 3/8/18, Plaintiff notified UPS customer service by telephone that he wished to dispute the decision denying his declared value liability coverage claim for the damaged Parcel because he had in fact followed all of UPS's published recommended packaging guidelines, and that the Parcel would not have been damaged but not for its gross mishandling by UPS during its transit.

39. In the early evening on Friday, 3/9/18, Plaintiff received a second phone call from Rheanna Thrower. Ms. Thrower indicated to Plaintiff that she'd received his dispute of CRAWFORD'S decision to deny his declared value liability

coverage claim for the damaged Parcel, and that based on an alleged investigation report that she'd reviewed, she was unable to overturn the original written decision that "the merchandise was not adequately cushioned. The single-wall box was not adequate to support the weight of the merchandise."

40. However, when asked by Plaintiff over the telephone on 3/9/18 as to what specific photos and report she'd reviewed, Ms. Thrower indicated that she was uncertain and that Plaintiff was free to personally email her any photographs in his possession depicting the Parcel's packaging which she would then review the following Monday (3/12/18).

41. On Sunday evening, 3/11/18, Plaintiff emailed Ms. Thrower with the same photos described in paragraph 35 herein, and again indicated therein his email that the Parcel's packaging was in compliance with UPS's recommended packaging advisor guidelines. Further, Plaintiff restated to Ms. Thrower that CRAWFORD'S written basis for denying Plaintiff's claim that "the single-wall box was not adequate to support the weight of the merchandise" was in and of itself wholly inaccurate since the photographs clearly depicted that the item was packed in a double-wall box of which adhered to UPS's published recommended packaging guidelines, as well as double-boxed in an additional single-wall box with multiple inches of foam padding and other protective measures (Styrofoam peanuts, cardboard dividers, etc.), and that she had no legitimate basis to continue delaying approval of Plaintiff's claim.

42. On 3/12/18, Ms. Thrower left another voicemail for Plaintiff indicating that the Plaintiff's dispute was not approved because the Parcel was "not packed

properly." In her voicemail, Ms. Thrower further requested that Plaintiff return her call if he wished to discuss the claim further.

43. On 3/12/18, Plaintiff called Ms. Thrower back and left a voicemail seeking further explanation regarding the claim denial, but Ms. Thrower did not return Plaintiff's call, nor did anybody else at CRAWFORD, UPS or UPS CAPITAL.

44. The Packaging Advisor section of UPS's primary website explicitly states thereon: "UPS's packaging guidelines are recommendations to assist you in packaging your shipment. Following these guidelines is not a guarantee that an item is sufficiently packaged for transportation." As such, Plaintiff was (and any UPS customer in general is) compelled to use a "best-judgment" method of selecting appropriate packaging materials, while UPS and its agents, including CRAWFORD, permit themselves the absolute ability and sole discretion to subjectively deny any damage claim submitted by a UPS customer on the alleged ground of "improper packaging," regardless of whether the denial is reasonable or otherwise legitimate.

45. At all relevant times herein, CRAWFORD intended for Plaintiff to rely on it for a "thorough investigation" of his damaged Parcel claim as pursuant to the duty it assumed from UPS as explicitly promised under Section 54.4 of the *2018 UPS Tariff/Terms And Conditions Of Service-United States* to "thoroughly investigate" UPS customer claims for losses or damages to shipments.

46. Because CRAWFORD had actual knowledge that Plaintiff's Parcel was clearly packed in accordance with UPS's published recommended packaging guidelines on its primary website, CRAWFORD knowingly had no reasonable or otherwise

14

valid basis to deny Plaintiff's declared value damage claim, and therefore, CRAWFORD'S intentional denial of Plaintiff's claim was under false pretenses, deceptive, and not based upon any legitimate "thorough investigation" of the claim, thereby directly violating the Illinois Consumer Fraud And Deceptive Practices Act (815 ILCS 505/2).

47. The section titled "Marine And Transportation" on CRAWFORD'S primary website (http://us.crawfordandcompany.com/industries/marine-and-transportation.aspx) publicly and explicitly advertises in part, "With a dedicated global Marine and Transportation team of experts, our services range from simple cargo surveys, loss control analysis, adjustment of ocean or inland marine claims, and full third-party administration (TPA) services with centralized claims intake, to complicated hull and machinery liability attendances...Whatever the scale of the service required, our clients can be assured of a *professional approach*, delivered by highly qualified personnel with the required experience and qualifications to deliver an effective marine and transportation claims solution."

48. Because CRAWFORD had actual knowledge that Plaintiff's Parcel was clearly packed in accordance with UPS's published recommended packaging guidelines on its primary website, CRAWFORD knowingly had no reasonable or otherwise valid basis to deny Plaintiff's declared value damage claim, and therefore, CRAWFORD'S intentional denial of Plaintiff's claim was under false pretenses, deceptive, and not predicated upon any legitimate intent of a "thorough investigation," thereby constituting *an unprofessional approach*, which directly

15

contradicted the public advertisement on its website as referenced in paragraph 47 herein, violated the Uniform Deceptive Trade Practices Act 815 ILCS/510/2(9), and by extension also violated the Illinois Consumer Fraud And Deceptive Practices Act (815 ILCS 505/2).

49. The section of CRAWFORD'S primary website (http://us.crawfordandcompany.com/about-us/mission-vision-values-and-culture.aspx ) titled "Mission, Values And Culture states in part: "OUR VALUES. Our mission is embedded in our values—to RESTORE is part of everything we do. R – Respect – *We practice integrity and ethical behavior…*"

50. Because CRAWFORD had actual knowledge that Plaintiff's Parcel was clearly packed in accordance with UPS's published recommended packaging guidelines on its primary website, CRAWFORD knowingly had no reasonable or otherwise valid basis to deny Plaintiff's declared value damage claim, and therefore, CRAWFORD'S intentional denial of Plaintiff's claim was under false pretenses, deceptive, and not predicated upon any legitimate intent of a "thorough investigation," thereby constituting *unethical behavior*, which directly contradicted the public advertisement on its website as referenced in paragraph 49 herein, violated the Uniform Deceptive Trade Practices Act 815 ILCS/510/2(9), and by extension also violated the Illinois Consumer Fraud And Deceptive Practices Act (815 ILCS 505/2).

51. Nowhere on UPS's primary website (www.ups.com) or CRAWFORD'S primary website (http://us.crawfordandcompany.com) were/are there any sections or links to published packaging guidelines or ISTA guidelines of which *definitively*

state UPS's or CRAWFORD'S box size, bursting strength and/or edge crush

rating requirements as corresponding to any specific numerical parcel weight,

that if otherwise strictly adhered to by Plaintiff (or any UPS customer) would

have guaranteed Plaintiff's (or any UPS customer's) compliance with Section 8

("Packaging") of the *2018 UPS Tariff/Terms And Conditions Of Service-United*

*States* concerning packaging guidelines for shipments. Therefore,

CRAWFORD'S denial letter dated March 9th, 2018 of which stated:

"Recommendation: Use a new, double-wall corrugated shipping container with a

400-lbs-per-square-inch burst strength or non-US equivalent," violated the

Uniform Deceptive Trade Practices Act 815 ILCS/510/2(12) and by extension

the Illinois Consumer Fraud And Deceptive Practices Act (815 ILCS 505/2) in

constituting conduct that caused misunderstanding and confusion, since Plaintiff

actually purposely adhered to UPS's published recommended packaging

guidelines when packaging the Parcel prior to shipment, and said published

recommended packaging guidelines did not specify that a "400-lbs-per-square-

inch burst strength or non-US equivalent" shipping container was to be used.

52. CRAWFORD'S sole intent and basis in denying Plaintiff's damage claim was so

as to aid and abet UPS and UPS CAPITAL in avoiding and/or otherwise

delaying their payment of Plaintiff's declared excess value liability coverage

claim for the damaged Parcel.

53. At all relevant times herein, CRAWFORD intended for Plaintiff to rely on and

accept its unreasonable, deceptive and vexatious determination regarding the

non-approval of Plaintiff's submitted damage claim for the Parcel, with its

ultimate intent being that Plaintiff either abandon his submitted damage claim or be otherwise compelled to absorb the time and expense to file the instant lawsuit against UPS under the Carmack Amendment.

54. As a proximate result of CRAWFORD'S unreasonable, deceptive, and vexatious denial of Plaintiff's declared excess value coverage claim without a valid basis and under false pretenses in violation of the Illinois Consumer Fraud And Deceptive Practices Act (815 ILCS 505/2), Plaintiff was actually compelled to absorb the time and expenses of filing this lawsuit against UPS so as to obtain the declared value liability coverage amount ($680) for the Parcel that he was charged for by UPS as an additional fee ($6.30) prior to its shipment by UPS, and of which should have been reimbursed to Plaintiff upon Plaintiff's original notification to UPS of the damaged Parcel. Therefore, Plaintiff is entitled to the costs of this suit as an actual damage as pursuant to 815 ILCS 505/10a.

55. As a proximate result of CRAWFORD'S deceptive acts and violations as stated within paragraphs 31 through 54, Plaintiff is entitled to additional actual pecuniary damages as pursuant to 815 ILCS 505/10a; aggravation and inconvenience damages; attorneys fees where applicable, and any other damage permissible upon further motion under 815 ILCS 505/10a, including punitive damages.

**COUNT THREE- VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT (815 ILCS 505/) AGAINST DEFENDANT UNITED PARCEL SERVICE, INC.**

56. Plaintiff re-incorporates all prior paragraphs as if fully set forth herein.

57. On or about March 3, 2018, UPS issued Plaintiff an invoice (#0000699A25098)

in the amount of $115.47. Of that amount, $32.04 relates to two unrelated prior shipments, and $83.43 of which relates to the original shipping charges for the damaged Parcel as specified in paragraph 7 herein of which Plaintiff is entitled to reimbursement for under the Carmack Amendment.

58. On or about March 24, 2018 UPS issued Plaintiff an invoice (#0000699A25128) in the amount of $201.46. Of that amount, $148.84 is legitimate and relates to an unrelated prior shipment, and $52.62 of which is illegitimate and is intentionally mislabeled by UPS on the invoice as "Ground Undeliverable Return fee--Receiver did not order." UPS billed this illegitimate portion of $52.62 to Plaintiff specifically in connection with its alleged investigation of Plaintiff's submitted damaged-Parcel claim.

59. On or about March 31st, 2018 UPS issued Plaintiff an additional invoice (#0000699A25138) in the amount of $39.14. Of that amount, $24.05 is legitimate and relates to an unrelated prior shipment, and $15.09 of which is illegitimate and specifically relates to further (adjusted) fees ($8.16) UPS has charged Plaintiff in connection with its alleged investigation of Plaintiff's submitted damaged-Parcel claim as specified in paragraph 58 herein, as well as a late payment fee ($6.93) resulting from Plaintiff's non-payment of the previous invoice (#0000699A25098) of which included the original shipping charges for the damaged Parcel as specified in paragraphs 7 and 57 herein.

60. On or about April 21st, 2018, UPS issued Plaintiff an additional invoice (#0000699A25168) in the amount of $12.09 consisting of a late payment fee for Plaintiff's non-payment of the previous invoice (#0000699A25128) specified in

paragraph 57 herein and of which contains illegitimate and fraudulent charges.

61.   On or about April 28th, 2018, UPS issued Plaintiff an additional invoice
(#0000699A25178) in the amount of $2.35 consisting of a late payment fee for
Plaintiff's non-payment of the previous invoice (#0000699A25138) specified in
paragraph 58 herein and of which contains illegitimate and fraudulent charges.

62.  In or about mid to late April of 2018, a representative within UPS' billing
department contacted Plaintiff by telephone requesting payment for the invoices
referenced in paragraphs 57-61 herein, in the total collective amount of $370.51.
Plaintiff indicated to the UPS representative that a portion of each individual
invoice comprising that total amount contained illegitimate charges and was in
dispute, and that a legal action would be forthcoming against UPS.

63.  In or about mid to late April or early May of 2018, Plaintiff contacted UPS'
billing department by telephone and inquired about paying the non-disputed
portions (i.e. individual shipments that were successfully delivered) of each
individual invoice referenced in paragraphs 57-61 herein, but was told that
partial payments towards individual shipments within any given invoice was not
permitted.  When Plaintiff further inquired as to why each invoice billed to
Plaintiff contained multiple unrelated shipments instead of individual shipments,
the UPS representative could not specify or articulate any reason.

64.   In or about mid to late April or early May of 2018, Plaintiff submitted a notice
of dispute to UPS through UPS's online billing center at
as required by section 52.1 of the *2018 UPS Tariff/Terms And Conditions Of
Service-United States* for each invoice referenced in paragraphs 57-61 herein,

but received no invoice adjustment or response.

65.   On or about May 4th, 2018, UPS issued Plaintiff a letter notifying him that his account with UPS had been placed on credit suspension for non-payment of the invoices specified in paragraphs 57-61 herein, in the total collective amount of $370.51, including interest and late fees.

66.   On or about June 2nd, 2018, UPS's third party collection agency, The Receivable Management Services LLC, sent Plaintiff a notice seeking to collect an alleged balance due of $370.51 on behalf of UPS of which is comprised of the invoices specified in paragraphs 57-61 herein.

67.   On or about July 5th, 2018, Plaintiff sent a written notice via USPS certified mail to UPS's third party collection agency, The Receivable Management Services LLC, notifying it that the amount being sought by UPS as specified in paragraph 66 herein is in dispute.

68.   On July 20th, 2018, Plaintiff again submitted emailed dispute notices to UPS through UPS.com using the support category "Billing" as required by section 52.1 of the *2018 UPS Tariff/Terms And Conditions Of Service-United States* for each invoice referenced in paragraphs 57-61 herein.

69.   On July 23rd, 2018, Plaintiff received two emails from separate UPS representatives ("Andrea C." and "Glen") stating that Plaintiff's written disputes are denied and that Plaintiff's account has been suspended and sent to third-party collections.

70.   UPS's deceptive material omission from its *2018 UPS Tariff/Terms And Conditions Of Service-United States* of its intent to retroactively bill extra fees to

UPS customers—including billing extra fees to Plaintiff as specified in paragraphs 58-61 herein—for allegedly investigating any submitted claims involving damaged parcels in excess of UPS's default maximum liability limit of $100, including allegedly investigating Plaintiff's submitted claim for the damaged Parcel of which was in excess of UPS's default maximum liability limit of $100, constitutes an unfair and deceptive business practice in violation of the Illinois Consumer Fraud And Deceptive Practices Act (815 ILCS/505/2), since UPS customers, including Plaintiff, relied upon the expressed and explicit terms contained within *2018 UPS Tariff/Terms And Conditions Of Service-United States* as being the complete terms of the shipping agreement.

71. UPS's deceptive and knowingly-false mislabeling of its retroactively billed investigation fees to Plaintiff as "undeliverable ground return fees-receiver did not order" as specified in paragraph 58 herein, and then joining such illegitimately billed fees into other shipping invoices consisting of unrelated (legitimate) UPS shipping fees owed by Plaintiff, while simultaneously refusing to accept partial payments from Plaintiff towards the legitimate portions/shipments of said invoices so as to instead charge late fees and interest on the full amount constitutes deception fraud in violation of the Illinois Consumer Fraud And Deceptive Practices Act (815 ILCS/505/2), since Plaintiff relied upon the expressed and explicit terms contained within *2018 UPS Tariff/Terms And Conditions Of Service-United States* as being the complete terms of the shipping agreement, and such illegitimately-billed fees are not specified within said terms.

72. As a proximate result of Plaintiff's reliance on the expressed and explicit terms of the *2018 UPS Tariff/Terms And Conditions Of Service-United States*, Plaintiff has incurred accruing monetary damages in the amount of $87.15 in illegitimate fees being sought by UPS as specified in paragraphs 57-61 herein, and being compelled to both mail a written notice to UPS's third party collection agency and file the instant lawsuit against UPS so as to mitigate further collection activity on said illegitimate fees.

**COUNT FOUR- VIOLATION OF THE RACKETEER AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1962(c) AGAINST DEFENDANT CRAWFORD AND COMPANY**

73. Plaintiff re-incorporates all prior paragraphs as if fully set forth herein.

74. Since at least 2008, and at all relevant times herein, an enterprise has existed consisting of UPS and UPS CAPITAL (the "ENTERPRISE"), or in the alternative, an enterprise consisting of UPS alone ("ALTERNATIVE ENTERPRISE"), of which is directly involved in and affects interstate commerce.

75. UPS CAPITAL is a wholly owned subsidiary of UPS and is incorporated in the state of Ohio, with its principal place of business in Atlanta, Georgia. It sells various parcel/cargo insurance plans and other financial products/services and also administers UPS's excess declared value program; however, it delegates the adjustment, investigation and claim determination duties for excess declared value claims submitted by UPS customers to CRAWFORD.

76. Since at least 2008, CRAWFORD has served as an ongoing contracted third-party agent of the ENTERPRISE or the ALTERNATIVE ENTERPRISE, and as

such, administers, inspects, investigates, evaluates, negotiates, and/or pays excess declared value claims made by customers of UPS in exchange for an ongoing economic benefit of its own from the ENTERPRISE or the ALTERNATIVE ENTERPRISE.

77. Since at least 2008, CRAWFORD has received and continues to receive a significant amount of revenue each year from the ENTERPRISE or the ALTERNATIVE ENTERPRISE in performing the tasks specified in paragraph 76.

78. Since at least 2008, the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) has engaged in an ongoing scheme to defraud UPS customers—including Plaintiff as set forth herein—by enticing UPS customers through the terms of its *UPS Tariff/Terms And Conditions Of Service-United States* (including revised versions), and through specific options listed within the shipping section of its primary website (            ) and within its physical shipping documents, to either directly prepay UPS and/or pre-authorize UPS to bill for fees of which are separate and additional than actual shipping fees for the purpose of allowing a UPS customer to declare a value for liability coverage in excess of UPS's default maximum liability rate of $100 for any given parcel. The ENTERPRISE (or the ALTERNATIVE ENTERPRISE) then simultaneously implements deceptive practices and also knowingly permits CRAWFORD to utilize deceptive practices to aid and abet it in avoiding paying a significant percentage of excess declared value liability damage-claims submitted by UPS customers where the declared value of the damaged parcels are in excess of UPS's default maximum liability

rate of $100, and where the damaged parcels were damaged solely by UPS's negligent handling.

79. The deceptive practices used and permitted by the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) to obtain prepaid/pre-billed additional fees from UPS customers and avoid paying out on a significant percentage of declared value claims as referenced in paragraph 78 herein consists of: 1) Enticing UPS customers, including Plaintiff, through its *UPS Tariff/Terms And Conditions Of Service-United States* and through specific options listed within both its primary website (www.ups.com) and its physical shipping documents to either directly prepay UPS or otherwise pre-authorize UPS to bill additional and separate fees so as to raise the declared value of any given parcel above UPS' default maximum liability release rate of only $100 prior to its shipment; 2) Deliberately omitting any *definitive* requirements or packaging guidelines (i.e. box size, bursting strength and/or edge crush rating requirements as corresponding to any specific numerical parcel-weight/dimensions for shipments) from both UPS's primary website (www.ups.com) and its *UPS Tariff/Terms And Conditions Of Service-United States* that if strictly adhered to by Plaintiff as a shipper (or by any UPS customer as a shipper) would have guaranteed Plaintiff's (or any UPS customer's) contractual compliance with Section 8 ("Packaging") of its *UPS Tariff/Terms And Conditions Of Service-United States* concerning packaging guidelines for shipments, and thus, permitting the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) and its contracted third-party agent CRAWFORD, the absolute and sole discretion to

subjectively deny any damage claim submitted by a UPS customer on the alleged ground of "improper packaging," whether said denial on that basis is actually reasonable, legitimate, or not, since there is no explicitly defined packaging standard for absolute compliance; 3) Knowingly permitting its contracted third-party agent CRAWFORD to use false pretenses such as "improper packaging" to intentionally deny a significant percentage of damage-claims submitted by UPS customers where the declared value of the damaged parcel is in excess of UPS's default maximum liability rate of $100—including denying Plaintiff's submitted damaged Parcel-claim in excess of $100 on the false basis of "improper packaging"—without any thorough investigation, legitimate reason, or otherwise good-faith basis for such denial and where such claims should have been paid; and 4) Directly compelling and/or permitting CRAWFORD to directly compel UPS customers to either abandon their submitted damaged-parcel claims or alternatively absorb the time and expense in actually filing a lawsuit against UPS as the UPS customer's only recourse for obtaining the pre-paid/pre-billed and pre-declared excess value liability coverage for a parcel damaged directly and exclusively by UPS and of which legitimately should have been reimbursed by UPS, including actually compelling Plaintiff to file the instant lawsuit so as to obtain the declared value liability coverage for the damaged Parcel as specified in paragraph 8 herein.

80. In fact, the Packaging Advisor section of UPS's primary website explicitly states thereon: "UPS's packaging guidelines are recommendations to assist you in packaging your shipment. Following these guidelines is *not a guarantee* that an

item is sufficiently packaged for transportation." As such, Plaintiff as a shipper was (and any UPS customer in general is) compelled to use a "best-judgment" method of selecting appropriate packaging materials, while UPS and any of its contracted third-party agents that adjudicate damage claims on its behalf in exchange for contracted economic benefit, including CRAWFORD, operate with the absolute and sole discretion to subjectively deny any damage claim submitted by a UPS customer on the alleged ground of "improper packaging," whether said denial on that basis is actually reasonable, legitimate, thoroughly investigated, or not, since there is no definitive packaging standard of which would absolutely guarantee a shipper's compliance with the *UPS Tariff/Terms And Conditions Of Service-United States*.

81. Since at least 2008, CRAWFORD has participated in the conduct of the ENTERPRISE's (or the ALTERNATIVE ENTERPRISE'S) affairs through a repeated and open-ended pattern of using both interstate wire and mail service in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1341 in furtherance of the ENTERPRISE'S (or the ALTERNATIVE ENTERPRISE'S) fraudulent activities as described in paragraphs 78-80 herein, by intentionally denying through false pretenses, deception, and/or without any thorough or legitimate investigation, reason, or otherwise good-faith basis, a significant overall percentage of declared value reimbursement claims submitted by different UPS customers across the majority of the fifty (50) U.S states each year (reasonably believed to be a *minimum* of 50-100 individual claims per year) of which were/are in excess of UPS's default maximum liability release rate of $100—and

of which were completely valid but illegitimately denied—so as to compel UPS customers to either abandon their claim or alternatively absorb the time and expense to file a lawsuit against UPS as the only recourse to obtain their (prepaid) declared value reimbursement coverage, including its use of false pretenses to actually compel Plaintiff to file the instant lawsuit against UPS through its intentional denial of Plaintiff's valid declared-value reimbursement claim pertaining to the damaged Parcel without a thorough investigation, legitimate reason, or otherwise good-faith basis, and of which has proximately caused Plaintiff damage to business and property (i.e. financial loss), including costs of suit as an actual damage.

82. So as to further aid and abet the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) in avoiding paying out on a significant portion of valid declared value reimbursement claims to UPS customers for parcels damaged by UPS' handling, CRAWFORD makes a deliberate effort in training its claims adjusters to specifically look for methods to deny as many damage claims submitted by UPS customers as possible of which are in excess of UPS' default maximum liability rate of $100, and instead compel such customers to either abandon their claims or alternatively absorb the time and expense to file a lawsuit as their only recourse for obtaining declared value reimbursement for a damaged parcel. In fact, there are comments posted on a public Internet consumer forum (topix.com) in September of 2011 purportedly by a formerly employed claims adjuster (Adam Rust of Dallas, Texas) of CRAWFORD—of which indicates that CRAWFORD makes a deliberate effort to train its adjusters with such objective.

83. In exchange for aiding and abetting the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) in the manner specified in paragraphs 76-82, CRAWFORD received and continues to receive an ongoing independent economic benefit from the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) on a contracted basis for adjustments/determinations of damage claims submitted by UPS customers.

84. As a result of the ENTERPRISE'S (or the ALTERNATIVE ENTERPRISE's) activities and CRAWFORD's ongoing participation therein since at least 2008, UPS benefited and continues to benefit by 1) Receiving and then maintaining pre-paid/pre-authorized additional fees routinely paid by UPS customers specifically for declared value liability coverage in excess of UPS's default amount of $100, even in a significant amount of instances where UPS negligently damages a UPS customer's parcel; 2) Receiving and then maintaining the actual shipping fees routinely paid by UPS customers, even in a significant amount of instances where UPS negligently damages a UPS customer's parcel; and 3) Receiving greater revenue production and/or other economic value from UPS CAPITAL which it wholly owns as a subsidiary, since UPS CAPITAL did/does not expend as much in reimbursement costs to UPS customers for excess declared value liability claims that it otherwise would have, had a significant percentage of valid damage claims not been illegitimately denied by CRAWFORD.

85. As a result of the ENTERPRISE'S activities and CRAWFORD's participation therein since at least 2008, UPS CAPITAL benefitted and continues to benefit

by: 1) Avoiding having to pay greater yearly reimbursement costs for excess declared value coverage claims made by customers of UPS for damaged parcels, even in a significant amount of instances where UPS itself negligently damaged/damages a UPS customer's excess declared value parcel, and therefore maintained/maintains a greater portion of its total yearly revenue; and 2) Being in better position to entice existing and future customers with attractive and/or otherwise market-competitive cargo insurance premium rates (and other products and services) as a direct result of it having maintained/continuing to maintain greater overall revenue due to illegitimate claim denials.

86. As a result of the ENTERPRISE's (or the ALTERNATIVE ENTERPRISE'S) activities and CRAWFORD's participation therein, numerous lawsuits as well as written consumer complaints and grievances have been ongoingly filed and/or made by different UPS customers in Illinois and across the United States each year since 2008 against UPS and CRAWFORD (including in the majority of all 50 states), to consumer publications, organizations, Internet consumer forums, and elsewhere, specifically regarding UPS & CRAWFORD'S improper and otherwise unreasonable denials of submitted damaged parcel claims of which were in excess of UPS's default maximum liability release rate of $100 and of which were specifically denied unreasonably and/or through the "false pretense of "improper packaging", including but not limited to the Better Business Bureau, Ripoff Report, Consumerist, WalletPop/Consmer Ally, Amazon Seller Central, WWAY3 North Carolina, PeopleClaim.com, howtosueups.com and Topix.com.

87. On 3/8/18, Plaintiff received a voicemail from an individual affiliated with CRAWFORD named Rheanna Thrower. In her voicemail, Ms. Thrower notified Plaintiff that Plaintiff's submitted declared value claim to UPS for his damaged Parcel was not approved because the item was allegedly improperly packed in a single-wall box and that the item should have been "double-boxed" with at least 2" of foam cushioning and high edge crush rating. However, Ms. Thrower knew that her telephone voicemail stating that the Parcel's packing was improper was false at the immediate time she made it, and also that CRAWFORD'S denial of Plaintiff's claim was both unreasonable and made solely so as to aid and abet the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) in furtherance of its activities as stated herein, thereby constituting an act in violation of 18 U.S.C. § 1343.

88. On 3/8/18, Plaintiff notified UPS customer service by telephone that he wished to dispute the denial of his declared value liability coverage claim for the Parcel because he had in fact followed all of UPS's published recommended packaging guidelines, and that the Parcel would not have been damaged but not for its gross mishandling by UPS during its transit. The UPS customer service representative indicated to Plaintiff that he would forward Plaintiff's appeal back to the claims department for review.

89. In the early evening on Friday, 3/9/18, Plaintiff received a second phone call from Rheanna Thrower. Ms. Thrower stated to Plaintiff that she'd received his dispute of CRAWFORD'S decision to deny his declared value liability coverage claim for the damaged Parcel, and that based on an alleged "investigation report"

that she'd reviewed regarding the Parcel's packaging and damage, she would not

overturn the original written decision that "the merchandise was not adequately

cushioned. The single-wall box was not adequate to support the weight of the

merchandise." However, Ms. Thrower knew that her statements over the phone

to Plaintiff that the Parcel's packing was improper was false at the immediate

time she made them, and also that CRAWFORD'S denial of Plaintiff's claim

was both unreasonable and made solely so as to aid and abet the ENTERPRISE

(or the ALTERNATIVE ENTERPRISE) in furtherance of its activities as stated

herein, thereby constituting an act in violation of 18 U.S.C. § 1343.

90. When asked by Plaintiff over the telephone on 3/9/18 as to what specific photos

and information she'd reviewed, Ms. Thrower indicated that she was uncertain

and that Plaintiff was free to personally email her any photographs in his

possession depicting the Parcel's packaging which she would then review the

following Monday (3/12/18).

91. On 3/9/18, CRAWFORD mailed Plaintiff a letter (dated 3/9/18) through the

United States Parcel Service, signed by Ms. Thrower, of which stated that

Plaintiff's submitted declared value claim for the damaged Parcel was denied

and that "the complete contents have been kept by the consignee." Within the

letter, the stated basis for the denial, in part, was that "The new, single-wall,

corrugated shipping container with a 200-lbs-per-square-inch burst strength was

not sufficient to support the package weight. Recommendation: Use a new,

double-wall, corrugated shipping container with a 400-lbs-per-square inch burst

strength or non-U.S. equivalent. The foam sheeting, double-box, paper carton

used for cushioning did not adequately protect the merchandise." However, CRAWFORD knew that the expressed statements within its letter alleging that the Parcel's packing was improper were false at the immediate time the letter was mailed to Plaintiff, and also that its denial of Plaintiff's claim was both unreasonable and made solely so as to aid and abet the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) in furtherance of its activities as stated herein, since CRAWFORD had not conducted any legitimate investigation of its own of the damaged Parcel, and also that the photographs that Plaintiff sent to UPS as specified in paragraph 35 herein depicted that the Parcel was packed in full compliance with UPS's published packaging advisor recommendations as required by the *2018 UPS Tariff/Terms And Conditions Of Service-United States*. Therefore, the content of CRAWFORD's 3/9/18 denial letter to Plaintiff as sent through the United States Postal Service consisted solely of false pretenses in furtherance of the ENTERPRISE'S activities, thereby constituting an act in violation of 18 U.S.C. § 1341.

92. On Sunday evening, 3/11/18, Plaintiff emailed Ms. Thrower with the same photos specified in paragraph 35 herein, and again indicated therein his email that the Parcel's packaging was in compliance with UPS's published recommended packaging guidelines. Further, Plaintiff restated to Ms. Thrower that CRAWFORD'S written basis for denying Plaintiff's claim that "the single-wall box was not adequate to support the weight of the merchandise" was in and of itself wholly inaccurate since the photographs clearly depicted that the item was packed in a double-wall box of which adhered to UPS's published

recommended packaging guidelines, as well as double-boxed in a single-wall
box with multiple inches of foam padding and other protective measures
(Styrofoam peanuts, cardboard dividers, etc.), and that she had no legitimate
basis to continue delaying approval of Plaintiff's claim.

93. On 3/12/18, Ms. Thrower left another voicemail for Plaintiff indicating that the
Plaintiff's dispute was not approved because the Parcel was "not packed
properly." However, Ms. Thrower knew that her telephone voicemail stating
that the Parcel's packing was improper was false at the immediate time she made
it since CRAWFORD had not conducted any legitimate investigation of its own
of the damaged Parcel, and also that the photographs that Plaintiff sent to UPS as
specified in paragraph 35 herein depicted that the Parcel was packed in full
compliance with UPS's published packaging advisor recommendations as
required by the *2018 UPS Tariff/Terms And Conditions Of Service-United
States*. Therefore, CRAWFORD'S continued intentional denial of Plaintiff's
claim through Ms. Thrower's voicemail based on false pretenses was both
unreasonable and made solely so as to aid and abet the ENTERPRISE (or the
ALTERNATIVE ENTERPRISE) in furtherance of its activities as stated herein,
thereby constituting an act in violation of 18 U.S.C. § 1343.

94. On 3/12/18, Plaintiff called Ms. Thrower back and left a voicemail seeking
further explanation regarding the claim denial, but Ms. Thrower did not return
Plaintiff's call, nor did anybody else at CRAWFORD, UPS or UPS CAPITAL.

95. On 3/12/18, CRAWFORD mailed Plaintiff a second letter (dated 3/12/18)
through the United States Parcel Service, signed by Ms. Thrower, of which

34

stated that as a result of its "investigation", Plaintiff's submitted declared value claim for the damaged Parcel was denied for improper packing. However, CRAWFORD knew that the expressed statements within its letter alleging that the Parcel's packing was improper were false at the immediate time the letter was mailed to Plaintiff, and also that its denial of Plaintiff's claim was both unreasonable and made solely so as to aid and abet the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) in furtherance of its activities as stated herein, since CRAWFORD had not conducted any legitimate investigation of its own of the damaged Parcel, and also that the photographs that Plaintiff sent to UPS as specified in paragraph 35 herein depicted that the Parcel was packed in full compliance with UPS's published packaging advisor recommendations as required by the *2018 UPS Tariff/Terms And Conditions Of Service-United States*. Therefore, the content of CRAWFORD's 3/9/18 denial letter to Plaintiff as sent through the United States Postal Service consisted solely of false pretenses in furtherance of the ENTERPRISE'S activities, thereby constituting an act in violation of 18 U.S.C. § 1341.

96. Since at least 2008 (if not earlier), as the ENTERPRISE'S (or ALTERNATIVE ENTERPRISE'S) contracted claims examiner/adjuster, CRAWFORD has used telephone communications, computer communications (i.e. email) and interstate courier-mailings as its regular and primary business methods of conveying claim denials based on false pretenses and deception to different UPS customers (including Plaintiff) across the United States (including in the majority of all 50 states) in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343 so as to aid and

abet the activities of the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) through its ongoing participation in intentionally denying a significant number (reasonably believed to be a bare *minimum* of 50-100 individual claims) of valid declared value claims each year.

97. Each year since at least 2008 (if not earlier), CRAWFORD, as the ENTERPRISE'S (or ALTERNATIVE ENTERPRISE'S) contracted claims examiner/adjuster, has directly caused through its open-ended regular practice of intentionally and knowingly denying valid declared-value claims using false pretenses and deception in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343, numerous legal actions (reasonably believed to be a bare *minimum* of 50-100 each year since 2008) to be filed against UPS across the United States (including in the majority of all 50 U.S states) by different UPS customers, including actions that have been chronologically filed by UPS customers against UPS even after the subject events of the instant lawsuit brought by Plaintiff, as said UPS customers have had/have no other recourse but to file such lawsuits to obtain declared value reimbursement for their submitted damaged-parcel claims that should have otherwise been paid by UPS CAPTIAL but not for CRAWFORD'S illegitimate claim denials.

98. Since at least 2008 (if not earlier), and at all relevant times herein, CRAWFORD intended for Plaintiff (and any UPS customer) to rely on it for a good-faith "thorough investigation" of damaged parcel claims as pursuant to the duty it voluntarily assumed (in exchange for economic benefit) from UPS as explicitly promised under Section 54.4 of the *2018 UPS Tariff/Terms And Conditions Of*

*Service-United States* to "thoroughly investigate" UPS customer claims for losses or damages to customer shipments.

99. Because CRAWFORD had actual knowledge—including photographic evidence—that Plaintiff's Parcel was clearly packed in accordance with UPS's packaging advisor guidelines as published on its primary website (ups.com), CRAWFORD knowingly had no reasonable or otherwise valid basis to deny Plaintiff's declared value damage claim, and therefore, CRAWFORD'S intentional denial of Plaintiff's claim by telephone and mailed correspondence was knowingly under false pretenses, deceptive, and not based upon any legitimate "thorough investigation" of the claim, but denied solely to aid and abet the ENTERPRISE (or the ALTERNATIVE ENTERPRISE) in avoiding paying a legitimate declared value claim.

100. Plaintiff actually relied on CRAWFORD's representation of conducting a good-faith and thorough investigation of his submitted excess declared value liability claim for the damaged Parcel, as well as his subsequent appeal of its denial, since CRAWFORD voluntarily assumed (from the ENTERPRISE in exchange for some economic benefit) the contractual duty explicitly promised under Section 54.4 of the *2018 UPS Tariff/Terms And Conditions Of Service-United States* to "thoroughly investigate" UPS customer claims for losses or damages to shipments.

101. Had Plaintiff known prior to shipping the Parcel that CRAWFORD, as UPS's contracted claims examiner/adjuster, participates in the furtherance of the ENTERPRISE's activities by intentionally denying a significant percentage of

37

valid declared value claims as part of its regular business practice, and that Plaintiff would instead be compelled to absorb the time and expense to file the instant lawsuit against UPS in order to obtain the declared value reimbursement amount for the damaged Parcel, Plaintiff would not have authorized UPS to charge the additional fee of $6.30 so as to raise UPS's release rate liability from its default value of $100 to $680 as specified in paragraph 8 herein, and instead would have sought out a different shipping courier other than UPS to transport the Parcel, or alternatively, would have purchased some other third party cargo insurance.

102. As a proximate result of CRAWFORD's use of both wire communications and interstate-courier communications containing false pretenses to intentionally deny Plaintiff's submitted declared value claim for the damaged Parcel in furtherance of the ENTERPRISE'S activities, and Plaintiff's reliance upon such communications as a legitimate claim examination process as explicitly promised under Section 54.4 of the *2018 UPS Tariff/Terms And Conditions Of Service-United States* of which CRAWFORD voluntarily assumed and of which specified that UPS customer claims for losses or damages to shipments would be "thoroughly investigate[d]", Plaintiff was subsequently compelled to file the instant lawsuit against UPS and under the Carmack Amendment as his only recourse, and as such, has sustained undue financial loss including costs of suit as an actual damage, and other pecuniary damage to business.

**WHEREFORE**, having stated his causes of action, Plaintiff, Anthony Martino, prays for judgment against Defendants, in the total amount of $95,000 to be proven at trial,

including $680 against Defendant UPS in actual damages resulting from the complete

destruction of the Parcel pursuant to The Carmack Amendment 49 U.S.C. §14706;

$83.43 against Defendant UPS for reimbursement of UPS's billed transportation charges

pertaining to the shipment of the Parcel pursuant to The Carmack Amendment 49 U.S.C.

§14706; $82.15 against Defendant UPS for UPS's retroactively billed damage-

investigation charges deceptively mislabeled as "ground undeliverable fees" and accruing

interest and late fees pursuant to 815 ILCS 505/10(a); $5.00 against Defendant UPS for

reimbursement of Plaintiff's certified mailing costs to third-party collection agency (The

Receivable Management Services LLC) to notify it of Plaintiff's disputed UPS billing;

costs of suit as a necessary and actual economic damage against Defendant UPS pursuant

to 815 ILCS 505/10(a) for willful failure to waive its retroactively billed damage-

investigation charges currently totaling $82.15 of which are deceptively mislabeled as

"ground undeliverable fees" and compelling Plaintiff to file this lawsuit against it under

the Illinois Consumer Fraud And Deceptive Practices Act so as to mitigate further third-

party collection activity and/or credit reporting damages; $30,000 against Defendant UPS

in damages for aggravation and inconvenience pursuant to 815 ILCS 505/10(a); costs of

suit as a necessary actual damage against Defendant CRAWFORD pursuant to 18 U.S.

Code § 1964(c) or in the alternative pursuant to 815 ILCS 505/10(a) for willfully and

fraudulently denying Plaintiff's damaged-Parcel claim and compelling Plaintiff to incur

the expenses of filing this lawsuit against UPS under The Carmack Amendment 49

U.S.C. §14706 as his sole recourse for obtaining the pre-declared value of the Parcel;

$164.61 against Defendant CRAWFORD in consequential pecuniary damages consisting

of process serving fees and office supplies (paper, ink, and copy) in preparing copies of

the lawsuit and relevant evidence/exhibits as necessary for disclosures pursuant to 18

U.S. Code § 1964(c) or in the alternative pursuant to 815 ILCS 505/10(a); $60,000

against Defendant CRAWFORD in damages for aggravation and inconvenience pursuant

to 815 ILCS 505/10(a); treble of actual pecuniary damages (including costs of suit as an

actual pecuniary damage) against Defendant CRAWFORD pursuant to 18 U.S. Code §

1964(c); and for any such other and further relief which the Court deems to be fair,

equitable and just.

By: _____

Anthony Martino

Anthony Martino
Plaintiff
580 Vernon Ln.
Buffalo Grove, IL 60089
847-977-4128

DATED_____7/26/18_____

# EXHIBIT A



# 2018 UPS® Tariff/Terms and Conditions of Service – United States

## Updated April 2, 2018

*Effective April 2, 2018 (unless otherwise noted)*

# UPS® Tariff/Terms and Conditions of Service – United States

TABLE OF CONTENTS

1. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2. Definitions Used . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3. Commodities Handled
and Restrictions on Service . . . . . . . . . . . . . . . . . . . . . 5
3.1 Items Not Accepted for Transportation . . . . . . . . . . . . . . 5
3.2 Maximum Values . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3.3 Prohibited by Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3.4 Alcoholic Beverages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
3.5 Biological Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
3.6 Firearms and Ammunition . . . . . . . . . . . . . . . . . . . . . . . 7
3.6.1 Firearms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
3.6.2 Ammunition . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
3.7 Food Transport;
Assumption of Legal Responsibility . . . . . . . . . . . . . . . . 7
3.8 Hazardous Materials Service . . . . . . . . . . . . . . . . . . . . . 8
3.9 Dry Ice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
3.10 Limited Quantity/ORM-D Packages . . . . . . . . . . . . . . . 9
3.11 Hazardous Waste, Mercury,
and Mercury-Containing Waste . . . . . . . . . . . . . . . . . . . 9
3.12 Live Animals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
3.13 Perishable Commodities . . . . . . . . . . . . . . . . . . . . . . . . . 9
3.14 Pharmaceuticals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
3.15 Portable Electronic Devices . . . . . . . . . . . . . . . . . . . . . 10
3.16 Tobacco Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4. Provisions for Export and Customs Clearance
of International Shipments . . . . . . . . . . . . . . . . . . . . . . 10
4.1 Electronic Export Information . . . . . . . . . . . . . . . . . . . . 11
4.2 Certificate of Origin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
4.3 UPS Paperless® Invoice Service . . . . . . . . . . . . . . . . . . . 11
4.4 Pre-Release Notification for Import Shipments . . . . . . . 11
4.5 Record-Keeping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5. UPS Import Control® Service . . . . . . . . . . . . . . . . . . . . . 12

6. Right of Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7. Refusal of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8. Packaging . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9. Use of UPS-Provided Materials and Services . . . . . . . . 13

10. Use of UPS Electronic Information Systems . . . . . . . . 13

11. Timely Upload of PLD . . . . . . . . . . . . . . . . . . . . . . . . . . 13
11.1 Use of PLD Obtained Email Addresses
and Telephone Numbers . . . . . . . . . . . . . . . . . . . . . . . 13

12. ZIP Code™/Postal Code Information . . . . . . . . . . . . . . 13

13. P.O. Boxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

14. UPS Customer Center and
UPS Worldwide Express Freight® Center . . . . . . . . . . . 13

15. Third-Party Retailer . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16. UPS Access Point® Locations . . . . . . . . . . . . . . . . . . . . 14
16.1 Ship to a UPS Access Point Location Service . . . . . . . . 14

17. Pickup Services – Scheduled . . . . . . . . . . . . . . . . . . . . 14

18. UPS On-Call Pickup® Service . . . . . . . . . . . . . . . . . . . . 14

19. Saturday Air Processing Fee;
Saturday Stop Charge . . . . . . . . . . . . . . . . . . . . . . . . . 14

20. Drop Shipment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21. Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

22. Direct Delivery Only Surcharge . . . . . . . . . . . . . . . . . . 15

23. Residential Surcharge . . . . . . . . . . . . . . . . . . . . . . . . . . 15

24. Delivery Area Surcharge . . . . . . . . . . . . . . . . . . . . . . . . 15

25. Delivery Attempts; UPS Access Point® Locations . . . . 15

26. Hold for Pickup and Hold at Location Services . . . . . . 16

27. Shipper Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28. UPS carbon neutral . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29. UPS Delivery Intercept® Service . . . . . . . . . . . . . . . . . . 16

30. Delivery Change Requests . . . . . . . . . . . . . . . . . . . . . . 16

31. Correction of Addresses . . . . . . . . . . . . . . . . . . . . . . . . 17

32. Saturday Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

33. Delivery Confirmation Services . . . . . . . . . . . . . . . . . . 17
33.1 Delivery Confirmation (domestic only) . . . . . . . . . . . . 17
33.2 Delivery Confirmation Signature Required
(domestic and international) . . . . . . . . . . . . . . . . . . . . 17
33.3 Delivery Confirmation Adult Signature Required
(domestic and international) . . . . . . . . . . . . . . . . . . . . 17

34. UPS Next Day Air® Early
Verbal Confirmation of Delivery . . . . . . . . . . . . . . . . . 18

35. Proof of Delivery (P.O.D.) . . . . . . . . . . . . . . . . . . . . . . . 18

36. Tracking/Tracing and Refund Request Charge . . . . . . 18

37. Special Handling of Undeliverable Shipments;
Refused Shipments Returned . . . . . . . . . . . . . . . . . . . 18

# UPS® Tariff/Terms and Conditions of Service – United States

TABLE OF CONTENTS *(continued)*

**38. C.O.D. Service** .... 18
38.1 Preparation and Listing of C.O.D. Packages .... 18
38.2 Responsibility for C.O.D.s .... 18
38.3 Consignee's Checks in Payment of C.O.D.s .... 18
38.4 C.O.D. Package of $10,000 or More .... 18
38.5 Acceptance of Personal Check .... 19
38.6 C.O.D. Remittance Verification .... 19
38.7 Restrictions .... 19
38.8 Charges for C.O.D. Collections .... 19
38.9 Remittance of C.O.D.s .... 19

**39. UPS Returns® Services** .... 19

**40. UPS Rates** .... 19
40.1 Daily Rates and Retail Rates .... 20
40.2 Letter Rates .... 20
40.3 Pak Rates .... 20
40.4 UPS 10 KG Box and UPS 25 KG Box Rates .... 20
40.5 Private Express Statutes .... 20
40.6 Rates for Large Packages; Large Package Surcharge .... 20
40.7 Over Maximum Limits Charge .... 20
40.8 Additional Handling Charge .... 20
40.9 Oversize Pallet Handling Surcharge .... 21

**41. Peak Surcharges** .... 21

**42. Fuel Surcharges** .... 21

**43. Manual Processing Charges** .... 21

**44. Third Party Billing Service** .... 21

**45. Billing Options for Domestic Shipments** .... 21

**46. Billing Options for International Shipments** .... 21

**47. Bill My Account** .... 21

**48. Disbursement Fee** .... 21

**49. Currency Conversion Rate** .... 21

**50. Missing/Invalid Account Number or Refusal Fee** .... 22

**51. Shipping Charge Corrections; Audit** .... 22

**52. Payment of Charges** .... 22
52.1 Invoice Adjustment .... 22
52.2 Alternative Payment Plans .... 23
52.3 Late Payment Fee .... 24

**53. UPS Service Guarantee** .... 24
53.1 Conditions .... 25
53.2 Exclusions .... 25

**54. Claims and Legal Actions: Individual Binding Arbitration of Claims** .... 26
54.1 Making Claims for Loss or Damage to Property .... 27
54.2 Acknowledgment of Claims for Loss or Damage to Property .... 27
54.3 Time Limit for Filing Claims for Loss or Damage to Property .... 27
54.4 Investigation of Claims for Loss or Damage to Property .... 28
54.5 Salvage .... 28
54.6 Disposition of Claims for Loss or Damage to Property .... 28

**55. Responsibility for Loss or Damage** .... 28
55.1 Maximum Declared Values .... 29
55.2 Liability Limits .... 29
55.3 Exclusions from Liability .... 30

**56. Data Protection** .... 30

**57. Incorporation of Documents; Waiver; Future Changes** .... 31

# UPS® Tariff/Terms and Conditions of Service – United States

## 1. Introduction

The following contains the general terms and conditions of contract under which United Parcel Service ("UPS") is engaged in the transportation of Package shipments itself and jointly through interchange with its affiliates via the services described below.

The UPS Tariff/Terms and Conditions of Service ("Terms") are effective on the date set forth above and are subject to change without prior notice. The Terms are published periodically in printed form in the *UPS Rate and Service Guide* ("Service Guide") and electronically on the UPS website (*ups.com*). The most current and controlling version of the Terms is published at *www.ups.com/terms*. In tendering a Shipment for service, the Shipper agrees that the version of the Terms and the applicable Service Guide in effect at the time of shipping will apply to the Shipment and its transportation. The Terms apply to the following services:[1]

– UPS Air Services
– UPS Hundredweight Service® Air Services
– UPS 3 Day Select®
– UPS Hundredweight Service® UPS 3 Day Select®
– UPS® Ground
– UPS® Ground with Freight Pricing
– UPS Hundredweight Service® Ground
– UPS Returns® Services

"UPS Air Services" includes:

– UPS Next Day Air® Early
– UPS Next Day Air®
– UPS Next Day Air Saver®
– UPS 2nd Day Air A.M.®
– UPS 2nd Day Air®

"UPS Hundredweight Air Services" includes:

– UPS Hundredweight Service® UPS Next Day Air®

[1]*The Third Party Billing Service fee described in Section 44 applies to all UPS services worldwide, regardless of origin or destination.*

*®Refer to www.ups.com/holidays for service limitations during the holiday season.*

**Note:** *Visit ups.com for guarantee details, service availability, delivery time commitments or to request a pickup.*

– UPS Hundredweight Service® UPS Next Day Air Saver®
– UPS Hundredweight Service® UPS 2nd Day Air A.M.®
– UPS Hundredweight Service® UPS 2nd Day Air®

The Terms apply to the following international services:

– UPS Worldwide Express Plus®
– UPS Worldwide Express NA1®
– UPS Worldwide Express®
– UPS Worldwide Express Freight® Midday
– UPS Worldwide Express Freight®
– UPS Worldwide Saver®
– UPS Worldwide Expedited®
– UPS 3 Day Select® from Canada
– UPS® Standard services

"UPS Worldwide Express Freight Service" includes:

– UPS Worldwide Express Freight Midday
– UPS Worldwide Express Freight

## 2. Definitions Used

– **"Alaska and Hawaii Rates"** refer to the effective UPS Rates for Shipments originating in Alaska and Hawaii published in the effective Service Guide for Alaska and Hawaii, or Retail Rates established by UPS for the service selected by the Shipper that apply to the Shipper and the Package, and are in effect at the time of shipping, plus any additional charges or rates for nonstandard service, additional or nonstandard usage, and any other additional charges referenced within the Terms or the Service Guide, or those applicable additional rates set out in any customized contracts.

– **"Business day"** means Monday through Friday except the following holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day (December 25), and New Year's Eve.®

– **"Charges"** means all applicable transportation and other charges including, but not limited to, all applicable accessorial charges, brokerage service fees, surcharges, additional handling charges and late payment fees. Any such Charges, including but not limited to any surcharges, are not intended solely to cover the cost of providing service and may result in profit to UPS.

– **"Claimant"** means any person asserting any claim in any forum for legal or equitable relief – including, but not limited to, any claim for damages, refunds, credits, injunctive relief, and declaratory relief – arising out of or related to the provision of services by UPS.

– **"C.O.D."** means for all purposes Collect on Delivery.

– **"Commercial"** refers to any address that is not Residential.

– **"Daily Rates" and "Retail Rates"** refer to the effective UPS Rates for Shipments originating in the 48 contiguous United States established by UPS for the service selected by the Shipper that apply to the Shipper and the Package, and are in effect at the time of shipping, plus any additional charges or rates for nonstandard service, or additional or nonstandard usage, and any other additional charges referenced within the Terms or the Service Guide, or those applicable additional rates set out in any customized contracts. Effective December 28, 2015, "Daily Rates" is deemed to mean "Standard List Rates."

– **"Delivery"** shall be deemed to include, but not be limited to any of the following: (1) delivery to the Consignee or the Consignee's actual or apparent agent or representative, or pursuant to Consignee's instructions, (2) delivery to the address or location specified in the UPS Shipping System or, to any person present at such address, (3) delivery to an alternate address or location, including to a UPS Access Point® location, (4) delivery in accordance with trade custom or usage, (5) delivery pursuant to UPS's driver release procedures, (6) delivery pursuant to UPS's Shipper Release procedures, or (7) delivery otherwise permitted under the Terms.

– **"Drop Shipment"** means any Shipment tendered pursuant to a written agreement or prior arrangement between UPS and a specific Shipper that permits the Shipper to tender quantities of individual Packages directly to UPS at a UPS pre-approved designated location.

– **"Letter Rates"** refers to the UPS Rates applicable to single Package Shipments using UPS Express® Envelope or UPS® Letter packaging containing correspondence, urgent documents, or electronic media, with an actual weight of eight

# UPS® Tariff/Terms and Conditions of Service – United States

(8) ounces or less. ("UPS Express® Envelope" and "UPS Letter" may be referred to interchangeably.)

– **"Package"** means any container and its contents, and includes a UPS Express® Envelope, as well as any article that may be handled without packaging if the handling thereof can be accomplished in a reasonably safe and practicable manner.

– **"Perishable Commodity"** refers to a perishable commodity or a commodity requiring protection from heat or cold, including, but not limited to, live animals, foods, dry ice, flowers, biological materials.

– **"Receiver"** or **"Consignee"** refers to the party to whom the Shipment is being sent.

– **"Residential"** refers to an address that is a home, including, but not limited to, a business operating out of a home. If an address can be construed as either Residential or Commercial, then it will be considered Residential.

– **"Shipment"** means one or more Packages, or one or more pallets in a UPS Worldwide Express Freight® Service, shipped under a single Source Document or UPS Automated Shipping System entry to one Receiver.

– **"Shipper"** refers to the party holding the UPS account used to process and tender a Shipment to UPS or, if no account was used for the Shipment, then the party that contracted with UPS for the Shipment. The term Shipper does not include, for example, a party to whom a Shipment was Third Party or collect billed, the party who drops off a UPS Returns® Services package, or a party that uses another party's account for a Shipment.

– **"Third Party"** means any party that is not the Shipper or Receiver/Consignee.

– **"Third-Party Retailers"** means locations of The UPS Store® centers, UPS Authorized Shipping Outlet locations, and UPS Alliance Locations (located within Staples® retail locations). UPS may designate certain Third-Party Retailers as UPS Access Point® locations, as that term is defined below, but all terms and conditions applicable to Third-Party Retailers set forth herein shall continue to apply, regardless of such designation.

– A **"UPS Access Point®"** location is an independently owned and operated business or a location (including a UPS Access Point® locker) designated as a UPS Access Point location by UPS where a Consignee or other recipient may, where available, receive a Package Delivery. Where available, Packages processed for shipment prior to tender using a UPS Shipping System may be tendered to a UPS Access Point® location. Hours of operation and availability of staffing vary by location.

– **"UPS® Automated Shipping System," "Source Document"** and **"PLD Upload."** Source Document means a shipping document provided by UPS for the purpose of tendering a Shipment to UPS for transportation. UPS Automated Shipping System means WorldShip® technology, UPS CampusShip® technology, UPS® Internet Shipping (also referred to as online shipping), UPS marketplace shipping, UPS® Developer Kit, iShip® technology, UPS Host Access, UPS Mobile™ shipping apps, or an approved UPS Ready® solution that meets UPS requirements at the time of Shipment. PLD Upload means the transmission to UPS of Package manifest information, including without limitation, by Host Manifest Upload and Electronic Manifest Tool. The term "UPS Automated Shipping System," "Source Document" and "PLD Upload," individually or collectively, are sometimes referred to by the term "UPS Shipping System."

– **"UPS Customer Center"** means a UPS facility where Shippers may tender Packages to UPS and a Consignee or other recipient may receive a Package Delivery.

– **"UPS Rates"** refers collectively to Daily Rates (which are inclusive of Standard List Rates), Retail Rates, Alaska and Hawaii Rates, Letter Rates, Pak Rates, and UPS 10 KG Box and UPS 25 KG Box Rates.

– **"UPS Returns® Services"** refers collectively to UPS Authorized Return®, Print Return Label, Electronic Return Label, and Print and Mail Return Label, 1 UPS Pickup Attempt, 3 UPS Pickup Attempts, UPS Returns® on the Web, and UPS Returns® Exchange.

– **"UPS Smart Label®"** tag as defined here and described in the *UPS Guide to Labeling*

includes but is not limited to the MAXI-CODE, postal code bar code, current UPS Routing Code, appropriate UPS service level icon, and UPS 1Z tracking number bar code.

– **"UPS Worldwide Express Freight® Center"** means a UPS facility where Shippers may tender UPS Worldwide Express Freight® Service pallets to UPS for transportation, and a Consignee or other recipient may receive pallets.

## 3. Commodities Handled and Restrictions on Service

UPS holds itself out to transport general commodities, as usually defined, subject to the following restrictions.

The Shipper agrees to indemnify, defend, and hold harmless UPS and its affiliated companies, their officers, directors, employees, agents from all claims, demands, expenses, liabilities, causes of action, enforcement procedures, and suits of any kind or nature brought arising from or relating to a Shipment in violation of applicable law or regulation, or of these Terms.

**3.1 Items Not Accepted for Transportation** No service shall be rendered in the transportation of any of the prohibited articles listed in the applicable Service Guide or the Terms.

UPS does not accept for transportation, and Shippers are prohibited from shipping:

– Articles of unusual value, which shall be deemed to include, but are not limited to:
  - Any Package with an actual value of more than $50,000, except that the actual value of Packages declared in accordance with the Enhanced Maximum Declared Value provisions of Section 55.1 ("Maximum Declared Values") cannot exceed $70,000;
  - Any pallet with an actual value of more than $100,000;
  - Coins, cash, currency, bonds, postage stamps, money orders, and negotiable instruments (such as drafts, bills of exchange, or promissory notes, but excluding checks);
  - Unset precious stones, and industrial diamonds;
  - Any article that contains more than 50 percent by weight of gold or platinum, or any combination thereof in raw form including, but not limited to, bullion, bars, or scraps of these metals.

# UPS® Tariff/Terms and Conditions of Service – United States

- Hazardous waste, defined as a solid waste that meets any of the criteria of the hazardous waste as described in 40 C.F.R. § 261.3;

- Human remains, fetal remains, human body parts, or components thereof;

- Common fireworks;

- Replica or inert explosives or weapons that bear an appearance to actual explosives or weapons (except as a contractual service);

- Packages containing marijuana, as that term is defined by 21 U.S.C. § 802(16), including marijuana intended for medicinal use;

- Packages using the same shipping label and tracking number as any other Package or a shipping label altered without UPS's express authorization. If any such Package is found in the UPS system, each such Package is subject to charge and UPS will apply Charges in its sole and unlimited discretion.

- Packages with an actual weight of more than 150 pounds, or Packages that when measured to determine the billable weight exceed 108 inches in length, or exceed a total of 165 inches in length plus girth [(2 x width) + (2 x height)] combined. If found in the UPS system, they are subject to one or more of the following additional charges: Over Maximum Weight, Over Maximum Length, or Over Maximum Size. Such charges apply in addition to all other applicable Charges including, but not limited to, a Large Package Surcharge;

- Without prior approval by UPS, UPS Worldwide Express Freight® Service pallets that exceed maximum size or weight restrictions (which vary by origin and destination) as set forth at *https://www.ups.com/media/en/uwef_max_dim.pdf*. Such pallets are subject to an Oversize Pallet Handling Surcharge.

- Shipments tendered (including pre-processed drop offs) to a Third-Party Retailer or UPS Access Point® location containing any hazardous materials requiring shipping papers, firearms, or ammunition. These prohibitions also apply to shipments delivered to a Third-Party Retailer or UPS Access Point location, except for ammunition that satisfies all requirements for the shipment of ammunition set forth in Section 3.6.2

("Ammunition"), including qualifying for the exception for Limited Quantity/ORM-D packages;

- UPS Returns® Services Shipments containing hazardous materials (except for Limited Quantity/Other Regulated Materials Shipments ("ORM-D") Ground Packages, as set forth below), or firearms, or requiring Delivery Confirmation Services; and

- Any other items prohibited by the Service Guide, or on the *ups.com* website.

Shippers are prohibited from shipping and UPS will not accept for transportation Shipments containing articles that UPS is not authorized to accept or that UPS states in the Terms that it will not accept, including when such Shipments are tendered for transportation at UPS Customer Centers, UPS Worldwide Express Freight® Centers, UPS Access Point® locations, or any Third-Party Retailer.

UPS reserves the right, but is not required, to return to the Shipper any Shipment containing a prohibited article. Such return will be made solely at the Shipper's risk and expense.

## 3.2 Maximum Values
UPS does not accept for service Packages with values as set forth below:

- Any Package with an actual value of more than $50,000, or $70,000 for Packages declared in accordance with the Enhanced Maximum Declared Value provisions of Section 55.1 ("Maximum Declared Values");

- Packages with a value of $1,000 or more shipped via a Third-Party Retailer or UPS Access Point® location (including a UPS Access Point® locker) if such Packages were processed for shipment using a UPS Shipping System prior to drop off at the Third-Party Retailer or UPS Access Point® location or billed using Bill My Account;

- Packages processed for shipment prior to tender using a UPS Shipping System and tendered to a UPS driver or UPS Customer Center with a value of more than $1,000, unless a UPS high-value shipment summary is obtained by the Shipper or person tendering the Package and signed by the driver or UPS Customer Center representative upon tender of the Package;

- Packages shipped or delivered to a UPS Access Point® location with a value of $5,000 or more;

- Domestic Packages with a value of more than $1,000 returned via Print Return Label, Print and Mail Return Label, Electronic Return Label, or 1 UPS Pickup Attempt Return Services;

- International Shipments with a value of more than $1,000 per Package or pallet returned via UPS Print Return Label, UPS Print and Mail Return Label, Electronic Return Label, 1 UPS Pickup Attempt, or 3 UPS Pickup Attempts Return Services (including via UPS Returns® on the Web) unless a UPS high-value shipment summary is obtained by the Shipper or person tendering the Shipment and signed by the driver or UPS Customer Center representative upon tender of the Shipment;

- International UPS Import Control® Shipments with a value of more than $1,000 per Package or pallet unless a UPS high-value shipment summary is obtained by the Shipper or person tendering the Shipment and signed by the driver or UPS Customer Center representative upon tender of the Shipment;

- Packages with a value of more than $500 shipped via a UPS Drop Box;

- Prepaid Letters with a value of more than $100;

- Packages with a value of more than $999 when Shipper Release is selected;

- Packages with a C.O.D. amount in excess of $500 shipped via a UPS Drop Box;

- International Shipments containing jewelry (not including costume jewelry) having a value of more than $500 per Package or pallet or a value of more than $2,500 per Package or pallet for Shipments tendered to eligible destinations set forth at *ups.com/jewelry*;

- UPS Worldwide Express Freight® Midday and UPS Worldwide Express Freight® Service Shipments having a value of more than $100,000 per pallet.

## 3.3 Prohibited by Law
No service shall be rendered by UPS in the transportation of any Shipment that is prohibited by applicable law or regulation of any federal, state, provincial, or local government in the origin or destination country. It is the responsibility of the Shipper to ensure that a Shipment tendered to UPS, and any UPS Shipping System entry that the Shipper prepares for that Shipment, does not violate any federal,

# UPS® Tariff/Terms and Conditions of Service – United States

state, provincial, or local laws or regulations applicable to the Shipment.

## 3.4 Alcoholic Beverages

Packages containing alcoholic beverages (wine, beer, or spirits) are accepted for transportation only as a contractual service and only from Shippers who are licensed and authorized under applicable laws to ship alcoholic beverages. To receive service for Packages containing alcoholic beverages, the Shipper must enter into an approved UPS agreement for the transportation of wine, beer, or spirits, as applicable. For all Packages containing alcoholic beverages, the Shipper must use Delivery Confirmation Adult Signature Required service requesting an adult signature for each Package containing alcoholic beverages, and must affix a special UPS alcoholic beverages label to each Package. Except for UPS Delivery Intercept® requests, requests to reroute Packages containing alcoholic beverages are not available (including, but not limited to, Delivery Change Requests and UPS My Choice® requests). For all U.S. inbound import Shipments containing alcoholic beverages, the Receiver must be licensed and authorized to receive the alcoholic beverages. UPS does not accept Packages containing beer or spirits for Delivery to a consumer. It is the responsibility of the Shipper to ensure that a Package tendered to UPS does not violate any federal, state, or local laws or regulations applicable to the Package.

UPS reserves the right to dispose of any alcoholic beverages tendered for shipment which Shippers are prohibited from shipping, which UPS is not authorized to accept, which UPS states that it will not accept, or which UPS has a right to refuse. UPS reserves the right to discontinue service to any Shipper for, among other reasons, tendering a Package containing alcoholic beverages that does not comply with all applicable laws or the Terms.

## 3.5 Biological Materials

UPS accepts Packages containing "Biological Substance, Category B" as defined in 49 C.F.R. § 173.134, which are prepared in accordance with all aspects of 49 C.F.R. § 173.199.

Transportation of other biological materials is limited, must be prearranged, and will only be provided under the following conditions: the Shipper has received prior written authorization from UPS for the specific Package tendered; and the Shipper

requests service in accordance with the conditions set forth in the written authorization from UPS for the Package tendered. Any Package containing biological materials shall be considered a Perishable Commodity.

## 3.6 Firearms and Ammunition

UPS accepts Packages containing firearms or ammunition only pursuant to the following limitations.

### 3.6.1 Firearms

UPS accepts Packages containing firearms (as defined by Title 18, Chapter 44, and Title 26, Chapter 53 of the United States Code) only (a) between licensed importers, licensed manufacturers, licensed dealers, and licensed collectors (as defined in Title 18, Chapter 44 of the United States Code), and government agencies; and (b) where not otherwise prohibited by federal, state, or local law from (i) an individual to a licensed importer, licensed manufacturer, licensed dealer or licensed collector; and (ii) from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to an individual. The Shipper shall comply with and shall ensure that each Shipment containing firearms complies with all federal, state, and local laws applicable to the Shipper, recipient, and Package, including, without limitation, age restrictions.

– The Shipper must use Delivery Confirmation Adult Signature Required service for each Package containing a firearm (including handguns). UPS, in its sole and unlimited discretion, may require the Shipper to select a UPS Next Day Air® delivery service for any Package containing a firearm. Handguns (as defined by 18 U.S.C. § 921) will be accepted for transportation only via a UPS Next Day Air delivery service.

– Firearms (including handguns) are accepted for transportation only via Scheduled Pickup Service or at a UPS Customer Center. Firearms (including handguns) are not accepted for transportation via UPS Drop Boxes or in response to a request for UPS On-Call Pickup® service, and are not eligible for Delivery Change Requests (including, but not limited to, requests to hold for pickup) or UPS My Choice® requests, or drop-off or pickup at UPS Access Point® locations or Third-Party Retailers. UPS Returns® Services are not available for Packages containing firearms.

– Firearm parts, which do not constitute firearms as defined under federal law (including without limitation Title 18, Chapter 44, and Title 26, Chapter 53 of the United States Code), and which otherwise comply with federal, state, and local law, will be accepted for transportation.

– Firearms (including handguns) and firearm parts are not accepted for shipment internationally. Replicas or simulated firearms are not accepted for shipment internationally except as a contractual service.

*See www.ups.com/content/us/en/resources/ ship/packaging/guidelines/firearms.html or contact UPS for more information.*

### 3.6.2 Ammunition

UPS accepts ammunition for transportation where such ammunition constitutes "cartridges, small arms," as defined in 49 C.F.R. § 173.59. The Shipper shall comply with and shall ensure that each Shipment containing ammunition complies with all federal, state, and local laws applicable to the Shipper, recipient, and Package, including, without limitation, age restrictions.

– Ammunition will be transported only when packaged and labeled in compliance with 49 C.F.R. § 172 (Hazardous Materials), and must be shipped in accordance with the *UPS Guide for Shipping Ground and Air Hazardous Materials*. Ammunition may not be shipped in the same package as a firearm.

– To meet the exception for Limited Quantity/ORM-D, ammunition can be shipped via UPS Ground only within the 48 contiguous United States or UPS Ground Intra-Oahu and Intra-Alaska. All other allowable ammunition Shipments are accepted only on a contractual basis, and must be prepared under the rules for a fully regulated hazardous material. See further details in Section 3.10 ("Limited Quantity/ORM-D Packages").

– Ammunition is not accepted for shipment internationally.

*See www.ups.com/content/us/en/resources/ ship/packaging/guidelines/firearms.html, www.ups.com/content/us/en/resources/ prepare/packaging/guidelines/ammunition. html or contact UPS for more information.*

### 3.7 Food Transport; Assumption of Legal Responsibility

Shipments containing "food," as defined in section 201(f) of the Federal Food,

# UPS® Tariff/Terms and Conditions of Service – United States

Drug, and Cosmetic Act, will be accepted for transportation only according to the following terms. Shipper assumes all responsibility with respect to establishing and maintaining all records required under 21 C.F.R. Part 1 Subpart J §§ 1.326-1.363. In so doing, Shipper assumes the legal responsibility under 21 C.F.R. § 1.363 for establishing and maintaining records that would otherwise be required to be maintained by UPS. Shipper agrees its records will comply with 21 C.F.R. § 1.352 and shall identify the immediate recipient of the transported food; the origin and destination points of shipment; the date the Shipment is received and the date released; the number of Packages shipped; a description of the freight describing the type of food received and released; and the route of movement. Shipper agrees expressly to make all records required by 21 C.F.R. § 1.352 available to FDA as required by 21 C.F.R. § 1.361. Shipper commits, and recognizes that it has the responsibility, to ensure that all such records are maintained consistent with the record retention requirements provided in 21 C.F.R. § 1.360 and the record availability requirements provided in 21 C.F.R. § 1.363. Shipper agrees that within 45 days of the date of shipment, Shipper will obtain or request from UPS any information needed from UPS to satisfy Shipper's responsibility to establish and maintain records. Shipper recognizes that the foregoing obligations with respect to establishing and maintaining records cannot be terminated. Shipper expressly agrees to immediately assume responsibility to establish and maintain records as provided in this paragraph, regardless of any FDA-designated compliance date for any provision of 21 C.F.R. Part 1 Subpart J.

### 3.8 Hazardous Materials Service

Hazardous Materials, defined as those materials regulated under Title 49 of the Code of Federal Regulations (49 C.F.R.) (excluding Limited Quantity/Other Regulated Materials Shipments ("ORM-D") Ground Packages, as referenced below), and Dangerous Goods, defined as those materials regulated by the International Civil Aviation Organization (ICAO) and published in the International Air Transport Association (IATA) Dangerous Goods Regulations (collectively referred to as "Hazardous Materials," or "Dangerous Goods," or "International Dangerous Goods"), are accepted for transportation only as a contractual service and

in accordance with the *UPS Guide for Shipping Ground and Air Hazardous Materials*, or the *UPS Guide for Shipping International Dangerous Goods*. To receive Hazardous Materials or Dangerous Goods service, the Shipper must sign and agree to the provisions set forth in an approved UPS agreement or agreements relating specifically to the transportation of Hazardous Materials, Dangerous Goods, or International Dangerous Goods ("Hazardous Materials Agreement(s)"). Contact UPS for specific information, including a list of "Common Items That May Be Classified as Hazardous Materials."

An additional charge will be assessed for each Hazardous Materials Shipment. If the Shipper fails to select a service level, provide the Dangerous Goods Class, or identify that a Shipment is not fully regulated, the Shipment will be charged at the highest level of service, as Accessible Dangerous Goods, as fully regulated, or any combination of the above based on the Shipper's failure to provide sufficient information to UPS. UPS may also assess an additional surcharge for Packages or pallets containing certain types of Hazardous Material. Applicable surcharges are described in the Service Guide and at the *ups.com* website.

It is the Shipper's responsibility to determine if a Shipment contains a Hazardous Material and to properly classify, label, mark, and package it in accordance with applicable governmental regulations. When required, the Shipper is responsible for ensuring that all of its employees involved in the preparation of Hazardous Materials for transport are properly trained, tested, and certified in accordance with 49 C.F.R. Part 172.700 through 172.704, or with IATA (Section 1.5) and for ensuring that a program exists for the retraining, testing, and certification as required by these rules.

All packaging used by the Shipper for the transportation of Hazardous Materials, when required by regulation, must pass UN performance testing in accordance with 49 C.F.R. Part 178.602 through 178.609 or IATA (Section 6.0).

The Shipper must use a software system, such as the most current version of WorldShip® software that is acceptable to UPS for the preparation of documents for shipping Hazardous Materials, or an alternative method determined by UPS in its sole and unlimited discretion to perform

the same functions. UPS will provide Shippers, upon request, a list of vendors who provide acceptable software systems.

UPS reserves the right to refuse to accept, to return, or to dispose of, in compliance with applicable laws and regulations, any Hazardous Material that it determines not to have been prepared in accordance with the *UPS Guide for Shipping Ground and Air Hazardous Materials*, the *UPS Guide for Shipping International Dangerous Goods*, and all applicable governmental laws and regulations. The Shipper agrees to reimburse UPS for any costs or expenses incurred as a result of any improperly packed or prepared Hazardous Materials which Shipper tenders to UPS. In addition, the Shipper agrees to reimburse UPS for any costs or expenses incurred by UPS if Hazardous Materials tendered by the Shipper are refused by the Shipper upon return or cannot otherwise be delivered for any reason including, but not limited to, wrong delivery address or refusal of Receiver to accept Delivery.

UPS reserves the right, in its sole and unlimited discretion and without prior notice to the Shipper, to dispose of any international Shipment containing Dangerous Goods refused by the Receiver or which for any other reason cannot be delivered. Shipper shall be responsible for all disposal fees.

The Shipper agrees to indemnify, defend, and hold harmless UPS, its parent corporation, and affiliated companies, their officers, directors, employees, agents, and their successors and assigns, from all claims, demands, expenses (including reasonable attorney's and consultants' fees), liabilities, causes of action, enforcement procedures, and suits of any kind or nature brought by a governmental agency or any other person or entity arising from or relating to the transportation of a Hazardous Materials Shipment, from the Shipper's breach of the Hazardous Materials Agreement(s) or the Terms, or from the Shipper's non-compliance with governmental laws or regulations applicable to the transportation of Hazardous Materials whether such action is brought by a governmental agency or other person or entity. Under no circumstances shall UPS be liable for special, incidental, or consequential damages arising from the transportation of a Hazardous Materials Shipment.

# UPS® Tariff/Terms and Conditions of Service – United States

Pursuant to 49 C.F.R. Part 173.30, in the event the Shipper loads any UPS vehicle, the Shipper agrees to segregate Hazardous Materials in accordance with 49 C.F.R. Part 177.848 and properly secure Hazardous Materials in accordance with 49 C.F.R. Part 177.834.

UPS does not accept Hazardous Materials in any amounts that require placarding under 49 C.F.R. Part 172, Subpart F. The Shipper agrees not to tender Hazardous Materials to UPS in any amount for a single vehicle that would require placarding in accordance with 49 C.F.R. Part 172, Subpart F.

UPS reserves the right to discontinue or terminate service immediately with respect to the transportation of Hazardous Materials if the Shipper fails to comply with any provisions of the Terms, or any applicable government regulations (including Limited Quantity/ORM-D Shipments that are tendered without the proper shipping documentation). If a Shipper tenders an undeclared Hazardous Materials Shipment to UPS, UPS shall not be liable for the Shipment in the event of loss, damage, delay, or misdelivery, nor shall UPS be liable for any special, incidental, or consequential damages.

If the Shipper ships Hazardous Materials from more than one location, and the Shipper fails to comply with any provisions of the Terms, the Hazardous Materials Agreement(s), or any governmental regulations, UPS may, in its sole and unlimited discretion, terminate all of the Shipper's shipment locations or limit such termination to those locations where the failure to comply occurred.

Shippers are prohibited from shipping and UPS will not accept for transportation Shipments containing any Hazardous Materials requiring shipping papers (defined as those materials regulated under Title 49 of the Code of Federal Regulations) or Dangerous Goods requiring Shipper's Declaration for Dangerous Goods documents, when such Shipments are presented for shipment at UPS Customer Centers, Third-Party Retailers, or UPS Access Point* locations. Hazardous Materials requiring shipping papers cannot be picked up via UPS On-Call Pickup* service, or retrieved via any UPS Returns' Service, except as a contractual service. UPS Ground with Freight Pricing service is not available for Hazardous

Materials Shipments (unless the Package qualifies as a Limited Quantity/ORM-D Package as set forth in Section 3.10 ("Limited Quantity/ORM-D Packages")).

Additional terms applicable to the shipment of Hazardous Materials are set forth in the *UPS Guide for Shipping Ground and Air Hazardous Materials*, and the *UPS Guide for Shipping International Dangerous Goods*, the terms of which are each incorporated here by this reference and available at *https://www.ups.com/content/us/en/resources/ship/hazardous*.

### 3.9 Dry Ice
Packages containing dry ice (carbon dioxide, solid) as a refrigerant, but no other Hazardous Materials, are accepted for transportation within the United States via UPS Ground and UPS Air Services (provided such Packages are prepared in accordance with all applicable governmental regulations) without a Hazardous Materials Agreement. Packages containing Hazardous Materials that use dry ice (carbon dioxide, solid) as a refrigerant are accepted for transportation within the United States via UPS Ground and UPS Air Services only as a contractual service. Any Package containing dry ice will be considered a Perishable Commodity. Packages containing dry ice may be tendered for shipment at The UPS Store* locations, where such services are available. A contract is required for all international Shipments of dry ice.

### 3.10 Limited Quantity/ORM-D Packages
Limited Quantity/ORM-D Packages are accepted for transportation without Hazardous Materials shipping papers and without a contract, only within the 48 contiguous United States via UPS Ground, UPS Ground with Freight Pricing service, and UPS Hundredweight Service* Ground, and via UPS Standard to Canada and UPS Ground Intra-Alaska and Intra-Oahu services, when properly classified, packaged and marked, provided the Shipper has reviewed the required checklist and service restrictions with a UPS representative. Limited Quantity/ORM-D Packages shipped via UPS Air Services and UPS 3 Day Select* service within the United States and Puerto Rico are accepted for transportation on a contractual basis only. Limited Quantity/ORM-D Packages containing ammunition are not accepted for shipment internationally.

### 3.11 Hazardous Waste, Mercury, and Mercury-Containing Waste
Packages containing hazardous waste, defined as a solid waste that meets any of the criteria of hazardous waste as described in 40 C.F.R. § 261.3, are not accepted for transportation.

UPS's acceptance for transportation of any elemental mercury, mercury-containing material, or used mercury-containing device (including, but not limited to, medical devices, spent fluorescent lamps, thermostats, or thermometers) is limited, must be prearranged, and will only be provided pursuant to prior written authorization from UPS upon satisfaction of certain requirements including appropriate packaging and financial assurances.

### 3.12 Live Animals
UPS provides service on a limited basis for some types of live animal Shipments. (The term "animal" as used here refers to anything living, except plants.) Live animals may be shipped only pursuant to the restrictions and conditions set forth on the ups.com website regarding Shipping Live Animals. A live animal Shipment will be considered a Perishable Commodity. Access *https://www.ups.com/content/us/en/resources/ship/packaging/guidelines/animals.html* or contact UPS for information regarding shipping live animals.

### 3.13 Perishable Commodities
UPS does not provide a protective service for the transportation of Perishable Commodities. Such commodities will be accepted for transportation solely at the Shipper's risk for any damage arising from the perishable nature of the item. Shippers shall not file claims for, and UPS shall not be liable to Shippers or any third parties for, any damage arising from the transportation of Perishable Commodities arising from exposure to heat or cold or the perishable nature of the item, regardless of whether the Shipment is delivered pursuant to an applicable UPS Service Guarantee or is delayed in transit. UPS reserves the right to dispose of any Shipment in the UPS system containing a Perishable Commodity that UPS deems in its sole and unlimited discretion to be of no value, unsafe or unsanitary.

### 3.14 Pharmaceuticals
The Shipper shall comply with and shall ensure that each Shipment containing pharmaceutical products complies with

# UPS® Tariff/Terms and Conditions of Service – United States

all applicable federal, state, provincial, and local laws and regulations governing the dispensing, shipment or tender of shipment of pharmaceutical products.

### 3.15 Portable Electronic Devices

UPS transports Shipments containing radio frequency identification devices (RFID), ultrawideband devices (UWB), and other portable electronic devices (PED) only when such devices are in an inactivated state or otherwise in compliance with applicable law including 14 C.F.R. § 91.21, 14 C.F.R. § 121.306, or 47 C.F.R. § 15.521(a).

### 3.16 Tobacco Products

Shipments containing Tobacco Products ("Tobacco Product Shipments"), are accepted for transportation only from Shippers who are licensed and authorized to ship Tobacco Products pursuant to applicable laws. UPS does not provide service to any person or entity listed in the Bureau of Alcohol, Tobacco, Firearms and Explosives PACT Act – Non-Compliant List.

For purposes of the UPS Tariff/Terms and Conditions of Service, the term "Tobacco Products" is defined at *www.ups.com/tobacco*. Shippers should consult *www.ups.com/tobacco* for the current definition of Tobacco Products, as the definition may change periodically. At present, and without limiting the complete definition posted at *www.ups.com/tobacco*, the term "Tobacco Products" includes any product made or derived from tobacco that is intended for human consumption, including any component, part, or accessory of a tobacco product; the term includes, without limitation, e-cigarettes, e-hookah, e-cigars, vape pens, advanced refillable personal vaporizers, and electronic pipes.

UPS prohibits the shipment of Cigarettes or Little Cigars (as those terms are defined at *ups.com/tobacco*) to consumers. To make other Tobacco Product Shipments, the Shipper must sign, agree to, and comply with the provisions set forth in an approved UPS agreement for the transportation of Tobacco Products. Shippers and receivers must comply with all applicable federal, state, provincial, or local laws or regulations, and all Tobacco Product Shipments must conform to the terms, conditions, restrictions, and prohibitions set forth at *www.ups.com/tobacco* at the time of shipping. It is the responsibility of the Shipper to ensure that a Shipment

tendered to UPS, including a Tobacco Product Shipment, does not violate any federal, state, provincial, or local laws or regulations applicable to the Shipment. UPS reserves the right to refuse to accept, transport, or deliver any Tobacco Product Shipment that UPS, in its sole and unlimited discretion, determines does not comply with UPS requirements for the shipment or any applicable law or regulation, and to discontinue any or all service to any Shipper for, among other reasons, tendering such a Shipment. UPS reserves the right to dispose of any Tobacco Product Shipment that Shippers are prohibited from shipping, that UPS is not authorized to accept, that UPS states that it will not accept, or that UPS has a right to refuse.

## 4. Provisions for Export and Customs Clearance of International Shipments

The Shipper (or the party tendering an international Shipment to UPS for service, referred to for purposes of this Section 4 as "Shipper") is responsible for compliance with all applicable U.S. export control requirements, and must provide UPS with all documentation and information required by the laws of the origin and destination countries for export and import of Shipments (i.e., for export and customs clearance). The Shipper is responsible for determining export and import licensing or permitting requirements for a Shipment, obtaining any required licenses and permits, and ensuring that the Consignee is authorized by the laws of the origin and destination countries to receive the Shipment. The Shipper must regularly review its import and export transactions and immediately notify UPS of any incorrect or incomplete information provided, including information filed with, or otherwise transmitted (whether in writing or electronically) to, a U.S. or other governmental agency. By tendering an international Shipment for service and providing UPS with documentation (including any Source Documents), the Shipper certifies that the documentation includes all required licenses and permits, that the statements in that documentation and any other information that the Shipper provides to UPS relating to exportation and importation are complete, true, correct, and in compliance with the laws of the origin and destination countries, and that the Consignee is authorized by the laws of the origin and destination

countries to receive the Shipment. Furthermore, the Shipper understands that civil and criminal penalties including seizure and forfeiture, may be imposed for failing to provide UPS with all required documentation, licenses, permits, statements, and information, for making inaccurate, false, or fraudulent statements, or for violating U.S. or other country laws regulating exports or imports (see, e.g., 13 U.S.C. § 305; 18 U.S.C. §§ 545, 554 and 1001; 19 U.S.C. §§ 1595a and 1592; 22 U.S.C. § 401; and Subchapter C of 15 C.F.R. (i.e., The Export Administration Regulations)).

Shipper further authorizes UPS to share information generally considered confidential under 19 CFR 111.24 or any applicable laws, rules, or regulations of countries other than the United States that govern the confidentiality of customs brokerage data, including but not limited to information concerning points of contact, addresses and telephone numbers, revenue, and customs entry data, with corporations owned by or under common ownership with UPS, with corporations owned and operated by United Parcel Service, Inc., Delaware, or with UPS's authorized service providers incidental to their provision of services.

When an international Shipment is tendered to UPS, UPS is thereby appointed as the agent for performance of customs clearance in the destination country to the extent allowed by law. The Shipper shall provide all Powers of Attorney and other authorizations required by applicable law for UPS to serve as the Shipper's agent to perform customs clearance in the destination country. UPS is specified as the nominal Consignee for the purpose of designating a customs broker to perform customs clearance. Local authorities may require documentation confirming that UPS has been designated as the nominal Consignee.

Fines, penalties, liquidated damages, storage charges, or other expenses incurred as a result of an action by U.S. Customs and Border Protection (or any other U.S. or other country's government agency regulating imports or exports), or as a result of the failure of the Shipper or Consignee to provide complete, true, and correct documentation, statements, or information required by the laws of the origin and destination countries (including the failure to obtain a required license or permit) will

# UPS® Tariff/Terms and Conditions of Service – United States

be charged to the Shipper or Consignee along with any applicable duties, fees, or taxes, and any applicable late payment fees assessed by UPS. Unless a written agreement between UPS and the Shipper specifies otherwise, UPS reserves the right in its sole and unlimited discretion to charge the Shipper or Consignee for any such fines, penalties, liquidated damages, storage charges, expenses, duties, fees, taxes, or late payment fees. Regardless of any such written agreement specifying otherwise, in the event of non-payment by the Consignee, the Shipper is liable for all Charges.

The Shipper agrees to indemnify, defend, and hold harmless UPS, its parent corporation, and affiliated companies, their officers, directors, employees, agents, and their successors and assigns, from any and all claims, demands, expenses, or liabilities including, but not limited to, fines, penalties, liquidated damages, storage charges, duties, fees, taxes, late payment fees, or other money due, arising from the transportation, importation, exportation, or customs clearance of Shipments on behalf of the Shipper, or arising from the Shipper's noncompliance with the laws of the origin and destination countries, or UPS requirements applicable to the Shipment.

UPS provides routine customs clearance through UPS Supply Chain Solutions® brokerage offices designated by UPS for handling customs clearance of Shipments at no additional charge, except for UPS® Standard to and from Canada Shipments, for which a brokerage service charge applies. Other UPS Supply Chain Solutions® customs brokerage offices charge fees for the clearance of Packages and Freight. For UPS Standard to Mexico, UPS Supply Chain Solutions® customs clearance is required. Failure to do so will result in Packages automatically returned to Shipper.

Additional charges may apply for complex customs clearance procedures, which include, but are not limited to, the following:
– Clearance procedures involving a government agency other than U.S. Customs and Border Protection;
– Customs Bonds;
– Drawbacks;
– Formal entries involving more than three tariff lines;
– Live Entries;
– Country of Origin Marking; or
– Temporary Import Bonds (T.I.B.).

UPS is under no obligation, unless the customer requests in writing and UPS agrees in writing, to undertake any pre- or post-importation action including, but not limited to, obtaining binding rulings, advising of liquidations, filing protests, or filing petitions for relief.

UPS may prepay duties, fees, or taxes on behalf of the payer. For importation into the United States, a fee will be assessed and billed to the importer. A fee may also apply for shipments to other countries.

For any claims arising from import, export or customs clearance activities, the liability of UPS (including UPS Supply Chain Solutions) shall be limited to the lesser of (i) $50 per entry, filing, or transaction; or (ii) the amount of fees paid to UPS for such entry, filing, or transaction.

## 4.1 Electronic Export Information

If Electronic Export Information (EEI) is required to be filed through the Automated Export System (AES) under the Foreign Trade Regulations of the U.S. Bureau of the Census ("Census") (i.e., Part 30, 15 C.F.R.), and the Shipper has not filed the EEI and provided an Internal Transaction Number (ITN) to UPS to confirm that an EEI transaction was submitted to Census by the Shipper accepted and is on file in the AES, UPS will electronically file the required EEI on behalf of the Shipper, provided that all information required to file the EEI is supplied by the Shipper in the UPS Shipping System or other export documentation and UPS has received proper authorization or a Power of Attorney from the Shipper to complete and file the EEI. A processing fee will be assessed and billed to the Shipper. The Shipper is solely responsible for determining whether EEI is required to be filed through the AES for its shipment and for ensuring that the EEI is accurately and timely filed, whether by the Shipper or by UPS acting as the filing agent on behalf of the Shipper.

## 4.2 Certificate of Origin

UPS may, based solely on information that the Shipper furnishes, prepare a Certificate of Origin for goods manufactured and originating within the United States on behalf of the Shipper when one is required but not included with the export documents provided by the Shipper. When authorizing UPS to prepare a Certificate of Origin, the Shipper certifies that the information it provides to UPS is complete, true, and correct and that the completed Certificate

of Origin complies with the laws of each country where a claim will be made that the goods are manufactured and originate in the United States. A processing fee will be assessed and billed to the Shipper.

## 4.3 UPS Paperless® Invoice Service

A Shipper must register with UPS in advance of shipping to use UPS Paperless® Invoice service, where such services are available. By using UPS Paperless® Invoice service, the Shipper authorizes UPS to use the Shipper's letterhead and electronic signature to prepare true, correct, and paperless commercial invoices that reflect, in all material respects, the Shipper's sale transactions of merchandise to its buyers (i.e., the "Sold To" Parties) necessary to expedite in accordance with law the export and customs clearance of international Shipments. The Shipper shall provide to UPS in advance all required information including, but not limited to, the true and accurate price at which the merchandise was sold to the "Sold To" Party, any required additions to customs value (e.g., dutiable commissions, royalty/ license fees, assists, packing costs, and proceeds of subsequent sales), the currency of the sale, country of origin, terms of sale, the quantities, ultimate Consignee, and a complete commercial description of the merchandise. By using the service, Shipper represents and certifies that any paperless commercial invoice that UPS prepares is true and accurate, which means that it is, in all material respects, an electronic copy of the same commercial invoice provided to the buyer. The Shipper shall have an affirmative, non-delegable duty to disclose to UPS any and all required commercial invoice information, and to ensure its accuracy and completeness. The Shipper must provide timely upload of PLD to use UPS Paperless® Invoice service.

## 4.4 Pre-Release Notification for Import Shipments

A Shipper or Consignee may request that UPS notify the Consignee prior to submission of a U.S. import Shipment to U.S. Customs and Border Protection so that the importer may validate the classification, valuation, or other import information. An additional fee applies for this service and will be billed to the importer or to the Shipper when the Shipper is selected as the payer of the duties and taxes for the Shipment.

# UPS® Tariff/Terms and Conditions of Service – United States

### 4.5 Record-Keeping

The Shipper agrees and consents that UPS may preserve a record of the carriage for an international Shipment using means other than producing a copy of the air waybill. The Shipper has a duty to and is solely liable for maintaining all records as required under the export and customs or other laws of the origin and destination countries, unless otherwise agreed to in writing. UPS assumes no responsibility to act as a record-keeper or record-keeping agent for the Shipper.

### 5. UPS Import Control® Service

UPS Import Control® service allows a Shipper to process an import Shipment, including commercial invoice. Where available, a Shipper may use UPS Import Control® service to create a Print Import Label, Electronic Import Label, or Print and Mail Import Label to provide to the sender or party tendering the Shipment to UPS, or a Shipper may request 1 UPS Pickup Attempt or 3 UPS Pickup Attempts to request that UPS make pickup attempts to retrieve import Shipments from a sender's address. 3 UPS Pickup Attempts is not available for UPS Worldwide Express Freight® Service Shipments. UPS Import Control® service is available only in countries where UPS pickup services are available. An additional charge will be assessed for each unique UPS Import Control label.

Shipments containing certain items are prohibited from being shipped and are not accepted by UPS for UPS Import Control® service including, but not limited to, Hazardous Materials Shipments requiring shipping papers, firearms, or Shipments requiring Delivery Confirmation Services. C.O.D. service is not available for UPS Import Control® Shipments.

The maximum actual or declared value for each UPS Import Control® Shipment is $50,000 per Package and $100,000 per pallet, provided that, for any UPS Import Control® Package or pallet with an actual or declared value in excess of $1,000, the Shipper must ensure that a UPS high-value shipment summary is generated and signed by the UPS driver or UPS Customer Center representative upon tender of the Shipment to UPS. If no high-value shipment summary is obtained and signed, the maximum actual or declared value of each such Package or pallet is limited to $1,000.

Notwithstanding anything herein to the contrary, for all UPS Import Control® Shipments tendered to UPS for export from the U.S., that transit the U.S., or that contain U.S.-origin goods, the sender or tendering party is the exporter for purposes of the Export Administration Regulations ("EAR"), and it shall be responsible for determining licensing authority (license, license exception, or NLR) and obtaining the appropriate license or other authorization as provided in Section 4 ("Provisions for Export and Customs Clearance of International Shipments"). In no event shall a party arranging for UPS Import Control® service provide a writing assuming responsibility for determining licensing requirements and obtaining license authority for any UPS Import Control Shipment to the tendering party. UPS does not agree to serve as the exporter for purposes of the EAR.

### 6. Right of Inspection

UPS reserves the right in its sole and unlimited discretion to open and inspect any Shipment tendered to it for transportation, but is not required to do so.

### 7. Refusal of Service

UPS reserves the right to refuse to provide service, among other reasons, for any Shipment which by reason of the dangerous or other character of its contents may, in the sole judgment of UPS, soil, taint or otherwise damage other Shipments or UPS's equipment, or which is improperly or insecurely packed or wrapped, as determined by UPS in its sole judgment.

Before accepting any Shipment, UPS reserves the right to require sufficient verification, as determined by UPS in its sole and unlimited discretion, of the Shipper's name and address, or any other information necessary to accept the Shipment for service. UPS reserves the right to refuse to provide service for any Shipment or to or from any location, or to provide alternative service arrangements, or to intercept, hold or return any Shipment when, among other reasons, UPS, in its sole and unlimited discretion, determines that it is unsafe or economically or operationally impracticable to provide service, that its services are being used in violation of federal, state, or local law, or for fraudulent purposes, or when the account of the person or entity responsible for payment is not in good standing.

### 8. Packaging

It is the responsibility of the Shipper to ensure that proper packaging is used and that contents are adequately and securely packed, wrapped, and cushioned for transportation. Shipments must be so packed or wrapped as to meet UPS's published standards related thereto set forth in the Service Guide, or on the ups.com website, and in the International Safe Transit Association ("ISTA") Procedure 3A, Procedure for Testing Packaged Products, published by ISTA. Acceptance of tender by UPS is not an indication that a Package is packed in accordance with UPS's published standards. In addition, any tested product must be free from damage and the packaging must afford reasonable protection as determined by UPS in its sole judgment.

Shipments containing goods of high value or high risk, including without limitation jewelry, pharmaceuticals, computers, hand-held electronic devices, mobile telephones, and electronic components of these, must not have labels, customized shipping labels (including as created in a UPS Automated Shipping System), markings, logos, or other written notice of contents contained within the Package.

The use of UPS-provided packaging is not a guarantee that an item is sufficiently packaged for transportation. UPS does not provide special handling for Shipments with "Fragile," orientation markings (e.g., "UP" arrows or "This End Up" markings), or any other similar such markings.

When shipping media of any type containing sensitive personal information (such as personal financial or health information), it is recommended that the Shipper retain a copy of the data and secure the data on the media through encryption or other technological means. UPS is not liable or responsible for loss of, damage to, or irretrievability of data stored on media of any type, or for loss of information, including without limitation personal, health or financial information. For the shipment of electronic media, or for breakable items, see the packaging guidelines located at the ups.com website. The guidelines advise against the use of UPS Express® Envelopes, UPS Express® Pak, or UPS Express® Pad Paks to ship sensitive personal information or breakable items.

UPS Worldwide Express Freight® Service Shipments must be palletized, stackable,

# UPS® Tariff/Terms and Conditions of Service – United States

able to be lifted by forklift, and shrink-wrapped or banded to a skid. Shipper must ensure that pallets and packaging comply with all applicable laws and regulations of the origin and destination country.

## 9. Use of UPS-Provided Materials and Services

UPS-provided materials including, but not limited to, packaging materials and supplies, envelopes, labels, label printers, shipping documents, publications and products are provided solely for the use of UPS Shippers to obtain UPS services on their behalf and to interact with UPS. Any other use of such UPS-provided materials is strictly prohibited.

UPS Express® Envelopes, UPS Express® Pak, UPS Express® Boxes, UPS Express® Tubes, UPS 10 KG Box and UPS 25 KG Box packaging may not be used for UPS® Ground, UPS® Standard, UPS 3 Day Select®, or UPS Worldwide Expedited® Shipments.

Under no circumstances may a Shipper sell any UPS-provided materials, products, or services to any third party without prior written authorization from UPS.

A weekly charge applies for use of UPS-provided thermal label printers.

## 10. Use of UPS Electronic Information Systems

Use of UPS electronic information systems to which Shippers are granted access by UPS and which are accessed by means of hardware, software, or internet interfaces, including UPS Shipping Systems, are subject to and will be governed by the terms in effect at the time of shipping for the relevant system, including without limitation, the UPS Technology Agreement, the iShip® Master Enterprise Service Agreement, the ConnectShip® End User License Agreement, or that agreement licensing use of a UPS Ready® solution.

## 11. Timely Upload of PLD

The Shipper must provide Timely Upload of Package Level Detail ("PLD") to UPS. If timely upload of PLD is not provided, certain UPS services are unavailable, including but not limited to Direct Delivery Only, Ship to a UPS Access Point® location, UPS Delivery Intercept® service, and UPS Proactive Response® service. Timely Upload of PLD as used in these Terms refers to the electronic transmission of all applicable PLD information to UPS at or before the time that Shipments are tendered to UPS. PLD includes, but is not limited to, Consignee's full name, complete delivery address, and Shipment dimensions and weight.

### 11.1 Use of PLD Obtained Email Addresses and Telephone Numbers

By including the email address or telephone number of the Consignee or associated addressee in PLD for a Shipment ("PLD Contact(s)"), the Shipper acknowledges and agrees that UPS may send notifications related to the delivery of such Shipment to the Shipment's associated PLD Contact(s) and may use such PLD Contact(s) in accordance with the UPS Privacy Notice in effect at the time of shipping, to the extent permitted by law. The Shipper warrants that (i) informed and specific consent, in compliance with all applicable laws, rules, and regulations (including, where applicable, of the jurisdiction of Consignee's domicile), has been secured from the individual associated with each PLD Contact to receive notifications from UPS related to the delivery of such Shipments and for use by UPS of the PLD Contact(s) in accordance with the UPS Privacy Notice in effect at the time of shipping, to the extent permitted by law and that (ii) the PLD Contact(s) is accurate and is controlled by the Consignee or associated addressee for the Shipment with which it is associated. Shipper will store such consents and, upon request by UPS, make available such consents to UPS.

The Shipper shall defend, indemnify and hold harmless UPS, its parent corporation, and affiliated companies, their officers, directors, employees, agents, and their successors and assigns, from and against any and all liability, losses, damages, costs and expenses (including reasonable legal fees) of any nature whatsoever incurred or suffered in connection with damages arising out of or resulting from any breach of the warranties in the previous paragraph.

## 12. ZIP Code™/Postal Code Information

The Receiver's ZIP Code™ is a required part of the address for domestic Shipments. When available, ZIP+4™ should be used. The Receiver's postal code, telephone number, and contact name are required parts of the address for international Shipments.

## 13. P.O. Boxes

UPS does not provide Delivery to a P.O. Box. The Shipper must make every effort to obtain a street address. If the Shipper should use a P.O. Box address, the recipient's telephone number must be included. A Package addressed to a P.O. Box may experience delays, is not covered by any UPS Service Guarantee, and is subject to an Address Correction charge. Army Post Office (APO) and Fleet Post Office (FPO) addresses are not accepted.

## 14. UPS Customer Center and UPS Worldwide Express Freight® Center

Before accepting a Shipment tendered for transportation or releasing any Shipment at a UPS Customer Center or a UPS Worldwide Express Freight® Center to a Consignee or other recipient, UPS reserves the right to require sufficient verification, as determined by UPS in its sole and unlimited discretion, of the Shipper's or recipient's name, address, authorization to ship or receive the Shipment, or any other information UPS deems necessary to accept or release the Shipment in its sole and unlimited discretion. Persons tendering or picking up Shipments on behalf of a business may be required to provide identification issued by the business and a government-issued identification. A Residential Consignee will be required to provide a government-issued identification. UPS reserves the right to require payment to be made at Customer Centers and UPS Worldwide Express Freight® Centers by payment card only.

## 15. Third-Party Retailer

The UPS Store® locations are independently owned and operated by licensed franchisees of The UPS Store, Inc., a subsidiary of United Parcel Service, Inc., and are not agents of UPS. Other Third-Party Retailers are independently owned and operated businesses and are not agents of UPS. UPS assumes no liability other than to the Third-Party Retailer as the Shipper of the Package, for lost, damaged or delayed Packages sent by the Third-Party Retailer. Any such liability to the Third-Party Retailer is subject to the limitations set forth in the Terms. All inquiries regarding Packages shipped by any Third-Party Retailer must be directed to the Third-Party Retailer that shipped the Package. UPS will deal solely with the Third-Party Retailer in all matters concerning Packages shipped by any Third-Party Retailer including, but not limited to: tracking/tracing requests; claims and guarantees;

# UPS® Tariff/Terms and Conditions of Service – United States

C.O.D. preparation and remittance; return of undeliverable Packages; proper packaging and labeling; and billing. Even if UPS responds directly to customers of the Third-Party Retailer regarding tracking requests, UPS will not be liable to those customers. The Third-Party Retailer is solely responsible for the issuance of any refunds and claims to those who shipped Packages by the Third-Party Retailer. For any Package shipped by the Third-Party Retailer with a declared value in excess of $1,000, the Third-Party Retailer must provide a copy of the high-value control log to UPS at the time of tender of the Package. The Third-Party Retailer shall not ship any articles which UPS does not accept for transportation. The Third-Party Retailer shall indemnify and hold harmless UPS in any action against UPS arising from the loss, damage, or delay of a Package shipped by the Third-Party Retailer.

## 16. UPS Access Point® Locations

Packages that may be received for Delivery or tendered for shipment (meaning, Packages that have been processed for shipment prior to tender using a UPS Shipping System only) at a UPS Access Point® location are subject to restrictions, including, without limitation, in regard to weight and size and actual and declared value, as set forth in the applicable Service Guide and on the ups.com website. Subject to modification by the Shipper, UPS Access Point® locations will hold Packages for up to seven (7) calendar days. Refer to tracking detail for Package-specific information, including but not limited to, the last available pickup date. If the Shipment is not picked up within seven (7) calendar days (or other time selected by the Shipper), it may be returned to the Shipper as undeliverable. See further details in Section 37 ("Special Handling of Undeliverable Shipments; Refused Shipments Returned"). Before accepting a Shipment tendered for transportation or releasing any Shipment at a UPS Access Point® location to a Consignee or other recipient, a Shipper, Consignee, or other recipient may be required to produce sufficient verification of the Shipper's or recipient's name, address, authorization to ship or receive the Shipment, and any other information UPS deems necessary to accept or release the Shipment in its sole and unlimited discretion, including, without limitation, provision of government-issued identification.

### 16.1 Ship to a UPS Access Point Location Service

Subject to an additional charge and where available, Shippers with a valid UPS account may ship Packages directly to a UPS Access Point location to be picked up by the Consignee.

Shipper will require the Consignee to select its preferred means of notification from UPS (where available, e-mail, text message, or telephone call) and to provide a valid e-mail and/or phone number for notification. Shipper will transfer Consignee's preferred means of notification email and/or telephone number (where available) to UPS as part of the package level detail required for correct delivery of each package. UPS may, as a service provider on behalf of Shipper and where available, provide by email, text, or phone call notifications relating to the Shipment to the Consignee via the Consignee's preferred means of notification.

Where Shipper provides an e-mail address or phone number, Shipper does so pursuant to Section 11.1 ("Use of PLD Obtained Email Addresses and Telephone Numbers").

UPS will deliver Ship to a UPS Access Point Location packages to the designated location. Delivery attempts to the designated UPS Access Point location constitute a delivery attempt for the purposes of the UPS Service Guarantee. Delivery is deemed complete when the package is delivered to the designated UPS Access Point location.

Additional terms, restrictions and requirements are set forth in the Service Guide for the applicable destination country and at https://www.ups.com/media/en/ShiptoUPSAccessPointlocation_US_EN.pdf, which are each incorporated herein by this reference.

## 17. Pickup Services – Scheduled

UPS offers the following Scheduled Pickup Services:

– *Daily Pickup*: When Daily Pickup service is selected, UPS will call on Shipper's location once each business day to pick up Packages. UPS may not call upon a location on any day in which the account indicates that there are no Packages available for pickup.

– *Daily On-Route Pickup*: When Daily On-Route Pickup service is selected, UPS will call on Shipper's location each business day to pick up Packages while making deliveries in Shipper's area.

– *Day-Specific Pickup*: When Day-Specific Pickup is selected, UPS will call on Shipper's location each business day as preselected by Shipper. Shipper may select up to four business days per week for Day-Specific Pickup.

– *UPS Smart Pickup® service*: When UPS Smart Pickup® service is selected, UPS will call on Shipper's location any business day when the Shipper transmits PLD using the current version of WorldShip® software, UPS CampusShip® software, or UPS Internet Shipping, by the deadline designated by UPS, or if Shipper has scheduled a pickup by telephone or through the ups.com website, prior to the deadline designated by UPS.

For Daily Pickup, Daily On-Route Pickup, and Day-Specific Pickup, a weekly service charge based on the account's weekly billing total, as reflected in the UPS billing system, will be assessed. The weekly billing total may not necessarily reflect all Packages tendered during a calendar week. For UPS Smart Pickup® service, a weekly service charge will be assessed.

Scheduled Pickup Services are not available for any UPS Worldwide Express Freight® Service.

## 18. UPS On-Call Pickup® Service

When UPS On-Call Pickup® service is requested by the Shipper, UPS will arrange (where reasonably practicable) a pickup at the Shipper's location. An additional charge for UPS On-Call Pickup® service will be assessed.

UPS On-Call Pickup® service from a Residential address will be assessed an additional surcharge for residential pickup. If the Residential address is in a remote or less accessible area as designated by UPS, an additional surcharge for extended area or remote Residential pickup also will apply.

UPS On-Call Pickup® service must be requested for each UPS Worldwide Express Freight® Service Shipment pickup or drop-off (for door-to-door and non door-to-door services), and may not be combined with a Package pickup. No additional charge for UPS On-Call Pickup® service applies to any UPS Worldwide Express Freight® Service.

## 19. Saturday Air Processing Fee; Saturday Stop Charge

UPS offers Saturday pickup of UPS Air Services Packages and UPS Hundredweight Service® Air Services Shipments for Delivery

# UPS® Tariff/Terms and Conditions of Service – United States

in the United States and Puerto Rico where such services are available and subject to a processing fee. Saturday pickup is available for domestic UPS 3 Day Select® Service, UPS Ground, UPS Ground with Freight Pricing, UPS Hundredweight Service® UPS 3 Day Select, and UPS Hundredweight Service Ground Shipments in select areas (these areas are referred to here as "Saturday Ground Service Territories"). Within Saturday Ground Service Territories, a Saturday Stop Charge that varies depending on the type of pickup service selected will apply any time the Shipper requests that UPS pick up any Packages on a Saturday, in addition to any Saturday Air Processing fee(s), regardless of whether there are packages to be picked up that day. Refer to the Service Guide for an explanation of applicable charges associated with pickup service on Saturdays.

The Shipper should contact UPS for information regarding UPS's Saturday pickup area. Refer to UPS's website or call 1-800-PICK-UPS® (1-800-742-5877) for Delivery commitment information applicable to Packages picked up on Saturday. Saturday pickup service is provided by the following methods:

– A Shipper may request Saturday pickup via UPS On-Call Pickup® service by contacting UPS on or in advance of each Saturday, excluding holidays, on which the service is needed.

– At the Shipper's option, UPS will call at the Shipper's premises every Saturday, excluding holidays, to pick up qualifying Shipments.

– Shippers with UPS Smart Pickup service may schedule a Saturday pickup by processing a qualifying Package for pickup each Saturday, excluding holidays, on which the service is needed. Refer to Section 17 ("Pickup Services—Scheduled") for additional information regarding scheduling a pickup via UPS Smart Pickup service.

The Saturday Air Processing fee (formerly referred to as a "Saturday Pickup" charge) will be assessed for each UPS Air Services Package or each UPS Hundredweight Service® Air Services Shipment processed using a UPS Shipping System, tendered to UPS, or tendered to a Third-Party Retailer on a Saturday, in addition to any applicable UPS On-Call Pickup® charge and Saturday Stop Charge.

Where a Saturday pickup is requested but there are no Packages to be picked up, a minimum processing fee will be assessed outside Saturday Ground Service Territories.

## 20. Drop Shipment
A unique Drop Shipper account number will be assigned to approved Shippers and must be used solely for the origin and destination locations as specified in the UPS Drop Ship Letter of Understanding or as required by UPS.

UPS reserves the right to refuse any Drop Shipment request, in its sole and unlimited discretion, including, but not limited to, any Drop Shipment that is operationally or economically impracticable to transport. A request for Drop Shipment service is not reasonable unless the Shipper makes a prior arrangement with UPS, agreed to in advance by UPS, as to timing, location, and volume of the Drop Shipment.

When a Shipper, through prior arrangements with UPS, tenders Packages at UPS's receiving stations with a return address requiring a movement greater than a Zone 2 movement from the point of tender, any undelivered Packages will be returned automatically and will be charged at the rate applicable between the point of tender and the return address. The effective UPS Rates for the applicable shipment will apply.

UPS does not accept, and Shippers are prohibited from shipping, any Package via a Drop Shipment that contains Hazardous Materials, except for Limited Quantity/ORM-D Packages that are tendered for UPS Ground service in the 48 contiguous United States.

## 21. Delivery
UPS does not limit Delivery of a Shipment to the person specified as the Receiver in the UPS Shipping System. Unless the Shipper uses Delivery Confirmation service requiring a signature, UPS reserves the right, in its sole and unlimited discretion, to make a Delivery without obtaining a signature.

## 22. Direct Delivery Only Surcharge
Where available and subject to a Direct Delivery Only surcharge, UPS may in its sole and unlimited discretion accept a Shipper's request to limit (1) reroutes of Packages to an alternate address by the Consignee (including but not limited to

Delivery Change Requests and UPS My Choice® requests, other than requests to hold for will call at a UPS Customer Center) and (2) delivery to a UPS Access Point® location following a first delivery attempt at a Residential address.

Direct Delivery Only does not limit UPS Delivery Intercept® requests or Delivery pursuant to UPS's driver release or Shipper Release procedures, and does not require signature on Delivery or Delivery to the person specified as the Receiver in the UPS Shipping System. The Shipper must provide timely upload of PLD to request Direct Delivery Only.

## 23. Residential Surcharge
A Residential Surcharge will apply if either the delivery address entered in the UPS Shipping System or the actual delivery address is considered Residential (regardless of a Shipper's designation of the address as Commercial).

## 24. Delivery Area Surcharge
A Delivery Area Surcharge or Extended Delivery Area Surcharge will apply to each Package delivered to certain ZIP Codes™ within the 48 contiguous states. A Remote Area Surcharge will apply to each Package delivered to, and any UPS On-Call Pickup service from, certain ZIP Codes within Alaska and Hawaii. Refer to the Area Surcharge listing at ups.com/rates or call 1-800-PICK-UPS® (1-800-742-5877) for the listings of effective applicable ZIP Codes for the Delivery Area Surcharge, Extended Delivery Area Surcharge and Remote Area Surcharge.

A Delivery Area Surcharge, Extended Delivery Area Surcharge or Remote Area Surcharge, respectively, will apply if either the delivery (or pickup, where applicable) address entered in the UPS Shipping System or the actual delivery (or pickup, where applicable) address falls within ZIP Codes designated by UPS as subject to such charges. Such charges apply in addition to all other applicable Charges, including but not limited to the Residential Surcharge.

## 25. Delivery Attempts; UPS Access Point® Locations
If UPS is unable to deliver a Shipment, a notice will be left at the Consignee's address stating that Delivery has been attempted. Thereafter, a second and, if necessary, a third attempt to deliver the Shipment may be made without additional charge.

# UPS® Tariff/Terms and Conditions of Service – United States

For Residential deliveries and where available, UPS may in its sole and unlimited discretion, after the first delivery attempt, deliver a Shipment to a UPS Access Point® location, where such Shipment will be held for pickup. Requests for subsequent Delivery attempts are subject to additional Charges which will be assessed to the Consignee. For UPS Worldwide Express Freight® Service Shipments, only one Delivery attempt will be made and subsequent Delivery attempts are subject to additional charges which will be assessed to the Consignee. Refer to Section 30 ("Delivery Change Requests") for further information.

## 26. Hold for Pickup and Hold at Location Services

At the time a Shipper tenders a Shipment to UPS, the Shipper may request that UPS hold a domestic Package at a designated UPS Customer Center for pickup by the Consignee. For each such Shipment, the Shipper will complete an address label showing the words "Hold for Pickup," the Consignee's name, telephone number, the name of a contact person, and the full address of the designated UPS Customer Center. In addition, the Shipper will apply a UPS Hold for Pickup label below the address label on the Shipment. Hold for Pickup is not available for international Package shipments.

For UPS Worldwide Express Freight® Service Shipments, the Shipper may request that UPS hold a UPS Worldwide Express Freight® Service Shipment at a UPS Worldwide Express Freight® Center location for pickup by the Consignee. For each such Shipment, the Shipper will complete an address label showing the words "Hold for Pickup," the Consignee's name, telephone number, the name of a contact person, and the full address of the Consignee (designated UPS Worldwide Express Freight® Center address not required).

UPS will hold the Shipment at the designated UPS Customer Center or UPS Worldwide Express Freight® Center and will attempt to contact the Consignee at the telephone number shown on the label. Shipments not picked up within five (5) business days from the date of arrival will be considered undeliverable.

## 27. Shipper Release

A Shipper may request that UPS release a Shipment on the first Delivery attempt.

When Shipper Release is selected, UPS will make only one Delivery attempt, a signature will not be obtained upon Delivery, and a UPS Delivery record showing a completed Shipper Release Delivery shall be conclusive proof that Delivery was completed. Shipper Release is provided solely at the Shipper's risk of loss or damage arising from the release of the Shipment by UPS and UPS will not be liable for any damages arising from the release of the Shipment.

## 28. UPS carbon neutral

A Shipper may request that UPS offset the climate impact of a Shipment via UPS carbon neutral service by selecting UPS carbon neutral at the time a Shipment is tendered to UPS. By selecting UPS carbon neutral, UPS will purchase and retire in the appropriate registry a sufficient number of voluntary or regulatory carbon credits as determined by UPS in its sole and unlimited discretion to offset calculated carbon dioxide emissions. UPS carbon neutral is available only for Shipments shipped using a UPS Automated Shipping System. An additional charge will be assessed for each Package or pallet.

## 29. UPS Delivery Intercept® Service

After a domestic Package has been tendered to UPS but before Delivery, a Shipper may request that UPS return a Package to the Shipper, reroute a Package (including a request by Shipper to correct an address, or where a Package has been returned to the Shipper after a Delivery attempt), hold the Package for pickup at a UPS Customer Center, or hold a Package for future Delivery. UPS may in its sole and unlimited discretion also accept a UPS Delivery Intercept® request from a Third Party when the Shipper has requested that the Third Party's UPS account number be billed for such Package. UPS will honor a UPS Delivery Intercept® request in its sole and unlimited discretion where practicable and where the Shipper has guaranteed payment of applicable Charges resulting from the change.

An additional charge, set forth in the UPS Rates applicable to the Shipment in effect at the time of the request will be assessed for each Package returned to the Shipper, rerouted, or held for future Delivery. If a request to reroute a Package requires a Package movement from the original Receiver address beyond a UPS Zone 2,

additional Charges also will apply. Such additional Charges will be calculated as a newly-initiated Shipment between the original Receiver address and the new rerouted address, and will include (but not be limited to) all applicable surcharges. All original Charges will continue to apply as if the Package were delivered to the original Receiver address. For a request to return to the Shipper, all applicable Charges will apply and be assessed to the Shipper, as set forth in Section 37 ("Special Handling of Undeliverable Shipments; Refused Shipments Returned").

The Shipper must provide timely upload of PLD to initiate a UPS Delivery Intercept® request.

## 30. Delivery Change Requests

After the Receiver has received notice from UPS that Delivery has or will be attempted, the Receiver may request that UPS hold a Package for pickup at a UPS Customer Center. After the Receiver has received notice from UPS that Delivery has been attempted, the Receiver may request that UPS return a Package to the Shipper, hold for future Delivery, reroute a Package, direct eligible Packages to a UPS Access Point® location, redeliver to the original address a Package that was taken to a UPS Access Point location, or other such Delivery Changes as UPS in its sole and unlimited discretion may offer (collectively, "Delivery Change"). A UPS InfoNotice® tag or postcard number is required for requests to reroute.

An additional charge set forth in the UPS Rates applicable to the Shipment in effect at the time of the request will be assessed to the Consignee for each Package rerouted, redelivered, directed to a UPS Access Point location, or held for future Delivery by a Delivery Change Request. If any Delivery Change Request requires a Package movement from the original Receiver address beyond a UPS Zone 2, additional Charges also will apply and be assessed to the Consignee. Such additional Charges will be calculated as a newly-initiated Shipment between the original Receiver address and the new rerouted address, and will include (but not be limited to) all applicable surcharges. All original Charges will continue to apply as if the Package were delivered to the original Receiver address. For a request to return to the Shipper, all applicable Charges will apply and be assessed to the Shipper, as set forth in Section 37 ("Special

# UPS® Tariff/Terms and Conditions of Service – United States

Handling of Undeliverable Shipments; Refused Shipments Returned").

For UPS Worldwide Express Freight® Service pallets, after the Receiver has received notice from UPS that Delivery will occur, the Receiver may request that UPS hold a pallet at a UPS Worldwide Express Freight® Center. After the Receiver has received notice from UPS that Delivery has been attempted, the Receiver may request that UPS return a pallet to the Shipper, hold for future Delivery, or make a Delivery Reattempt. Delivery Reattempt charges will apply to subsequent attempts to deliver UPS Worldwide Express Freight® Service Shipments beyond the first Delivery attempt. For requests to return to the Shipper, all applicable Charges will apply and be assessed to the Shipper.

UPS will honor a Delivery Change Request in its sole and unlimited discretion where practicable and where the Receiver has guaranteed payment of any applicable Charges resulting from the change. By requesting a Delivery Change, the Receiver acknowledges and agrees that the limitations of liability set forth in the Terms in effect at the time of Shipment apply to the Shipment subject to the Delivery Change Request and that the value originally declared by the Shipper, if any, shall continue to apply throughout the course of transportation pursuant to the Delivery Change Request. UPS assumes no liability other than to the Shipper of the Shipment for loss, damage, or delay of any Shipment subject to Delivery Change.

UPS may restrict Delivery Change Requests at the request of the Shipper. Delivery Change Requests for Packages containing firearms are not available. Delivery Change Requests to reroute or direct to a UPS Access Point location international Packages or Packages requiring an adult signature are not available. It is the responsibility of the Receiver to ensure that a Delivery Change Request complies with all federal, state and local laws and regulations applicable to the Shipment.

## 31. Correction of Addresses

If any Shipment as addressed by the Shipper has an incorrect or incomplete address (examples include, but are not limited to, P.O. Boxes, missing suite, apartment, or unit numbers, old addresses, and missing/incorrect ZIP Codes), UPS will make reasonable efforts, to be determined in its sole and unlimited discretion, to secure the correct or complete address. An address validated by UPS may be incorrect or incomplete for purposes of completing Delivery, and may be corrected by UPS. If the correct or complete address is secured, UPS, at its sole and unlimited discretion, will attempt Delivery, and the Shipper, upon request, will be provided with the correct or complete address in order to update its internal records. UPS may in its sole and unlimited discretion correct or complete an address based on information obtained from the Shipper or Consignee. An address correction charge will be assessed to the Shipper for an address correction or completion.

## 32. Saturday Delivery

UPS offers Saturday Delivery by request for certain Delivery areas for certain UPS Air Services and international services, as set forth in the Service Guide. To request Saturday Delivery for these services, a Shipper must indicate the selection in the UPS Shipping System and attach a Saturday Delivery routing label to each Package or pallet. Refer to UPS's website or call 1-800-PICK-UPS® (1-800-742-5877) for available Saturday Delivery areas for these services. Where Saturday Delivery is requested, an additional charge will be assessed for each such Shipment for Saturday Delivery and will be billed to the payer of the Charges.

Saturday Delivery is also available without an additional charge for certain Delivery areas for certain UPS Air Services and international services, but not by request. Refer to UPS's website or call 1-800-PICK-UPS® (1-800-742-5877) for Saturday Delivery commitment information for these services. Where Saturday Delivery is available for such Shipments, a Saturday routing label is not required.

Saturday Delivery for UPS 3 Day Select, UPS Ground, UPS Ground with Freight Pricing, UPS Hundredweight Service UPS 3 Day Select, and UPS Hundredweight Service Ground Shipments is available for certain Delivery areas, but not by request. Refer to UPS's website or call 1-800-PICK-UPS® (1-800-742-5877) for Saturday Delivery commitment information for these services. Where Saturday Delivery is available for these services, a Saturday routing label is not required and there is no additional charge.

## 33. Delivery Confirmation Services

UPS provides the following Delivery Confirmation Services. An additional charge applies for each service. Delivery Confirmation information, including signatures where applicable, is available online or by mail. Where applicable, only valid UPS accounts will receive responses via mail:

### 33.1 Delivery Confirmation (domestic only)

A Shipper may request Delivery Confirmation Service by indicating Delivery Confirmation in a UPS Automated Shipping System. Delivery Confirmation information will include the date of Delivery and either the name of the recipient or the disposition of the Package; or, in the event of a return, the reason for the return and the date processed.

### 33.2 Delivery Confirmation Signature Required (domestic and international)

A Shipper may request UPS to obtain the recipient's signature on Delivery. The Shipper must use a UPS Automated Shipping System to initiate a request for this service. UPS may obtain, at its sole and unlimited discretion, a signature, other electronic acknowledgment of receipt or authorization to release without a signature upon delivery pursuant to the UPS My Choice® service from the recipient when this option is selected.

### 33.3 Delivery Confirmation Adult Signature Required (domestic and international)

A Shipper may request UPS to obtain the signature of an adult 21 years of age or older on Delivery. UPS, in its sole and unlimited discretion, will determine if Delivery can be completed when such a request is made, and may request photo identification indicating the recipient's age, before completing Delivery. The Shipper must use a UPS Automated Shipping System to initiate a request for this service. UPS reserves the right to assess the Shipper the additional charge for this service when the Shipper requests UPS to obtain an adult signature on Delivery and an approved UPS label is not affixed to the Package or pallet indicating such request, or, the Shipper tenders a Package or pallet that, based upon its contents, requires an approved UPS label requesting an adult signature upon Delivery and no such label has been affixed to the Package or pallet.

# UPS® Tariff/Terms and Conditions of Service – United States

## 34. UPS Next Day Air® Early Verbal Confirmation of Delivery

The Shipper may request optional Verbal Confirmation of Delivery when shipping via UPS Next Day Air® Early. Verbal Confirmation of Delivery is not available in Hawaii and is not available for international Shipments. When this service is selected, UPS will call the Shipper to confirm Delivery on the day of Delivery. The additional charge for each Verbal Confirmation of Delivery request will be billed to the payer of the Charges.

## 35. Proof of Delivery (P.O.D.)

Upon request, UPS will provide proof of Delivery of a Shipment via fax transmission, email, or mail. The request must include a fax number, including area code, for an operating fax machine, an email address for email delivery, or an address deliverable by the United States Postal Service for mail.

## 36. Tracking/Tracing and Refund Request Charge

UPS reserves the right to assess a Shipper an additional charge per request for each Tracking/Tracing and Refund Request initiated by or at the request of the Shipper. This charge will not be assessed for the first 50 tracking requests per calendar week, or for a quantity of tracking requests equal to or less than 20 percent of the Shipper's volume for that week, whichever is greater. This charge will not be assessed for a quantity of tracing requests equal to or less than two percent of the Shipper's volume for that week. UPS also reserves the right to assess the Shipper a charge set forth in the effective UPS Rates for Service Guarantee refund requests when the subject Shipment was delivered in accordance with the applicable UPS Service Guarantee in the effective Terms.

## 37. Special Handling of Undeliverable Shipments; Refused Shipments Returned

Shipments refused by the Consignee, or which cannot be delivered for any reason will be returned to the Shipper at Shipper's expense, including, but not limited to, forwarding costs, return transportation charges and all other applicable Charges, duties, and taxes. Undeliverable international Shipments returned to the Shipper also are subject to an undeliverable Shipment surcharge set forth in the effective

UPS Rates. The UPS Service Guarantee does not apply to undeliverable Shipments returned to the Shipper.

UPS reserves the right to dispose of a Shipment, including salvage (after retention of the Shipment for a reasonable period of time as determined by UPS, not to exceed 30 days) if the Shipment is refused by the Consignee or for any other reason cannot be delivered, or is refused at the Shipment or the Shipment cannot otherwise be returned to the Shipper. The Shipper or Consignee's sole recourse in such circumstances shall be in accordance with and subject to Sections 54 ("Claims and Legal Actions: Individual Binding Arbitration of Claims") and 55 ("Responsibility for Loss or Damage").

## 38. C.O.D. Service

UPS accepts C.O.D. Packages for Delivery in the United States and Puerto Rico. C.O.D. service is not provided for international Shipments except for international Shipments originating in Canada for Delivery in the United States. C.O.D. service is not available for UPS Worldwide Express Freight Services from any origin.

### 38.1 Preparation and Listing of C.O.D. Packages

Shippers not using a UPS Automated Shipping System must prepare and attach to each C.O.D. Package a UPS® C.O.D. tag showing the amount to be collected and enter such amount in the space provided for that purpose.

Shippers using a UPS Automated Shipping System will generate, and apply to each C.O.D. Package, a system-generated address label with a C.O.D. bar code and the amount to be collected for each individual Package. Each C.O.D. Package in a UPS Hundredweight Service® or UPS Ground with Freight Pricing C.O.D. Shipment must carry a C.O.D. tag or system-generated label for the goods contained in that Package.

### 38.2 Responsibility for C.O.D.s

Upon Delivery of each C.O.D. Package, UPS will attempt to collect the amount shown on the C.O.D. tag or the system-generated label attached to the Package and transmit to the Shipper the amount so collected (subject to the terms in Section 38.9, "Remittance of C.O.D.s," below), or, if collection cannot be made, will return the Package to the Shipper. The Shipper must notify UPS within 45 days from the

date of shipment of a C.O.D. Shipment if the Shipper has not received payment of the C.O.D. amount, or any claim relating thereto shall be deemed waived. Suits shall be instituted within two years after denial of any portion of the claim.

If collection cannot be made within three Delivery attempts, or the Consignee refuses Delivery, UPS will return the Package to the Shipper.

### 38.3 Consignee's Checks in Payment of C.O.D.s

Unless instructions to collect a cashier's check or money order only are shown on the C.O.D. tag (in conformity with the instructions on the tag) or system-generated label, UPS will accept a check or other negotiable instrument issued by or on behalf of the Consignee. When instructions to collect a cashier's check or money order only are clearly indicated on the C.O.D. tag or system-generated label, UPS reserves the right to accept a cashier's check, money order, official bank check, or other similar instrument issued by or on behalf of the Consignee.

All checks or other negotiable instruments (including cashier's checks, official bank checks, money orders, and other similar instruments) tendered in payment of C.O.D.s will be accepted by UPS based solely upon the Shipper assuming all risk relating thereto, including, but not limited to, risk of non-payment, insufficient funds, and forgery, and UPS shall not be liable upon any such instrument.

All checks or other negotiable instruments (including cashier's checks, official bank checks, money orders, and other similar instruments) will be transmitted to the Shipper together with UPS's own check if Consignee check(s) collected are for less than the C.O.D. amount. Remittances (checks, money orders, etc.) received that are less than the C.O.D. dollar amount indicated by the Shipper will be reimbursed for the full amount unless the variance of the amount remitted is less than $1.00.

### 38.4 C.O.D. Package of $10,000 or More

UPS may require payment for any C.O.D. Package of $10,000 or more to be received in a single check or other negotiable instrument such as a cashier's check, money order, official bank check, or other similar instrument.

# UPS® Tariff/Terms and Conditions of Service – United States

**38.5 Acceptance of Personal Check**
In the event that UPS accepts a personal or company check when a Shipper has properly instructed UPS to collect a cashier's check or money order only, UPS reserves the right, in its sole and unlimited discretion, to deposit into a UPS account the personal or company check collected and to provide the Shipper with a check issued by UPS.

**38.6 C.O.D. Remittance Verification**
In the event that a Shipper timely notifies UPS that the Shipper has not received payment of the C.O.D. amount, if UPS's records show that it collected a C.O.D. payment and the remittance has not been cashed, UPS may, in its sole and unlimited discretion, provide the Shipper with a digital image of the check or money order along with a C.O.D. Remittance Verification in order to assist the Shipper in locating the missing C.O.D. payment. If the Shipper is still unable to locate the C.O.D. payment, UPS may, in its sole and unlimited discretion, provide the Shipper with an indemnified C.O.D. check or money order, which is a digital image of the original payment collected by UPS at the time of Delivery and can be deposited in a bank, provided that the original check or money order has not previously been deposited or negotiated. If the indemnified check or money order turns out to be invalid for any reason including, but not limited to, insufficient funds or forgery, UPS shall not be liable upon the instrument.

**38.7 Restrictions**
C.O.D.s are accepted for amounts up to $50,000 per Package.

C.O.D. Packages with an amount to be collected in excess of $500 are not accepted for transportation via a UPS Drop Box.

Entry of a C.O.D. amount is not a declaration of value for carriage. Payment of the C.O.D. charge does not constitute payment of the declared value charge.

UPS will not accept currency in any amount for payment of C.O.D. Shipments.

**38.8 Charges for C.O.D. Collections**
An additional charge will be assessed for each C.O.D. Package tendered to UPS.

**38.9 Remittance of C.O.D.s**
Subject to the following provisions of this Section, UPS shall remit C.O.D. collections to the Shipper after the date of collection.

The Shipper irrevocably authorizes UPS to apply, in its sole and unlimited discretion and without prior notice to the Shipper,

any C.O.D. collections to any past due Charges owed by the Shipper. To this end, if there are any past due Charges owed by the Shipper, the Shipper hereby (a) irrevocably assigns and transfers to UPS all of the Shipper's right, title and interest in and to each check or other negotiable instrument for payment of a C.O.D. that is received by UPS or its employee or agent, and (b) constitutes and appoints UPS as the Shipper's attorney-in-fact and authorizes UPS, in the Shipper's name, place, and stead, to endorse any such check or other negotiable instrument with the Shipper's name, to deposit the same into any UPS account, and to apply the proceeds of the same against any past due Charges owed by the Shipper. The Shipper acknowledges and agrees that such appointment of UPS as the Shipper's attorney-in-fact is coupled with an interest and is irrevocable. UPS may exercise any of its rights under this Section either directly or through any employee or agent.

The Shipper relinquishes, waives, and agrees not to assert any claim against UPS or any of its employees or agents, any Consignee, any collecting or paying bank, or any other person or entity, that may directly or indirectly arise as a result of UPS's exercise of any of its rights under this Section "Remittance of C.O.D.s." Without diminishing any of UPS's rights under the preceding sentence, the Shipper agrees that UPS and such other persons or entities shall not be liable to the Shipper or any other person or entity for any special, incidental, or consequential damages in any claim made with respect to UPS's exercise of any such rights.

The Shipper agrees that, following UPS's application of any C.O.D. collections to any past due Charges owed by the Shipper in accordance with this Section, the Shipper will continue to be fully liable for the payment of all remaining Charges owed by the Shipper (including, without limitation, (i) any Charges that are not covered by the application of the C.O.D. collections, and (ii) any Charges relating to a previously applied C.O.D. collection that is reversed by reason of the uncollectibility of the C.O.D. check or other negotiable instrument or otherwise).

Nothing in this Section shall constitute an election of remedies by UPS or any other person or entity or a waiver of any of the rights of UPS or any other person or entity under the remaining provisions of the Terms or at law or in equity.

**39. UPS Returns® Services**
Where available, UPS offers UPS Returns® Services (including UPS Authorized Return Service®, Print Return Label, Electronic Return Label, Print and Mail Return Label, 1 UPS Pickup Attempt, 3 UPS Pickup Attempts, UPS Returns® on the Web, and UPS Returns® Exchange). 3 UPS Pickup Attempts is not available for UPS Worldwide Express Freight® Service Shipments. UPS Authorized Return Service® requests and UPS Returns® Exchange requests are contractual Package services only.

An additional accessorial charge applies to each UPS Returns® Services Package or pallet and will be assessed when the service is requested, unless the applicable Service Guide specifically provides otherwise. The applicable charges will be those set forth in the UPS Rates in effect at the time the charge is applied. After entering the UPS system, a Package or pallet returned will be charged the rate calculated from the pickup location to the destination via the service selected.

Shipments containing certain items are prohibited from being shipped and are not accepted by UPS for UPS Returns® Services including, but not limited to, Hazardous Materials Shipments requiring shipping papers, firearms, and Shipments requiring Delivery Confirmation Services.

C.O.D. (Collect on Delivery) service is not available for UPS Returns® Services Packages. Third Party Billing is not available for UPS Returns® Services in the United States. Third Party Billing is available for UPS Returns® Services outside the United States.

UPS Returns® Services Shipments are subject to maximum declared values. See Section 55.1, "Maximum Declared Values."

**40. UPS Rates**
The applicable UPS Rates are determined on the basis of Shipment and Shipper characteristics, including Shipment weight and size and origin to destination distance, and are subject to change. Except as otherwise stated in the Terms, all charges, fees, or surcharges shall be those set forth in the UPS Rates in effect at the time of shipping.

To determine the amount of any Charges for UPS service, consult the UPS Rates in effect at the time of shipping. The effective UPS Rates are available at *www.ups.com* and upon request at the local UPS office.

# UPS® Tariff/Terms and Conditions of Service – United States

Shippers are responsible for providing accurate and complete Shipment information in the UPS Shipping System used, including service selected, number, weight, and dimensions of Shipments. If any aspect of the Shipment information is incomplete or incorrect as determined by UPS in its sole and unlimited discretion, UPS may adjust Charges at any time.

If multiple Packages are tendered for transportation, at the same time or at different times, using the same shipping label and tracking number or a shipping label altered without UPS's express authorization, each of which is prohibited, UPS reserves the right to refuse service or to apply Charges to each such Package in its sole and unlimited discretion.

UPS reserves the right in its sole and unlimited discretion to use any mode of transportation whatsoever to provide the service selected by the Shipper. Regardless of the mode of transportation used, the effective UPS Rates for the service selected by the Shipper shall apply. If, however, a Shipper selects a UPS service to a destination for which only a higher level of service is available, UPS will substitute the next higher level of available service and will charge the corresponding rate for the substituted service.

### 40.1 Daily Rates and Retail Rates
Daily Rates apply to UPS account holders who received Daily Rates prior to July 11, 2016, to Shippers who establish a six-digit UPS account on or after July 11, 2016, or as UPS may otherwise agree in writing.

Shippers who do not receive Daily Rates will be charged Retail Rates. Retail Rates also apply to Shipments processed and paid for at The UPS Store® locations or UPS Customer Centers.

Shippers who drop off at any The UPS Store® location, UPS Access Point location or a UPS Customer Center Packages that have already been processed prior to drop off will receive the rates applicable to the transaction. UPS Worldwide Express Freight® Service pallets that are processed as door-to-door pallets prior to drop off at a UPS Worldwide Express Freight® Center will receive door-to-door rates.

### 40.2 Letter Rates
Letter Rates for domestic Shipments are available only for UPS Express® Envelopes containing correspondence, urgent documents, or electronic media, with an actual weight of eight ounces or less. UPS Express®

Envelopes containing items other than those listed or weighing more than eight ounces will be assessed the corresponding rate for the applicable weight. For international Shipments, UPS Express® Envelopes may be used only for single package documents of no commercial value (which may include electronic media in some countries), with an actual weight of eight (8) ounces or less. UPS Express® Envelopes containing other items, or weighing more than eight (8) ounces will be assessed the corresponding rate for the applicable weight (except as expressly set forth in Section 40.3 ("Pak Rates")).

### 40.3 Pak Rates
Pak Rates are available only for UPS Worldwide Express Plus®, UPS Worldwide Express®, and UPS Worldwide Saver® single package U.S. export shipments in UPS Express® Envelopes containing correspondence, urgent documents, or electronic media, with an actual weight of more than eight ounces but less than or equal to two pounds; or when UPS Express® Pak is selected at the time of shipping, the customs value of the Package is less than or equal to $100.00, and the weight of the Package is two pounds or less. UPS Express® Pak shipments weighing more than two pounds will be assessed the corresponding applicable UPS Rates for the Shipment.

### 40.4 UPS 10 KG Box and UPS 25 KG Box Rates
UPS 10 KG Box and UPS 25 KG Box Rates apply to UPS Worldwide Express Plus®, UPS Worldwide Express®, and UPS Worldwide Saver® single package U.S. export Shipments, using UPS 10 KG Box and 25 KG Box packaging. Shipments that exceed 10 KG and 25 KG, respectively, will be assessed the applicable UPS Rates for the actual weight and service selected.

### 40.5 Private Express Statutes
The Shipper shall comply with the requirements of the Private Express Statutes when using UPS 2nd Day Air A.M.® and UPS 2nd Day Air® services.

### 40.6 Rates for Large Packages; Large Package Surcharge
For domestic Shipments, a Package is considered a "Large Package" when its length (longest side of the package) plus girth [(2 x width) + (2 x height)] combined exceeds 130 inches, or its length exceeds 96 inches.

For international Shipments, a Package is considered a "Large Package" when its length (longest side of the package) plus

girth [(2 x width) + (2 x height)] combined exceeds 130 inches.

The rate for a Large Package will be based on the greater of the dimensional weight or the actual weight, and is subject to a minimum billable rate set forth in the UPS Rates applicable to the Shipment in effect at the time of the shipping.

A Large Package Surcharge (LPS) will be applied to each Large Package, including any Package that exceeds the weight or size restrictions set forth in Section 3.1 ("Items Not Accepted for Transportation"). Each Large Package in a multiple-package Shipment may receive an LPS. LPS will not apply to UPS Authorized Return Service® UPS® Ground Packages, or to UPS Worldwide Express Freight® Service Shipments.

### 40.7 Over Maximum Limits Charge
Packages that exceed the weight or size restrictions set forth in Section 3.1 ("Items Not Accepted for Transportation") are subject to one or more of the following additional charges: Over Maximum Weight, Over Maximum Length, or Over Maximum Size. Such charges apply in addition to all other applicable Charges, including but not limited to the Large Package Surcharge.

### 40.8 Additional Handling Charge
An Additional Handling charge will be assessed for any Package that requires special handling, as determined by UPS in its sole and unlimited discretion, including, but not limited to:

– Any article that is not fully encased in a corrugated cardboard shipping container, including but not limited to any article encased in an outside shipping container made of metal, wood, hard plastic, soft plastic (e.g., plastic bag), or expanded polystyrene foam (e.g., Styrofoam);

– Any cylindrical-like item, such as a barrel, drum, pail, or tire, that is not fully encased in a corrugated cardboard shipping container;

– Any Package with its longest side exceeding 48 inches or its second-longest side exceeding 30 inches;

– Any Package with an actual weight greater than 70 pounds; and

– Each Package in a UPS Hundredweight Service®, UPS Ground with Freight Pricing, UPS® Standard, or international Shipment (excluding UPS Worldwide Express Freight® Service Shipments)

# UPS® Tariff/Terms and Conditions of Service – United States

where the average weight per Package is greater than 70 pounds and the weight for each Package is not specified in the UPS Shipping System used.

### 40.9 Oversize Pallet Handling Surcharge

UPS Worldwide Express Freight® Service pallets are subject to maximum size and weight restrictions (which vary by origin and destination) as set forth at *https://www.ups.com/media/en/wwef_max_dim.pdf*. Pallets exceeding size or weight restrictions are not accepted for transportation without prior approval by UPS. Pallets that exceed these restrictions are subject to an Oversize Pallet Handling Surcharge.

### 41. Peak Surcharges

One or more Peak Surcharges will apply to certain Packages tendered to UPS for shipment during a Peak Period, based on service level and package characteristics. Details regarding the application of Peak Surcharges and Peak Periods are set forth at *ups.com/peaksurcharges*. Peak Surcharges apply cumulatively if a Package meets more than one of the specified criteria. Peak Surcharges apply in addition to any other applicable Charges. No waiver, discount, or reduction of any type to the Peak Surcharges shall apply unless UPS agrees in writing to such waiver, discount, or reduction with specific written reference to the Peak Surcharges.

### 42. Fuel Surcharges

UPS reserves the right to institute fuel surcharges on some or all Shipments without prior notice. The surcharges are subject to adjustment weekly. The surcharges may apply to any domestic or international transportation or other charges including, but not limited to, any accessorial charge or surcharge. The current fuel surcharges are set forth at *ups.com/bridge/fuelsurcharge.html*.

Regardless of the mode of transportation used, the effective fuel surcharge for the service selected by the Shipper shall apply. The surcharges will be applied to such services and for such periods as UPS, in its sole and unlimited discretion, may determine necessary.

### 43. Manual Processing Charges

UPS reserves the right to assess a manual processing charge of $0.50 per Package or $35 per week (whichever is greater) to Shippers who ship Packages using a UPS Shipping System that applies outdated UPS Rates until such time as the Shipper upgrades the UPS Shipping System to reflect current UPS Rates.

A manual processing service charge will be assessed to each Package shipped using a UPS 3 Day Select® or UPS Ground shipping document.

### 44. Third Party Billing Service

Any Shipment billed to a Third Party (regardless of the country of origin or destination of the Shipment) is subject to a Third Party Billing Service fee, charged to the payer, set forth in the Service Guide at the time of shipping. The fee for Third Party Billing Service shall be charged for each transaction, based upon all Charges, excluding charges, duties and taxes assessed by government authorities. The Third Party Billing Service fee will not apply to UPS Returns Services or UPS Import Control Shipments.

### 45. Billing Options for Domestic Shipments

Unless otherwise agreed to in writing by UPS, Charges will be billed to the Shipper.

UPS accepts Shipments for Collect billing and Third Party billing (subject to a Third Party Billing Service fee), provided the Consignee or Third Party has a valid UPS account number and has agreed to accept the Charges. Regardless of the billing option selected, some charges including, but not limited to, address correction charges, will be billed to the Shipper.

### 46. Billing Options for International Shipments

The amount billed includes, but is not limited to, Charges, duties, fees, and taxes, if applicable. Unless otherwise restricted in the origin or destination country, Shippers tendering Packages using a UPS Shipping System may select the payer of Charges, duties, and taxes as Shipper, Receiver, or Third Party (subject to a Third Party Billing Service fee). UPS accepts shipments for Receiver or Third Party billing provided the Receiver or Third Party has a valid UPS account number and has agreed to accept the Charges. In the event of non-payment by the Receiver or Third Party, the Shipper is liable for all Charges including, but not limited to, duties, fees, and taxes.

An additional Duty and Tax Forwarding Surcharge will apply if the Shipper selects a billing option in which duties and taxes are to be paid outside of the destination country.

UPS reserves the right in its sole and unlimited discretion to request advance payment of Charges for any Package sent to or from any international destination or origin.

For all Shipments where the Shipper is not paying the Charges, the Shipper must notify the bill payer prior to shipping, and agree to pay all Charges in the event of non-payment by the bill-to party. The Shipper is liable for payment in the event of non-payment by the Consignee (or Receiver) or Third Party. All Shipments must have a valid UPS billing option indicated on the UPS Shipping System entry. Regardless of the billing option selected, some charges including, but not limited to, address correction charges, will be billed to the Shipper.

### 47. Bill My Account

UPS may provide in its sole and unlimited discretion a Bill My Account service to registered Shippers to allow the Shipper to bill to its own account Charges incurred at UPS Customer Centers and participating Third-Party Retailer locations. A processing fee for using Bill My Account may apply and may vary by shipping location. When using Bill My Account, a Shipper with customized contract incentives that may otherwise apply to the account may be limited to certain maximum incentives ("Incentive Caps"). The applicable processing fee and Incentive Caps are subject to change without prior notice and are published at *www.ups.com/billmyaccount*. Incentive Caps and processing fees in effect at the time of shipping will apply to Shipments billed using Bill My Account.

### 48. Disbursement Fee

To expedite customs clearance, UPS may make or process payments of duties and taxes on behalf of the payer as dictated by the billing option selected. An additional fee, set forth in the UPS Rates applicable to the Shipment in effect at the time of shipping, will be assessed and billed to the payer.

### 49. Currency Conversion Rate

Charges to a payer's account in a foreign currency will be converted to the payer's currency using a weekly exchange rate secured through Major Money Center Banks, plus an exchange fee, set forth in the UPS Rates applicable to the Shipment in effect at the time of shipping.

# UPS® Tariff/Terms and Conditions of Service – United States

### 50. Missing/Invalid Account Number or Refusal Fee

A processing fee will be charged for a missing or invalid account number when the account number, including the Shipper's account number, is missing, the account number is not the correct account number for the bill-to party, the account number is for a Receiver or Third Party who fails to pay the Charges, or the Package is shipped to an unauthorized Consignee. In the event of non-payment by the Receiver or Third Party, the Shipper will be billed a refusal fee plus the Charges.

### 51. Shipping Charge Corrections; Audit

UPS reserves the right to bill for Charges based upon the characteristics of, and services requested for, Shipments actually tendered to UPS. UPS also reserves the right to audit any Package, Shipment and/or invoice to verify service selection, dimensions, or weight, and applicability of any Charges. As part of that audit, UPS may weigh and measure any Package or Shipment tendered to UPS using any method UPS deems appropriate, including but not limited to multidimensional measuring devices. UPS may in its sole and unlimited discretion increase or adjust Charges based on the results of such audit. UPS reserves the right in its sole and unlimited discretion to bill for Charges based on shipping characteristics provided by the Shipper, regardless of whether UPS has audited the shipping characteristics. In the event that a Package's or Shipment's dimensions are altered during transit, UPS reserves the right to bill for Charges based on the altered dimensions.

### 52. Payment of Charges

Except where an alternative payment plan applies, UPS's payment terms require payment in full in advance.

UPS may provide in its sole and unlimited discretion alternative payment terms to certain of its Shippers. UPS, in its sole and unlimited discretion, shall decide which, if any, of the alternative payment plans described below (see Section 52.2, "Alternative Payment Plans") will be made available to the Shipper.

A Shipper that is not enrolled in any of the Alternative Payment Plans described below shall pay all Charges in advance of shipment, as required by UPS.

Notwithstanding any billing plan that is in effect or payment or billing option

selected at the time of shipment, the Shipper is ultimately liable for and agrees to pay all Charges, including in the event of insolvency, bankruptcy, non-payment, or refusal to pay by the Receiver or Third Party.

All Charges must be paid in the lawful money of the United States of America.

If a Shipper submits Shipment information to UPS through a UPS Shipping System and does not subsequently tender such Shipment to UPS, it is the Shipper's sole responsibility to request an adjustment in the event Shipper is invoiced for any such Shipments (even where Shipper is ordinarily invoiced based on a UPS package scan), as set forth below (see Section 52.1, "Invoice Adjustment"). Shippers who fail to do so will be liable for all applicable Charges.

As an accommodation to the Shipper, and in UPS's sole and unlimited discretion, UPS may render invoices, or copies of invoices, or charge certain Packages to a Third Party at the request of the Shipper. The Shipper remains responsible for the timely payment in full of all Charges owed by the Shipper. By requesting UPS to render invoices, or copies of invoices, or charge certain Packages to a Third Party, the Shipper is deemed to authorize the Third Party to act on behalf of the Shipper, and UPS may rely thereon in all respects.

UPS also may in its sole and unlimited discretion elect to render an invoice that includes amounts owed for services provided by UPS affiliates.

If Charges are paid by payment card or by an electronic payment method, the Shipper expressly authorizes UPS to assess any Charges and to obtain payment of the Charges by use of the payment card or electronic payment method. If, for any reason, any such transaction is rejected or declined, the Shipper will pay to UPS a declined transaction fee of ten dollars ($10) per incident, in addition to any late payment fees assessed by UPS and any collection costs which may be incurred by UPS in the final collection of Charges owed by the Shipper. The Shipper authorizes UPS to charge the declined transaction fee to the Shipper's payment card account or electronic payment account or to collect the fee directly from the Shipper, at UPS's sole option.

If, for any reason, a negotiable instrument submitted to UPS as payment for Charges

is returned to UPS unpaid, or an electronic request for payment is dishonored, UPS may charge the Shipper a dishonored payment fee of twenty dollars ($20) per incident, in addition to any late payment fees assessed by UPS and any collection costs which may be incurred by UPS in the final collection of Charges owed by the Shipper.

UPS may provide trade credit information on its Shippers to commercial reporting agencies.

### 52.1 Invoice Adjustment

Requests for an invoice adjustment (e.g., adjustment of Charges based on an incorrect rate, billable weight, account number, failure to tender a Shipment, type of service, shipping charge correction, etc.) or a refund due to a duplicate payment must be received by UPS within 180 days of receiving the contested invoice, or any billing dispute is waived. Notification to UPS of a request for an invoice adjustment must be made in writing using one of the following methods:

– Submit a request through UPS's online Billing Center at *ups.com/billing*;

– Email a request to UPS through the *ups.com* website using the "Support Category" "billing"; or

– Mail a request to United Parcel Service, P.O. Box 7247-0244, Philadelphia, PA 19170-0001.

The notification to UPS must include the date of shipment, the tracking number for each disputed charge, and the reason for the disputed charge. A partial payment against an invoice is not considered a request for an invoice adjustment or notice to UPS of a disputed charge. UPS reserves the right to refuse to issue any invoice adjustment until all outstanding Charges owing to UPS have been paid in full.

The filing of a lawsuit does not constitute notification by the filer or on behalf of any other party.

Requests for invoice adjustments cannot be made without a good faith basis for submitting the request as to each specific package and adjustment requested. If UPS determines that a requestor has submitted batch or multiple single requests for adjustments without a substantial basis, all requests of such requestor will be denied in their entirety for such time period as UPS may determine in its sole and unlimited discretion. A right or claim, of any

# UPS® Tariff/Terms and Conditions of Service – United States

kind, to challenge the amount invoiced is conditioned upon full and strict compliance with all requirements regarding notice set forth in this Section; otherwise, failure to comply with the notice requirements set forth in this Section constitutes agreement to pay the amount in the invoice. Full and strict compliance with this Section is required, even where it is believed that such compliance would not result in relief or would otherwise be futile.

## 52.2 Alternative Payment Plans

Where UPS elects to make an alternative payment plan available to the Shipper, UPS may render an invoice to the Shipper on a weekly (i.e., seven days) or a monthly (i.e., four or five calendar weeks) basis. A weekly invoice will include the Charges incurred in the previous week. Notwithstanding that UPS has elected to render an invoice to the Shipper on a weekly basis, an invoice may be issued only when the Shipper has incurred aggregate Charges in excess of ten dollars ($10), or when five (5) calendar weeks have elapsed from the date of issuance of the last invoice, whichever event occurs first. A monthly invoice will include the Charges incurred for the four- or five-week period for which the invoice is issued. In its sole and unlimited discretion, UPS may offer one or more of the following alternative payment plans for the payment of Charges:

### – Electronic Funds Transfer Plan (Debit EFT)

By written agreement with UPS, the Shipper will provide UPS with the Shipper's bank account number and bank routing number to enable UPS to electronically request payment, for all Charges incurred by the Shipper, directly from the Shipper's bank, on a weekly or monthly basis. The Shipper's bank will remit the amount requested to UPS and deduct that amount from the Shipper's bank account. Payments to UPS will be shown on the Shipper's bank statements. The Shipper is responsible for payment of any fees imposed by the Shipper's bank. Additionally, the Shipper will receive a weekly or monthly invoice, as applicable, except as described above, from UPS listing the services provided for the applicable billing period. If, for any reason, an electronic request for payment is dishonored, the Shipper is responsible for making a timely payment directly to UPS. Past due balances will be subject to any collection

costs which may be incurred by UPS in the final collection of Charges owed by the Shipper. No late payment fee shall be assessed with respect to the Electronic Funds Transfer Plan.

### – Monthly Prepayment Plan

By written agreement with UPS, the Shipper will make a prepayment with UPS in an amount equal to four weeks' anticipated Charges as estimated by UPS. Upon notice to the Shipper, the required prepayment amount may be changed by UPS at any time to reflect a revised estimate of four weeks' Charges. All prepayment amounts will remain on account with UPS. No interest will be paid or accrued on the prepayment amounts.

The Charges incurred for the applicable month will be totaled and billed to the Shipper on a monthly basis. Payment is due within seven (7) days after receipt of the UPS invoice. Past due balances will be subject to a late payment fee as described below in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the Shipper.

### – Weekly Prepayment Plan

By written agreement with UPS, the Shipper will make a prepayment with UPS in an amount equal to four weeks' anticipated Charges as estimated by UPS. Upon notice to the Shipper, the required prepayment amount may be changed by UPS at any time to reflect a revised estimate of four weeks' Charges. All prepayment amounts will remain on account with UPS. No interest will be paid or accrued on the prepayment amounts.

Shipper will receive invoices on a weekly basis, except as described above. Each invoice will list the previous period's Charges incurred. Payment for all accumulated Charges will be due within seven (7) days following the Shipper's receipt of every fourth invoice; however, if prior to receiving the fourth invoice the Shipper's accumulated Charges should equal or exceed the prepayment amounts on account with UPS, then the accumulated Charges will be due within seven (7) days following the Shipper's receipt of the invoice requiring such payment. Past due balances will be subject to a late payment fee as described below, in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the Shipper.

### – Special Payment Plan

By written agreement with UPS, the Shipper may prepay an amount equal to the anticipated Charges for a period of between ten to twenty-six weeks, as estimated by UPS. The Charges actually incurred by the Shipper will be deducted by UPS on a weekly basis from the pre-payment amounts on account with UPS. Weekly invoices marked as paid will be forwarded to the Shipper reflecting the balance of the prepayment amount on account with UPS. When the prepayment amount on account with UPS reaches the minimum balance specified in the written agreement, the Shipper is required to make another prepayment for an additional period pursuant to the same agreement, or, if the Shipper does not do so, the Shipper must make another payment arrangement with UPS. All prepayment amounts will remain on account with UPS. No interest will be paid or accrued on the prepayment amounts. If the Charges incurred by the Shipper exceed the remaining balance of the prepayment amounts on account with UPS, the excess Charges will be due within seven (7) days following the Shipper's receipt of the invoice requiring such payment. Past due balances will be subject to a late payment fee as described below in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the Shipper. This payment plan alternative is available only to existing customers already approved for a Special Payment Plan.

### – Credit Extension Plan

By written agreement with UPS, the Shipper may elect to pay an annual credit extension fee and thereafter receive invoices for Charges incurred by the Shipper on a monthly basis with no prepayment requirement. The invoices will be payable within seven (7) days following receipt by the Shipper. The credit extension fee is based upon the Shipper's total annual Charges, as estimated by UPS, and is subject to change annually by UPS in its sole and unlimited discretion. To be eligible for the Credit Extension Plan, the Shipper must use UPS's transportation services and the Credit Extension Plan solely for business, commercial, or agricultural purposes. A Shipper is not eligible for the Credit Extension Plan if the Shipper uses UPS's transportation services

# UPS® Tariff/Terms and Conditions of Service – United States

and the Credit Extension Plan for any personal, family, or household purposes. By using the Credit Extension Plan (if made available to the Shipper), the Shipper represents, warrants, certifies, and agrees that it will use UPS's transportation services and the Credit Extension Plan solely for business, commercial or agricultural purposes and not for any personal, family, or household purposes. Past due balances will be subject to a late payment fee as described below in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the Shipper.

– **Weekly Payment Plan**

Each week the Shipper will receive an invoice for the previous week's Charges except as described above. The invoice is due within seven (7) days of receipt. No prepayment is required under this plan.

Past due balances will be subject to a late payment fee as described below in addition to any collection costs which may be incurred by UPS in the final collection of Charges owed by the Shipper.

– **Credit Card Payment Plan**

The Shipper may elect to pay the previous week's Charges by credit card. The Shipper will receive billing detail itemized on its card statement or a weekly invoice, except as described above, from UPS listing the previous period's Charges incurred. The Shipper will provide UPS with the Shipper's credit information to enable UPS to process Charges incurred by the Shipper on a weekly basis.

Shipper acknowledges and agrees that there may be a delay of two or more days between the date that payments are received by UPS and the date that the payments are posted and credited to the Shipper's account with UPS. If a UPS remittance advice is attached to the Shipper's payment, the payment will be credited accordingly. If no remittance advice is attached to the Shipper's payment, the payment will be credited to the Shipper's account.

**52.3 Late Payment Fee**

For the Monthly Prepayment Plan, the Weekly Prepayment Plan, the Special Payment Plan, the Credit Extension Plan, and the Weekly Payment Plan, a late payment fee will be assessed if the Shipper's payment is not received by UPS within fourteen (14) days of the invoice due date.

Except as otherwise stated below, the late payment fee will equal six percent (6%) of the total past due balance of the Shipper's invoice (including without limitation any previously assessed but unpaid late payment fees) that is fourteen (14) days past due.

In determining the late payment fee for the Monthly Prepayment Plan and the Weekly Prepayment Plan, UPS will apply the prepayment amounts on account with UPS to reduce the calculated base amount on which the late payment fee is assessed, provided that UPS will so apply the prepayment amounts to the oldest outstanding invoice first, and to each subsequent invoice thereafter, until the prepayment amounts have been fully so applied. If an invoice 14 days past due is fully so covered by the prepayment amount, no late payment fee will apply. If an invoice 14 days past due is partially so covered by the prepayment amount, the late payment fee will apply to the portion not so covered by the prepayment amount.

For the Special Payment Plan, a late payment fee will not be assessed if there has been a positive balance in the Shipper's prepayment account with UPS at any time during the 27-day period immediately preceding the transmittal of the current invoice to the Shipper. The late payment fee for the Special Payment Plan will be assessed on the "charges this period" of the Shipper's invoice (including without limitation any previously assessed but unpaid late payment fees) that is fourteen (14) days past due.

A late payment fee will be assessed only once on each invoice that is fourteen (14) days past due. Each late payment fee will be due and payable within seven (7) days following the Shipper's receipt of the invoice that first reflects the assessment of the late payment fee. The late payment fee is in addition to any collection costs that may be incurred by UPS in the final collection of Charges owed by the Shipper. Neither the assessment nor the payment of a late payment fee will (a) affect the Shipper's responsibility to pay all Charges owed, or (b) in any manner preclude UPS from exercising any of its rights or remedies hereunder or under applicable law.

## 53. UPS Service Guarantee

UPS guarantees on-schedule Delivery of Shipments shipped via the following

services, where available, to all 50 states and Puerto Rico:

– UPS Air Services

– UPS Hundredweight Service® Air Services

– UPS 3 Day Select®

– UPS Hundredweight Service® UPS 3 Day Select®

– UPS® Ground

– UPS® Ground with Freight Pricing

– UPS Hundredweight Service® Ground

UPS guarantees on-schedule Delivery of Shipments shipped via the following services, where available, and provided that customs clearance is performed by UPS Supply Chain Solutions® brokerage offices designated by UPS for clearing these Shipments:

– UPS Worldwide Express Plus®

– UPS Worldwide Express NA1®

– UPS Worldwide Express®

– UPS Worldwide Express Freight® Service

– UPS Worldwide Saver®

– UPS Worldwide Expedited®

– UPS 3 Day Select® from Canada

– UPS® Standard

In the event UPS fails to attempt Delivery by the date and time (if applicable) indicated at *https://wwwapps.ups.com/ctc*, for the applicable date, time and location of tender, or as provided when 1-800-PICK-UPS® (1-800-742-5877) is called, UPS, at its option, will either credit or refund the transportation charges for each such Shipment to the payer only, upon request, provided the conditions set forth in the UPS Service Guarantee are met. Transportation charges do not include other fees or charges that may be assessed by UPS including, but not limited to, fuel surcharges. This is the sole remedy available under the UPS Service Guarantee. UPS may, but is not required, to present the actual time of Delivery in tracking detail or proof of Delivery, and reserves the right to amend any delivery confirmation or the actual time of Delivery within forty-eight (48) hours of the date of Delivery.

UPS shall not be liable for any damages whatsoever for delayed Delivery, except as specifically provided for Shipments made under the UPS Service Guarantee. Under no circumstances shall UPS be liable for any special, incidental, or consequential damages including, but not limited to,

# UPS® Tariff/Terms and Conditions of Service – United States

damages arising from delayed Delivery or failure to attempt on-schedule Delivery.

UPS may cancel, suspend or modify the UPS Service Guarantee (or change the guaranteed time in transit) for any service(s), and for any period of time, as determined by UPS in its sole and unlimited discretion, and without prior notice. Visit *www.ups.com/holidays* for changes effective during the holiday season.

## 53.1 Conditions

The UPS Service Guarantee is subject to the following conditions:

– UPS's guaranteed Delivery schedule has been obtained by referencing UPS's website or contacting a UPS Customer Service office. "On-time" or "on-schedule" means, subject to the terms of this UPS Service Guarantee, Delivery is attempted within the UPS guaranteed Delivery schedule.

– Each Package and Shipment is properly recorded in a UPS Shipping System.

– Each Package and Shipment bears the appropriate UPS tracking label and an address label, or a combined label generated by a UPS Automated Shipping System, showing the Consignee's correct name, deliverable address (UPS does not provide Delivery to a P.O. Box), and ZIP Code (or postal code for international Shipments).

– Each Package or pallet in a Shipment bears a UPS Saturday Delivery routing label (where required) when optional Saturday service is requested and available.

– Each Shipment is tendered to UPS during UPS's published business hours. Shipments received from or destined to certain locations may require earlier pickup times (available at the UPS website).

– UPS is notified by UPS's Interactive Voice Response system or through UPS's online Billing Center at *ups.com/billing* of a service failure within fifteen (15) calendar days of the date of scheduled Delivery or the date by which UPS has amended or corrected the actual time of Delivery in tracking detail or proof of Delivery, whichever is later, and is advised of the Consignee's name and address, date of shipment, Shipment weight, and UPS tracking number.

– For UPS Worldwide Expedited® Shipments, the guarantee shall apply only to Shipments with a U.S. origin or destination and when the billed party is resident in the United States and is responsible for all Charges.

– For UPS Worldwide Express Freight® Service Shipments, the guarantee shall apply to a Shipment where any pallet exceeds maximum size or weight restrictions (as set forth at *https://www.ups.com/media/en/wwef_max_dim.pdf*) only if the Shipper obtained confirmation of eligibility for the UPS Service Guarantee, prior to tender of the Shipment to UPS for service.

UPS reserves the right to refuse any request for a credit or refund when such request is either (a) made by, or (b) based on information obtained by, a party other than the payer of the Charges.

## 53.2 Exclusions

The UPS Service Guarantee does not apply to:

– UPS 2nd Day Air A.M.® Packages for Residential deliveries.

– Shipments tendered pursuant to Drop Shipments, special operating plans, or customized handling or processing arrangements, or tendered either under an account number on which Service Guarantee claims are addressed by a special agreement or where such claims have been addressed by special agreement with the payer of the Charges.

– Shipments processed using a UPS Automated Shipping System that is not located at the pickup address assigned to the UPS account number on which the Shipment was made.

– UPS Ground Returns Service Packages.

– Packages subject to a Large Package Surcharge or Additional Handling Fee, Packages that exceed maximum size or weight limits, Shipments containing any Package subject to a Large Package Surcharge, Additional Handling Fee, or that exceed maximum size or weight limits, or UPS Worldwide Express Freight® Service Shipments tendered without prior approval containing any pallet exceeding maximum size or weight restrictions (as set forth at *https://www.ups.com/media/en/wwef_max_dim.pdf*).

– Shipments made using a Call Tag.

– Shipments subject to a UPS Delivery Intercept® request, Delivery Change Request, or a UPS My Choice® request.

– Shipments that are delayed due to causes beyond UPS's control including, but not limited to: the unavailability or refusal of a person to accept Delivery of the Shipment, acts of God, natural disasters, war risks, acts of terrorism, acts of public authorities acting with actual or apparent authority, acts or omissions of customs or similar authorities, authority of law, insufficient information provided by a customer, Hazardous Materials Packages improperly offered for transport, the application of security regulations imposed by the government, or otherwise applicable to the Shipment, riots, strikes or other labor disputes, civil unrest, disruptions in national or local air or ground transportation networks (including, but not limited to, UPS's transportation network), disruption or failure of communication and information systems, and adverse weather conditions.

– International Shipments for which the Shipper has selected the Receiver or Third Party as the payer of any applicable duties and taxes and Delivery is delayed until payment arrangements are made.

– UPS Import Control® Shipments for which the Shipper has selected commercial invoice removal.

– UPS Ground Shipments or UPS® Standard Shipments that are picked up or scheduled to be delivered during the applicable dates set forth in the Year-End Holiday Schedule available at *www.ups.com/holidays*.

– Shipments without Timely Upload of PLD, Shipments not accompanied by a UPS Smart Label tag, or when the delivery address on any address label or combined label affixed to the Package does not match the delivery address on the UPS Smart Label tag, bar code, or PLD for the Package.

– UPS Air Services and UPS 3 Day Select Shipments of Hazardous Materials or Dangerous Goods Shipments, and all international Hazardous Materials or Dangerous Goods Shipments except UPS Standard Shipments.

# UPS® Tariff/Terms and Conditions of Service – United States

## 54. Claims and Legal Actions: Individual Binding Arbitration of Claims

### Time Limits and Pleading Requirements for Claims/No Right to Set Off

Claims against UPS must be made within strict time limits, including as set forth in Section 52.1 ("Invoice Adjustment") regarding invoice adjustments or billing disputes; Section 54.3 ("Time Limit for Filing Claims for Loss or Damage to Property") regarding claims for loss or damage to property; and pursuant to Section 53, "UPS Service Guarantee."

All claims against UPS arising out of or related to the provision of services by UPS, including, but not limited to, demands for damages, refunds, credits, and any legal or equitable relief whatsoever, shall be extinguished unless the Claimant (1) timely and completely complies with all applicable notice and claims periods set forth in the Terms and in the Service Guide, including as to claims for loss or damage to property under Section 54.3, claims under Section 53, "UPS Service Guarantee," claims for invoice adjustments under Section 52.1, or claims for breach of contract or any other cause of action; and (2) pleads on the face of any complaint filed in court against UPS or states in its submission of its claim in arbitration against UPS, as the case may be, satisfaction and compliance with those notice and claims periods as a contractual condition precedent to recovery. Claimants may not deduct the amounts of pending claims from any Charges owed to UPS, and the Shipper waives any and all rights, including any statutory or common law rights, to set off the amount of any claim against Charges owed to UPS.

### Agreement to Arbitrate Claims

Claimant and UPS agree that, except for disputes that qualify for state courts of limited jurisdiction (such as small claims, justice of the peace, magistrate court, and similar courts with monetary limits on their jurisdictions over civil disputes), any controversy or claim, whether at law or equity, arising out of or related to the provision of services by UPS, regardless of the date of accrual of such dispute, shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration.

Arbitration is the submission of a dispute to a neutral arbitrator, instead of a judge or jury, for a final and binding decision, known as an "award." Arbitration provides for more limited discovery than in court, and is subject to limited review by courts. Each party has an opportunity to present evidence to the arbitrator in writing or through witnesses. An arbitrator can only award the same damages and relief that a court can award under the law and must honor the terms and conditions in the Terms.

Claimant and UPS agree that their sole relationship is a contractual one governed by the Service Guide and Terms. Any controversy or claim arising out of or related to the provision of services by UPS shall be resolved solely based on the agreements set forth in the Service Guide and Terms.

### Institutional Arbitration

The arbitration shall be conducted by the American Arbitration Association (AAA) in accordance with its Commercial Arbitration Rules and the Supplementary Procedures for Consumer-Related Disputes (the "Rules"), and judgment on the award may be entered in any court of competent jurisdiction. The Rules, including instructions for how to initiate arbitration, are available at *https://www.adr.org*. The arbitrator shall decide all issues of the case on the basis of the applicable law, not equity. If you initiate arbitration, you must serve UPS's registered agent for service of process, Corporation Service Company, which has locations in every state. Information also can be found on the website of your local Secretary of State.

**Any arbitration under this Agreement will take place on an individual basis; class, mass, consolidated or combined actions or arbitrations or proceeding as a private attorney general are not permitted. Claimant and UPS are each waiving the right to trial by jury. Claimant and UPS are further giving up the ability to participate in a class, mass, consolidated or combined action or arbitration.**

### Place of Arbitration/Number of Arbitrators/Costs of Arbitration/ Governing Law/Survival

Any arbitration will take place in the county where Claimant resides and will be determined by a single arbitrator.

Any filing fee or administrative fee required of Claimant by the AAA Rules shall be paid by Claimant to the extent such fee does not exceed the amount of the fee required to commence a similar action in a court that otherwise would have jurisdiction. For all non frivolous complaints, UPS will pay the amount of such fee in excess of that amount. The arbitrator will allocate the administrative costs and arbitral fees consistent with the applicable rules of the American Arbitration Association. Reasonable attorney's fees and expenses will be allocated or awarded only to the extent such allocation or award is available under applicable law.

All issues are for the arbitrator to decide, except that issues relating to the scope, application, and enforceability of the arbitration provision are for a court to decide. The Federal Arbitration Act governs the interpretation and enforcement of this provision. This agreement to arbitrate shall survive termination of the Terms.

### Severability

Notwithstanding anything to the contrary in the AAA Rules, if any part of this arbitration provision is deemed invalid or ineffective for any reason, this shall not affect the validity or enforceability of the remainder of this arbitration provision, and the arbitrator shall have the authority to amend any provisions deemed invalid or ineffective to make the same valid and enforceable.

### Desk Arbitration

For all disputes concerning an amount less than fifteen thousand dollars ($15,000.00), the parties shall submit their arguments and evidence to the arbitrator in writing and the arbitrator shall make an award based only on the documents; no hearing will be held unless the arbitrator in his or her discretion, and upon request of a party, decides it is a necessity to require an in-person hearing. For a dispute governed by the AAA Consumer-Related Disputes Supplementary Procedures, and concerning an award between fifteen thousand dollars ($15,000.00) and fifty thousand dollars ($50,000.00), inclusive, UPS shall pay Claimant's filing fee under the AAA Rules, provided that Claimant agrees that both parties shall submit their arguments and evidence to the arbitrator in writing and that the arbitrator shall make an award based only on the documents, without a hearing being held. Notwithstanding this provision, the parties may agree to proceed with desk arbitration at any time.

### Access to Small Claims Courts

All parties shall retain the right to seek adjudication in a state court of limited

# UPS® Tariff/Terms and Conditions of Service – United States

jurisdiction, such as small claims, justice of the peace, magistrate court, and similar courts with monetary limits on their jurisdiction over civil disputes, for individual disputes within the scope of such court's jurisdiction.

**Acknowledgements**

Claimant and UPS acknowledge and agree that pursuant to these Terms:

– CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST CLAIMANT, UPS OR RELATED THIRD PARTIES;

– CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO HAVE A COURT, OTHER THAN A STATE COURT OF LIMITED JURISDICTION AS DEFINED ABOVE, RESOLVE ANY DISPUTE ALLEGED AGAINST CLAIMANT, UPS OR RELATED THIRD PARTIES;

– CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO HAVE A COURT REVIEW ANY DECISION OR AWARD OF AN ARBITRATOR, WHETHER INTERIM OR FINAL, EXCEPT FOR APPEALS BASED ON THOSE GROUNDS FOR VACATUR EXPRESSLY SET FORTH IN SECTION 10 OF THE FEDERAL ARBITRATION ACT.

– CLAIMANT AND UPS AGREE THAT WE ARE WAIVING THE RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, JOIN AS A CLASS MEMBER, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN ANY CLASS, MASS, CONSOLIDATED OR COMBINED ACTION OR ARBITRATION FILED AGAINST CLAIMANT, UPS AND/OR RELATED THIRD PARTIES.

**Award**

The arbitrator may award money or equitable relief in favor of only the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. Similarly, an arbitration award and any judgment confirming it apply only to that specific case; it cannot be used in any other case except to enforce the award itself. To reduce the time and expense of the arbitration, the arbitrator will not provide a statement of reasons for his or her award unless a brief explanation of the reasons is requested by one of

the parties. Unless both Claimant and UPS agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative, private attorney general or class proceeding.

**Confidentiality of Arbitration**

Notwithstanding anything to the contrary in the AAA Rules, UPS and Claimant agree that the filing of arbitration, the arbitration proceeding, any documents exchanged or produced during the arbitration proceeding, any briefs or other documents prepared for the arbitration, and the arbitral award shall all be kept fully confidential and shall not be disclosed to any other party, except to the extent necessary to enforce this arbitration provision, arbitral award or other rights of the parties, or as required by law or court order. This confidentiality provision does not foreclose the American Arbitration Association from reporting certain consumer arbitration case information as required by state law.

**54.1 Making Claims for Loss or Damage to Property**

All claims for loss of or damage to property transported or accepted for transportation must: (1) be in writing (or an electronic communication) and must include reference to the Source Document or pickup record number and date of shipment or copies of other documents sufficient to identify the Shipment involved, and the declared value; (2) assert the liability of UPS for alleged loss or damage; (3) make claim for payment of a specified or determinable amount of money; and (4) be accompanied by a copy of the original invoice or, if no invoice was issued, other proof, certified to in writing, as to the purchase price paid by the Consignee (where the property involved has been sold to the Consignee), actual cost or replacement cost of the property, or extent of the damage to the property.

No claims will be voluntarily paid unless filed in writing or transmitted electronically by or on behalf of the Shipper in accordance with these provisions.

A request for proof of Delivery or damage inspection or the filing of a lawsuit do not constitute notification of a claim.

A right or claim, of any kind, for loss or damage to property is conditioned upon full and strict compliance with this Section 54.1 and Sections 54.3 through 54.6. Full

and strict compliance with this Section is required, even where it is believed that such compliance would not result in relief or would otherwise be futile.

**54.2 Acknowledgment of Claims for Loss or Damage to Property**

After receiving a proper written or electronic transmission of a claim in the manner and form and with the supporting documents described in Section 54.1 ("Making Claims for Loss or Damage to Property") and Section 54.4 ("Investigation of Claims for Loss or Damage to Property") herein, UPS or its designee will acknowledge the receipt of such claim in writing or electronically to the claimant within 30 days after the date of receipt, unless such claim has already been paid or denied in writing or electronically. UPS will at the time each claim is received create a separate file and assign thereto a successive claim file number and note that number on all documents filed in support of the claim and all records and correspondence with respect to the claim, including the written acknowledgment of receipt and, if in its possession, the Source Document and delivery receipts, if any, covering the Shipment involved. At the time such claim is received, UPS will cause the date of receipt to be recorded on the face of the claim document, and the date of receipt will also appear on the acknowledgment of receipt sent to the claimant.

**54.3 Time Limit for Filing Claims for Loss or Damage to Property**

As a condition precedent to recovery, all claims for loss or damage to property must be filed in writing or electronically with UPS within the following time limits:

– For domestic Shipments (including shipments to and from Puerto Rico), claims must be filed within nine months after Delivery of the Package or, in case of failure to make Delivery, within nine months after a reasonable time for Delivery has elapsed.

– For international Shipments, claims must be filed within sixty days after Delivery of the Package or Pallet or, in the case of non-Delivery, within sixty days after a reasonable time for Delivery has elapsed.

– Suits shall be instituted within two years after denial of any portion of the claim. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, such claims shall be deemed waived and will not be paid.

# UPS® Tariff/Terms and Conditions of Service – United States

**54.4 Investigation of Claims for Loss or Damage to Property**

– **Prompt Investigation.** Each claim for loss or damage to a Package or Shipment filed in the manner prescribed herein will be promptly and thoroughly investigated, if investigation has not already been made prior to receipt of the claim.

– **Supporting Documents.** Each claim must be supported by the following: (1) evidence of payment of the shipping and any declared value charges; and (2) either the original invoice or a photocopy, exact copy, or extract of, the original invoice, a certification of prices or costs, with trade or other discounts, allowance, or deductions of any nature whatsoever and the terms thereof, or depreciation reflected thereon. Where the property involved in a claim has not been invoiced to the Consignee shown on the bill of lading or receipt, where an invoice does not show price or cost, where the property involved has not been sold, or where the property has been transferred at bookkeeping values only, UPS will, before paying a claim, require the claimant to establish the value in the quantity shipped, transported, or involved. UPS reserves the right to request the original shipping record or Source Document.

For an asserted claim of $1,000 or more for a Package processed through a UPS Shipping System and tendered to a UPS driver or UPS Customer Center, a copy of the signed high-value shipment summary applicable to the Shipment obtained by the Shipper and signed by the UPS driver or UPS Customer Center representative at the time of tender may be required to support the claim. UPS reserves the right to refuse to pay any claim if, having requested such a signed high-value shipment summary, no such summary is provided.

For an asserted claim of $1,000 or more for an international UPS Returns® or a UPS Import Control® Package or pallet, the signed UPS high-value shipment summary applicable to the Shipment must be submitted in support of the claim.

By filing a claim and supporting documents to UPS, the claimant certifies that the claim, amount of claim, and supporting documents are true and correct.

– **Original Packaging Materials.** In the event that a claim is made for damage to a Shipment, the original packaging materials must be made available to UPS or its designee for inspection prior to reshipment.

– **Verification of Loss.** When an asserted claim for loss of an entire Package or pallet or an entire Shipment cannot be otherwise authenticated upon investigation, UPS will obtain from the Consignee of the Shipment involved a certified statement in writing that the property for which the claim is filed has not been received from UPS or from any other source. UPS reserves the right to require verification by the filing of a police report and providing a copy of the filed report to UPS in support of the claim.

**54.5 Salvage**

When UPS pays the actual cost, the purchase price, or the replacement cost of the property, all rights, title to, and interest in the property shall thereupon pass to UPS, and UPS reserves the right to obtain the property for salvage. Payment of a claim in such circumstances shall be contingent on UPS's receipt of the damaged property in the same condition as on the date the damage was incurred.

**54.6 Disposition of Claims for Loss or Damage to Property**

UPS or its designee, after receiving a written claim for property transported, will pay, decline, or make a firm compromise settlement offer in writing to the claimant within 120 days after UPS receives the claim; provided, however, that if the claim cannot be processed and disposed of within 120 days after receipt, UPS or its designee will at that time and at the expiration of each succeeding 60-day period while the claim remains pending, advise the claimant in writing of the status of the claim and the reason for the delay in making final disposition thereof and shall retain a copy of such notice to the claimant in its claim file.

No claim for loss or damage shall be paid unless a valid claim has been filed in accordance with terms set forth herein (in Section 54.1, "Making Claims for Loss or Damage to Property," Section 54.3, "Time Limit for Filing Claims for Loss or Damage to Property" and Section 54.4, "Investigation of Claims for Loss or Damage to Property"). UPS reserves the right to refuse to pay any claim for loss or damage to property until all outstanding Charges owing to UPS have been paid in full. UPS reserves the right to refuse to pay any claim for loss of property if, having requested a detailed description of the property, no such description is provided.

**55. Responsibility for Loss or Damage**

UPS's liability for loss or damage to each UPS domestic Package or international Shipment, or to each pallet in a UPS Worldwide Express Freight® Service Shipment, is limited to a value of $100, except as set forth below. Unless a greater value is recorded in the declared value field of the UPS Source Document or the UPS Automated Shipping System used, the Shipper agrees that the released value of each domestic Package or international Shipment, or pallet is no greater than $100, which is a reasonable value under the circumstances surrounding the transportation, and that UPS shall not be liable for more than $100 for each domestic Package or international Shipment or pallet.

To increase UPS's limit of liability for loss or damage above $100, the Shipper must declare a value in excess of $100 for each Package or pallet in the declared value field of the UPS Source Document or the UPS Automated Shipping System used and pay an additional charge. The Shipper cannot declare a value in excess of the maximum allowable limits set forth below. UPS shall not be liable under any circumstances for an amount in excess of the declared value of a domestic Package or international Shipment, or pallet. When a Shipper declares a value in excess of $100, it does not receive any form of insurance. Shippers desiring cargo insurance, all risk insurance, or another form of insurance should purchase such insurance from a third party.

The rules relating to liability established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air signed at Warsaw, Poland, on October 12, 1929, that convention as amended, or the Convention for the Unification of Certain Rules for International Carriage by Air (Montreal, 28 May 1999), shall apply to the international carriage of any Shipment insofar as the same is governed thereby. There are no stopping places which are agreed upon at the time of tender of the Shipment, and UPS reserves the right to route the Shipment in any way UPS deems appropriate.

# UPS® Tariff/Terms and Conditions of Service – United States

**55.1 Maximum Declared Values**

The maximum declared value is $50,000 per Package and $100,000 per pallet, except for the following for which the maximum declared value may not exceed:

- Subject to the limitations set forth below, certain Packages are eligible for the enhanced maximum declared value of $70,000 per Package ("Enhanced Maximum Declared Value"). A Package is eligible for Enhanced Maximum Declared Value only where the Package is a domestic Package; is tendered pursuant to the Shipper's Scheduled Pickup Service; the service level selected is a UPS Next Day Air delivery service; the Package is processed for shipment using a UPS Shipping System (declarations of value on paper Source Documents are not eligible for Enhanced Maximum Declared Value); and the Package does not contain any hazardous material or a Perishable Commodity. Except as set forth in this Section, the portion of any declaration of value above $50,000 per Package is null and void;

- $1,000 per Package for Packages shipped by a Third-Party Retailer if no high-value control log was provided to UPS on tender of the Package;

- $1,000 per Package for a Package processed for shipment prior to tender using a UPS Shipping System and tendered to a UPS driver or UPS Customer Center, unless a UPS high-value shipment summary is obtained by the Shipper or person tendering the Package and signed by the driver or UPS Customer Center representative upon tender of the Package;

- up to $5,000 per Package for a Package shipped or delivered to a UPS Access Point® location.

- $500 per Package for a Package shipped via a UPS Drop Box;

- up to $1,000 per Package for a Package shipped via a Third-Party Retailer or UPS Access Point® location (including a UPS Access Point® locker) if such Package was processed for shipment using a UPS Shipping System prior to drop off at the Third-Party Retailer or UPS Access Point® location or billed using Bill My Account;

- $500 per Package or pallet for international Shipments containing jewelry (not including costume jewelry), or $2,500 per Package or pallet for Shipments tendered to eligible destinations set forth at ups.com/jewelry;

- $1,000 per Package for domestic Packages returned via UPS Print Return Label, UPS Print and Mail Return Label, Electronic Return Label, or 1 UPS Pickup Attempt Return Services, (including via UPS Returns® on the Web service);

- $1,000 per Package or pallet for international Shipments returned via the following UPS Returns® Services: UPS Print Return Label, UPS Print and Mail Return Label, Electronic Return Label, 1 UPS Pickup Attempt, or 3 UPS Pickup Attempts (including via UPS Returns® on the Web), unless a UPS high-value shipment summary is obtained by the Shipper or person tendering the Package or pallet and signed by the driver or UPS Customer Center representative upon tender of the Shipment;

- $1,000 per Package or pallet for international UPS Import Control® Shipments unless a UPS high-value shipment summary is obtained by the Shipper or person tendering the Package or pallet and signed by the driver or UPS Customer Center representative upon tender of the Shipment;

- $999 per Package for Packages shipped via Shipper Release service;

Shippers cannot declare a value for UPS® Prepaid Letters.

Declaring a value in the declared value field of the UPS Source Document or UPS Automated Shipping System does not increase UPS's limitations of liability for, and Shippers may not declare a value for, damages related to providing or failure to provide C.O.D. service, including, but not limited to: failure to collect the C.O.D. amount; failure to collect the specified form of payment; collection of an instrument in the wrong amount; failure or delay in delivering the collected instrument to the Shipper; or collection of forged, insufficient funds, or otherwise invalid instruments.

Any declared value contrary to what is allowed in the applicable Terms or Service Guide (e.g., the portion of any declaration in excess of allowed maximums) is null and void. Acceptance for carriage or receipt of payment for any Package or Shipment bearing a declared value contrary to what is allowed does not constitute a waiver of any provisions of the Terms or Service Guide limiting UPS's liability or responsibility for any such Package or Shipment.

If a Shipper declares value in excess of the applicable maximum allowed or in any respect contrary to what is allowed in the applicable Terms or Service Guide, it is the Shipper's sole responsibility timely to request an adjustment as set forth in Section 52.1 ("Invoice Adjustment") to recover any Charges. Shippers who fail to do so will be liable for all invoiced Charges.

**55.2 Liability Limits**

UPS's maximum liability for loss or damage to each UPS domestic Package or international Shipment, or to each pallet in a UPS Worldwide Express Freight® Service Shipment, shall not exceed the lesser of:

- $100, when no value in excess of $100 is declared on the Source Document or UPS Automated Shipping System used (or when a value in excess of $100 is declared, but the applicable declared value charges are not paid);

- the declared value on the Source Document or UPS Automated Shipping System used when a value in excess of $100 is declared and the applicable declared value charges paid;

- the purchase price paid by the Consignee (where the shipped property has been sold to the Consignee);

- the actual cost of the damaged or lost property;

- the replacement cost of the property at the time and place of loss or damage; or

- the cost of repairing the damaged property.

UPS's liability for Shipments containing the following commodities shall be limited as follows:

- **Checks.** UPS's liability for a Shipment containing a check or checks is limited to the cost of stopping payment on and reissuing the check(s), not to exceed $100 per Package or pallet. In no event shall UPS be liable for the face value of the check(s).

- **Phone Cards, Tickets, Gift Cards, and Similar.** UPS's liability for a Shipment containing a phone card, ticket (such as event or airline ticket), gift certificate, gift card, coupon, or other similar printed matter with an exchange value is limited to the cost (which shall not include any amount of the value attached to the card, certificate, or coupon, or similar printed matter) of replacing the physical card(s), certificate(s), or printed matter, not to exceed $100 per Package or per pallet.

# UPS® Tariff/Terms and Conditions of Service – United States

In no event shall UPS be liable for the face value of any phone card, ticket, gift certificate, gift card, coupon, or similar printed matter.

– **Media.** UPS's liability for a Shipment containing documents, film, photographs (including negatives), slides, transparencies, videotapes, compact discs, laser discs, computer tapes, and media of similar nature is limited to the replacement cost of the media on which the content is recorded.

– **Pairs, Parts.** In the event of loss of or damage to a pair or set of articles, UPS's liability is limited to the value of that part of the pair or set which is lost or damaged, and UPS shall not be liable for the value of the whole pair or set. In the event of loss of or damage to any part of property (including any part of a machine) which, when complete for sale or use, consists of several parts, UPS shall be liable only for the value of the part lost or damaged, not to exceed the declared value of the part lost or damaged. In no event shall UPS be liable for the value of the complete item.

In the event of partial loss or damage to a pallet in UPS Worldwide Express Freight® Service, UPS shall be liable only for the value of the contents of the pallet lost or damaged, and not the value of the full pallet.

## 55.3 Exclusions from Liability

UPS shall not be liable or responsible for:

– loss or damage to articles of unusual value (as defined in these Terms);

– loss or damage to Prepaid Letters;

– loss or damage resulting from insects, moths, vermin, inherent vice, deterioration, dampness of atmosphere, extreme of temperature, ordinary wear and tear, or that which occurred or arose prior to or after the course of transportation by UPS;

– loss or damage resulting from improper, inadequate or unsafe packaging or wrapping that fails to meet UPS's published standards related thereto set forth in the Terms or at *ups.com*;

– loss or damage to Perishable Commodities to the extent the loss or damage results from exposure to heat or cold or the perishable nature of the item;

– loss or damage to human remains, fetal remains, human body parts, or components thereof;

– loss or damage to fluorescent tubes or bulbs;

– loss of, damage to, or irretrievability of data stored on any type of media, or of information including without limitation personal, health or financial information;

– loss or damage due to acts of God, natural disasters, war risks, acts of terrorism, nuclear damage, acts of public authorities acting with actual or apparent authority, acts or omissions of customs or similar authorities, authority of law, the application of security regulations imposed by the government or otherwise applicable to the Shipment, riots, strikes or other labor disputes, civil unrest, disruptions in national or local air or ground transportation networks (including, but not limited to, UPS's transportation network), disruption or failure of communication and information systems, or adverse weather conditions;

– loss or damage to any Package or Shipment for which UPS has no scan or other record reflecting that the Package or Shipment was tendered to UPS by the Shipper; or

– loss or damage to any Shipment containing articles that Shippers are prohibited from shipping, that UPS does not or is not authorized to accept for transportation, that UPS states that it will not accept, or that UPS has a right to refuse.

UPS shall not be liable for any loss or damage arising from providing service to, or on behalf of, a person or entity that obtains such services, including the delivery of property, by trick, false pretense, or other fraudulent scheme.

UPS shall not be liable for any damages arising from UPS's inability, failure, or refusal to comply with a request to stop, return, or re-route shipment of a Package after tender to UPS.

UPS shall not be liable for any interruption of service due to causes beyond UPS's control including, but not limited to: the unavailability or refusal of a person to accept Delivery of the Shipment, acts of God, natural disasters, war risks, acts of terrorism, acts of public authorities acting with actual or apparent authority, acts or omissions of customs or similar authorities, authority of law, insufficient information provided by a customer, Hazardous Materials Packages improperly offered for transport, the application of security regulations imposed by the government or otherwise applicable to the Shipment, riots, a government agency hold, strikes or other labor disputes, civil unrest, disruptions of any kind in national or local air or ground transportation networks (including, but not limited to, UPS's transportation network), disruption or failure of communication and information systems, and adverse weather conditions.

UNDER NO CIRCUMSTANCES SHALL UPS BE LIABLE FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM LOSS, MISDELIVERY OF, OR DAMAGE TO PROPERTY, DELAYED DELIVERY, OR FAILURE TO ATTEMPT DELIVERY IN ACCORDANCE WITH THE UPS SERVICE GUARANTEE, WHETHER OR NOT UPS HAD KNOWLEDGE SUCH DAMAGES MIGHT BE INCURRED. UNDER NO CIRCUMSTANCES SHALL UPS BE LIABLE FOR ANY DAMAGES WHATSOEVER FOR DELAYED DELIVERY, EXCEPT AS SPECIFICALLY PROVIDED FOR SHIPMENTS MADE UNDER THE UPS SERVICE GUARANTEE.

Acceptance for carriage of any Shipment containing articles that Shippers are prohibited from shipping, that UPS does not or is not authorized to accept for transportation, that UPS states it will not accept, or that UPS has a right to refuse, does not constitute a waiver of any provisions of the Terms or Service Guide limiting UPS's liability or responsibility for any such Package or Shipment.

## 56. Data Protection

The Shipper agrees that UPS and other companies in the UPS group of companies worldwide, including companies in countries that may not have the same level of data protection as the country where the Shipment is tendered for service, may use any data provided by the Shipper to UPS for the purposes set forth in and subject to the UPS Privacy Notice published on UPS's website at *https://www.ups.com/content/us_en/resources/ship/terms/privacy.html*, which is incorporated here by this reference. The Shipper has certain rights under the law (exercisable by contacting UPS) to have access to, rectify, object to the use for direct marketing of, or delete personal data held by UPS about it.

# UPS® Tariff/Terms and Conditions of Service – United States

## 57. Incorporation of Documents; Waiver; Future Changes

All Shipments are subject to the terms and conditions contained in the Terms. The effective Service Guide, and any modifications or amendments of them, are hereby incorporated by reference in these Terms. In the event of a conflict or inconsistency between the Terms and the effective Service Guide, the Terms shall control. UPS reserves the right to unilaterally modify or amend any portion of the Service Guide or the Terms at any time without prior notice.

The Terms, the Service Guide and the UPS Source Document for each Shipment together comprise the complete and exclusive agreement of the parties, including any of UPS's affiliates or subsidiaries, except as modified by any existing or future written agreement between the parties, and may not be contradicted, modified or supplemented by any oral agreement or by any implied-by-law covenant.

For any language in the parties' agreement that gives UPS any discretion, judgment or other right, UPS's exercise of such discretion, judgment or other right is not limited in any way whatsoever – even if the specific language does not so specify. UPS has the sole and unilateral authority to choose how to exercise its discretion, judgment or any other right and may do so for any reason it chooses, without limitation. UPS is not bound by any previous exercise of its discretion, judgment or any other right. Nor does any previous exercise constitute a determination or admission by UPS about how such discretion, judgment or right should be or should have been exercised.

The parties disavow and waive any obligations of good faith and/or fair dealing, whether implied by law or otherwise, in connection with their agreements regarding services to which these Terms apply, including but not limited to UPS's exercise of any discretion, judgment or other right, afforded by the Service Guide, the Terms or the UPS Source Document. UPS (and any of UPS's affiliates and subsidiaries) have no special, confidential, or fiduciary relationship with any Shipper or Claimant.

Any failure to enforce or apply any terms or provisions of the Service Guide or the Terms shall not constitute a waiver of that term or provision by UPS, and shall not diminish or impair UPS's right to enforce such term or provision in the future. If one or more provisions of the Terms shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not be so affected or impaired.

UPS may engage subcontractors to perform transportation and incidental services.

UPS contracts on its own behalf and on behalf of its servants, agents, and subcontractors, each of whom shall have the benefit of these Terms. No such party has authority to waive or vary these Terms.



# ups.com
# 1.800.PICK.UPS®

© 2018 United Parcel Service of America, Inc. UPS, the UPS brandmark and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved. 1972349 4/18

# EXHIBIT B

# ups Shipment Receipt

**Transaction Date:** 26 Feb 2018        **Tracking Number:**      1Z699A250334033292

## (1) ADDRESS INFORMATION

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| SHAD ALEXANDER | HERE'S THE DEAL LLC | HERE'S THE DEAL LLC |
| 5412 INDIAN HILLS RD. | HERE'S THE DEAL LLC | HERE'S THE DEAL LLC |
| DECATUR AL 35603 | 580 VERNON LANE | 580 VERNON LANE |
| Residential | BUFFALO GROVE IL 60089 | BUFFALO GROVE IL 60089 |
|  | Telephone 8479774128 | Telephone 8479774128 |

## (2) PACKAGE INFORMATION

| | WEIGHT | DIMENSIONS / PACKAGING | DECLARED VALUE | REFERENCE NUMBERS |
|---|---|---|---|---|
| 1. | 110.0 lbs (113.0 lbs billable) | 33 x 25 x 19 in. Other Packaging | 680.00 USD | |

## (3) UPS SHIPPING SERVICE AND SHIPPING OPTIONS

**Service:** UPS Ground Service

| | |
|---|---|
| **Shipping Fees Subtotal:** | 88.48 USD |
| Transportation | 62.50 USD |
| Fuel Surcharge | 4.78 USD |
| Peak Surcharge  - Residential | 0.00 USD |
| **Additional Handling Charge** | |
| Package 1 | 12.00 USD |
| **Peak Surcharge - Additional Handling** | |
| Package 1 | 0.00 USD |
| **Declared Value** | |
| Package 1 | 6.30 USD |
| Residential Surcharge | 3.60 USD |

## (4) PAYMENT INFORMATION

**Bill Shipping Charges to:**      Shipper's Account 699A25

| | |
|---|---|
| **Shipping Charges:** | 88.48 USD |
| **Subtotal Shipping Charges:** | 88.48 USD |
| **Total Charged:** | 88.48 USD |

**Note:** This document is not an invoice. Your final invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide ((0)). To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

**Responsibility for Loss or Damage**

UPS's liability for loss or damage to each domestic package or international shipment is limited to $100 without a declaration of value. Unless a greater value is recorded in the declared value field of the UPS shipping system used, the shipper agrees that the released value of each package covered by this receipt is no greater than $100, which is a reasonable value under the circumstances surrounding the transportation. To increase UPS's limit of liability for loss or damage, a shipper may declare a higher value and pay an additional charge. See the UPS Tariff/Terms and Conditions of Service ("UPS Terms") at www.ups.com for UPS's liability limits, maximum declared values, and other terms of service. UPS does not accept for transportation and shippers are prohibited from shipping, packages with a value of more than $50,000. The only exception to the $50,000 per package limit is for a package eligible for the Enhanced Maximum Declared Value of $70,000 per package, as set forth in the UPS Terms. A package is eligible only if it meets the following requirements. The package must be (i) a domestic shipment; (ii) tendered pursuant to shipper's Scheduled Pickup Service; (iii) a UPS Next Day Air(R) delivery service is the service level selected; (iv) processed for shipment using a UPS Shipping System (declarations of value on paper Source Documents are not eligible for Enhanced Maximum Declared Value); and (v) does not contain hazardous material or a Perishable Commodity. Claims not made within nine months after delivery of the package (sixty days for international shipments), or in the case of failure to make delivery, nine months after a reasonable time for delivery has elapsed (sixty days for international shipments), shall be deemed waived. The entry of a C.O.D. amount is not a declaration of value for carriage purposes. All checks or other negotiable instruments tendered in payment of C.O.D. will be accepted by UPS at shipper's risk. UPS shall not be liable for any special, incidental, or consequential damages. All shipments are subject to the terms and conditions contained in the UPS Terms, which can be found at www.ups.com.

# EXHIBIT C

**QUICK START** ▼



Home (/us/en/Home.page?) >

Packaging and Supplies Support (/us/en/help-center/packaging-and-supplies.page?) >

Packaging Guidelines (/us/en/help-center/packaging-and-supplies/packaging-guidelines.page?) >

Packaging Advisor

# Packaging Advisor

## Packaging Guidelines                    **Print These Guidelines**

These guidelines provide packaging suggestions for the merchandise categories you selected.

### Packaging Details

**Dimensions (Length x Width x Height):**　33 x 25 x 19 inches

**Weight:**　110 lbs.

### Guidelines for your merchandise, including:

Appliances and Home Fixtures

### Interior Cushioning Guidelines

### Recommended Cushioning:

#### Foam-in-Bag

Foam-in-place or foam-in-bag pads are formed by a chemical mixture that expands and forms a protective mold around contents.

Foam-in-place or foam-in-bag pads form and mold around any product. These cushions work well to support corners and protect edges.

For maximum effectiveness, the foam-in-place or foam-in-bag must be evenly distributed around the items in order to protect the product. Since this material is offered in varying densities it is important to select the most appropriate foam to meet the requirements of the product. This can range from a low grade void fill for lightweight items to a high-performance cushioning.

Case: 1:18-cv-06003 Document #: 1-1 Filed: 08/31/18 Page 90 of 94 PageID #:94

## Alternate Cushioning:

### Double Box

Double-boxing or over-boxing is an effective method of protecting fragile items where the packaging is not suitable for shipment through carriers, such as UPS, that use manual and automated distribution systems.

Make sure that the original packaging is in good condition and intact. Cracked or broken foam pieces should be replaced or repaired. Make sure that the item cannot move in the original packaging.

Select a new shipping container with the strength recommended that is at least six inches (15.24 cm) larger than each of the original box's dimensions. Fill the bottom of the new shipping container with two to three inches (5.08 cm to 7.62 cm) of loose fill (for merchandise up to 10 lbs/4.54 kg), bubble sheeting (for merchandise up to 50 lbs/22.68 kg), foam-in-place, polyethylene foam pads, or other dunnage material.

Place the original manufacturer's box on top of the cushioning material in the center of the shipping container and place cushioning around the remaining five sides. Seal the flaps of the box with the recommended material and method.



## Alternate Cushioning:

### Soft Foam

Soft foam refers specifically to cushions like polyethylene (PE), polyurethane (PU), and polypropylene (PP) that offer multiple impact cushioning characteristics.

Case: 1:18-cv-06003 Document #: 1-1 Filed: 08/31/18 Page 91 of 94 PageID #:95

These foams protect fragile items from shock and impact during normal package handling conditions and maintain this level of protection through the entire distribution process.

These foams are specifically designed and typically pre-engineered around the dimensions and weight of the product.



### Product Placement Guidelines

Separate the products from one another with a minimum of 2 inches (5.08cm) of recommended materials.



Separate the products from the walls of the container with a minimum of 2 inches (5.08 cm) of recommended materials.



### General Guidelines

### Exterior Carton Guidelines

Make sure your box has a seal reflecting this number or is an equivalent.

### Recommended Container:

### 250 Burst Strength Box

Use a new, single-wall, corrugated shipping container with a 250-lbs-per-square-inch burst strength, or non-U.S. equivalent.

Case: 1:18-cv-06003 Document #: 1-1 Filed: 08/31/18 Page 92 of 94 PageID #:96



## Alternative Container:

### 44 ECT Box

Use a new, single-wall, corrugated shipping container with a 44-lbs-per-inch edge crush test (ECT) strength, or non-U.S. equivalent.



## Alternative Container:

### 275 Burst Strength Box

Use a new, single-wall, corrugated shipping container with a 275-lbs-per-square-inch burst strength, or non-U.S. equivalent.



## Closure Guidelines

Seal the flaps of your shipping container using six strips of pressure-sensitive poly tape. Use a strong tape with a minimum width of two inches (48 mm). For regular slotted containers (RSC) where the flaps meet in the center, apply three strips of tape to both the top and bottom of the box, so the middle and two edge seams are sealed. For corrugated containers where the flaps overlap (FOL), apply three strips of tape to both the top and bottom of the box, so the three edge seams are sealed. Do not use masking tape, cellophane (office) tape, duct tape, string, or paper over-wrap.

2/26/2018



**Shipping Label Placement Guidelines**

Place the shipping label on the top of the package. To avoid confusion, make sure only one address is visible on the package. If you are using a packing slip, place it on the same surface as the address label.

Avoid placing the label over a seam or box closure or on top of box sealing tape.

Remove or cross out old labels or markings on used boxes.

Place a duplicate label or other form of identification inside your package.

Note: If you are using a mailing tube, place the label horizontally, with each end of the label pointing toward the ends of the tube, so the bar code can be scanned.

Always include your complete return address, including full street address and postal code.

Always include the recipient's postal code with the complete street address.

Make every effort to obtain a street address. If using a P.O. Box address, include the recipient's telephone number on the label. Note that any packages addressed to a P.O. Box may be delayed, are not covered by any UPS Service Guarantee, and require an address correction charge. Army Post Office (APO) and Fleet Post Office (FPO) address are not accepted.

For international shipments, include a contact name, telephone number, and postal code.



**Related Information**

For more information about packaging guidelines:

2/26/2018                                                                Packaging Advice and Tips | UPS

For general packaging needs, visit ← **The UPS Store**
(**http://www.theupsstore.com/pack-ship/Pages/packing.aspx**).

For consultative packaging testing and design, visit our ← **Package Lab**
(**http://www.ups.com/content/us/en/bussol/browse/package-engineering.html**).

← **Change This Request**(/packaging?loc=en_US&start=0)
← **Start a New Request**(/packaging?loc=en_US&start=1)

** See the **UPS Tariff/Terms and Conditions of Service** and UPS Rate and Service Guide for commodities
handled and restrictions on service.

*** UPS's packaging guidelines are recommendations to assist you in packaging your shipment. Following
these guidelines is not a guarantee that an item is sufficiently packaged for transportation.

(?)  Customer Service                                                              +

This Site                                                                          +

Company Info                                                                       +

Other UPS Sites                                                                    +

Connect with Us                                                                    +

Legal                                                                              +

Copyright ©1994- 2018 United Parcel Service of America, Inc. All rights reserved.